# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DONALD FALLS, et al.,

          *Plaintiffs*,

    v.

RON DESANTIS, in his official capacity as Governor of Florida, et al.,

          *Defendants.*

Case No. 4:22-cv-166-MW/MJF

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody,
in her official capacity*

June 1, 2022

Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Defendants Ron DeSantis,
in his official capacity, et al.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................... ii

INTRODUCTION ............................................................... 1

FACTUAL BACKGROUND ........................................................ 3

I.   Florida's Elected Officials Enact the Individual Freedom Act. ...................... 3

II.  Plaintiffs Challenge the Act Under the First Amendment And
     Due Process Clause ...................................................... 7

STANDARD OF REVIEW ....................................................... 7

ARGUMENT .................................................................. 8

I.   Count I Should Be Dismissed Because No Educator Plaintiff Alleges
     an Injury In Fact Under the Act as Written. .............................. 9

II.  Count II Should Be Dismissed Because the Student Plaintiff Has Not
     Alleged an Injury In Fact. ............................................. 19

III. Count III Should Be Dismissed Because No Plaintiff Has Alleged
     an Injury in Fact Related to Employers' Freedom of Expression. ........... 20

IV.  Count IV Should Be Dismissed Because No Student or Educator
     Plaintiff Has Plausibly Alleged How the Rule or Act Is Vague. ............. 23

V.   The Governor Is Not a Proper Defendant to Any of Plaintiffs' Claims ........ 28

VI.  Plaintiffs' Claims Should Also Be Dismissed Under
     FED. R. CIV. P. 12(b)(6) for Failure to State a Claim. .................... 30

CONCLUSION ............................................................... 31

# TABLE OF AUTHORITIES

**Cases**     **Page**

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979).................................................................10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..............................................................8, 23

*Bochese v. Town of Ponce Inlet,*
  405 F.3d 964 (11th Cir. 2005) .................................................22

*California Pro-Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003) .................................................10

*California v. Texas,*
  141 S.Ct. 2104 (2021)..............................................................22

*Christian Action League of Minnesota v. Freeman,*
  31 F.4th 1068 (8th Cir. 2022) .............................................10, 11

*Club Madonna, Inc. v. City of Miami Beach,*
  924 F.3d 1370 (11th Cir. 2019) ............................................... 24

*Ex Parte Young,*
  209 U.S. 123 (1908).................................................................28

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006).................................................................23

*Grizzle v. Kemp,*
  634 F.3d 1314 (11th Cir. 2011) ...............................................28

*Harrell v. The Florida Bar,*
  608 F.3d 1241 (11th Cir. 2010) ..........................................24, 25

*Harris v. Bush,*
  106 F. Supp. 2d 1272 (N.D. Fla. 2000) ...................................29

*Laird v. Tatum,*
  408 U.S. 1 (1972).....................................................................10

*Legacy Ent. & Arts Found., Inc. v. Mina,*
  2021 WL 4444688 (M.D. Fla., August 20, 2021) ................11, 14

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010) ...................................................11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................1, 8, 9, 10

*Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*,
  226 F.3d 1226 (11th Cir. 2000) .......................................................8

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) ...................................................8, 19

*Osterback v. Scott*,
  782 F. App'x 856 (11th Cir. 2019).................................................28

*Support Working Animals, Inc. v. Governor of Fla.*,
  8 F.4th 1198 (11th Cir. Aug. 12, 2021).....................................28, 29

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)......................................................................10

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)....................................................................1

*U.S. v. A Single Fam. Residence and Real Prop. Located at 900 Rio Vista Blvd.,
  Fort Lauderdale*,
  803 F.2d 625 (11th Cir. 1986) .................................................24, 25

*United States v. Williams*,
  553 U.S. 285 (2008).......................................................................23

*Williams v. Poarch Band of Creek Indians*,
  839 F.3d 1312 (11th Cir. 2016) ......................................................7

*Women's Emergency Network v. Bush*,
  323 F.3d 937 (11th Cir. 2003) ......................................................29

*Ziyadat v. Diamondrock Hosp. Co.*,
  3 F.4th 1291 (11th Cir. 2021).........................................................8

**Constitutions, Statutes, and Rules**

Fed. R. Civ. P.
  12(b)(1) ........................................................................................7
  12(b)(6) ........................................................................................7

Fla. Stat.
  § 760.021 .................................................................................28, 30
  § 760.10(1)....................................................................................5
  § 760.10(1)(8)...............................................................................5
  § 760.10(1)(8)(b) ..........................................................................6

§ 760.10(8) ............................................................................21

§ 760.11 ...............................................................................30

§ 1000.03(2)(a) .......................................................................3

§ 1000.03(2)(h) ................................................................12, 13

§ 1000.05(4)(A)(1)-(8) ....................................................3, 4, 5

§ 1000.05(4)(A)(3) ................................................................17

§ 1000.05(4)(A)(7) ...........................................................13, 14

§ 1000.05(4)(A)(8) ................................................................16

§ 1000.05(4)(b) .....................................................................18

§ 1000.05(5) .........................................................................29

§ 1000.05(8) .........................................................................29

§ 1003.42(2) ...........................................................................6

§ 1003.42(3) ...........................................................................5

§ 1006.31 .............................................................................29

2022 Fla. Laws 72

§ 2 ........................................................................................29

§ 8 ..........................................................................................3

FLA. ADMIN. CODE r. 6A-1.094124 .............................6, 14, 26

Bd. of Gov. Regs. 9.006 .........................................................10

**Other Authority**

*The 1619 Project*, N.Y. TIMES, *available at* https://nyti.ms/3lOCKFm
     (last visited May 31, 2022). ...........................................14

## INTRODUCTION

Article III grants federal courts the power to "decide only matters 'of a Judiciary Nature,' " not to "issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting 2 Records of the Federal Convention of 1787, p. 430 (M. Farrand ed. 1966)). Accordingly, a plaintiff can call upon the federal courts to adjudicate grievances against a state law only if the plaintiff demonstrates that the law in fact causes some concrete injury, that the injury is actually traceable to the challenged provisions of the law, and that a judgment striking down the law would redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is clear from their complaint and declarations that Plaintiffs in this case have many objections to Florida's Individual Freedom Act. But unless they can match those objections to an injury that meets the strictures of Article III, the solution to their problems with the Act lies in the political process, not this Court.

None of Plaintiffs' claims satisfy Article III. First, none of the three educator Plaintiffs, Donald Falls, Jill Harper, and Dr. Robert Cassanello, allege in the Complaint how the curriculum they teach will violate the Act. The declarations submitted by Falls and Cassanello attempt to make up that shortfall but fail to do so because they are premised on patent misreadings of the Act. Because no educator Plaintiff has alleged or averred how their teaching would violate the Act as it is

actually written, Count I, premised on "teachers' freedom of expression" should be dismissed.

Second, the lone student plaintiff, RMJ, is a rising kindergartener who has made no allegations and submitted no declaration describing what injury the challenged Act (or the 2021 Board of Education Rule) could visit upon her or on any student so young. Accordingly, Count II, premised on students' First Amendment right to access information, should also be dismissed.

Third, the lone plaintiff challenging the Act's requirements for employers, Dr. Tammy L. Hodo, has not alleged in the complaint nor supported in her declaration what injury the Act works to her or her business. The Act does not prohibit her from offering her diversity and inclusion training sessions, nor does it prohibit employers from contracting with and paying Dr. Hodo to provide her training to their employees. Dr. Hodo has neither alleged nor averred that she has or will lose business if the Act takes effect as it is actually written, so she has not met her burden to show an injury in fact.

Fourth, Plaintiffs' claim that the Act's educational provisions and the Rule are unconstitutionally vague, Count IV, must also be dismissed. To have standing to advance a vagueness claim, a plaintiff must show that the statutory language is at least arguably vague as applied to him. Plaintiffs here have shown nothing of the kind. Their claims that the Act even conceivably bars their proposed conduct are all

based on obvious misreadings of its text, and their claims of vagueness are wholly conclusory and unpersuasive.

Plaintiffs' failings under Article III do not end there. The Governor must be dismissed as a defendant as to all claims because he has no tangible connection to the enforcement of any of the challenged provisions. For these reasons, Plaintiffs' claims should be dismissed—in their entirety or, in the alternative, in part—under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction under Article III.

But quite apart from whether some or all of Plaintiffs' claims can survive 12(b)(1) dismissal, those claims must be dismissed on the merits under Rule 12(b)(6) in any event, for the reasons articulated in our response to Plaintiffs' Preliminary Injunction Motion, which is filed contemporaneously herewith.

## FACTUAL BACKGROUND

### I.    Florida's Elected Officials Enact the Individual Freedom Act.

Earlier this year, pursuant to its authority to "establish education policy, enact education laws, and appropriate and allocate education resources," FLA. STAT. § 1000.03(2)(a), the Florida Legislature passed the Individual Freedom Act ("the Act"). *See* 2022 Fla. Laws 72. Governor DeSantis approved the Act on April 22, and it will take effect on July 1. *See* 2022 Fla. Laws 72, § 8.

Sections 2 through 7 of the Act amended the Education Code. As relevant here, Section 2 enumerates actions that constitute "discrimination on the basis of

race, color, national origin, or sex" against a public school student or employee and are thus prohibited under Section 1000.05(2). Specifically, the Act prohibits the practice of "subject[ing] any student or employee to training or instruction that espouses, promotes, advances, inculcates, or compels such student or employee to believe any of the following concepts":

1. Members of one race, color, national origin, or sex are morally superior to members of another race, color, national origin, or sex.

2. A person, by virtue of his or her race, color, national origin, or sex is inherently racist, sexist, or oppressive, whether consciously or unconsciously.

3. A person's moral character or status as either privileged or oppressed is necessarily determined by his or her race, color, national origin, or sex.

4. Members of one race, color, national origin, or sex cannot and should not attempt to treat others without respect to race, color, national origin, or sex.

5. A person, by virtue of his or her race, color, national origin, or sex bears responsibility for, or should be discriminated against or receive adverse treatment because of, actions committed in the past by other members of the same race, color, national origin, or sex.

6. A person, by virtue of his or her race, color, national origin, or sex should be discriminated against or receive adverse treatment to achieve diversity, equity, or inclusion.

7. A person, by virtue of his or her race, color, sex, or national origin, bears responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the person played no part, committed in the past by other members of the same race, color, national origin, or sex.

8. Such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin, or sex.

FLA. STAT. § 1000.05(4)(A)(1)-(8) (as amended by the Act).[1] Section 3 of the Act requires that "instruction and supporting materials on the topics enumerated in this section must be consistent with" a list of six "principles of individual freedom" that largely restate the first, second, sixth, seventh, and eighth of these concepts. FLA. STAT. § 1003.42(3).

The Act also amends Florida's Civil Rights Act. Section 1 of the Act enumerates several employment practices that constitute "discrimination based on race, color, sex, or national origin" under FLA. STAT. § 760.10(1). Specifically, the Act makes it unlawful for any employer to "[s]ubject[] any individual, as a condition of employment, membership, certification, licensing, credentialing, or passing an examination, to training, instruction, or any other required activity that espouses, promotes, advances, inculcates, or compels such individual to believe any of" a list of eight "concepts" that restate, with minor changes in wording, the eight concepts prohibited by the Act's educational provisions. FLA. STAT. § 760.10(1)(8). Section 1 again makes clear that it does not prohibit discussion of these concepts as part of

---

[1] All subsequent statutory citations are of the provisions as amended by the Act on July 1.

required training, stating expressly it "may not be construed to prohibit discussion of the concepts listed therein as part of a course of training or instruction, provided such training or instruction is given in an objective manner without endorsement of the concepts." *Id.* § 760.10(1)(8)(b).

Florida's law also authorizes the State Board of Education to issue rules governing the curriculum and instruction in Florida's schools. *Id.* § 1003.42(2). Before the passage of the Act, in June 2021, the Board of Education issued a rule requiring that instruction on topics such as the Holocaust, slavery, the Civil War, the Civil Rights Movement, and "the contributions of women, African American and Hispanic people" to our Nation must "be factual and objective, and may not suppress or distort significant historical events." FLA. ADMIN. CODE r. 6A-1.094124. As "[e]xamples of theories that distort historical events," the Board listed theories that "include the denial or minimization of the Holocaust, and the teaching of Critical Race Theory, meaning the theory that racism is not merely the product of prejudice, but that racism is embedded in American society and its legal systems in order to uphold the supremacy of white persons." *Id.* In particular, the Board determined that schools "may not utilize material from the 1619 Project." *Id.*

## II. Plaintiffs Challenge the Act Under the First Amendment and Due Process Clause.

Plaintiffs are three educators, a consultant, and a rising kindergartener. Together, they argue that the Act and the June 2021 Rule violate their rights under the First Amendment and the Due Process Clause.

The three educators are Mr. Donald Falls, who teaches American Government and Economics at a Florida high school; Ms. Jill Harper, who serves as a substitute teacher for multiple subjects and grade levels; and Dr. Robert Cassanello, who is an associate professor of history at the University of Central Florida. Student-plaintiff RMJ "is enrolling in kindergarten at a Nassau County Public School in August 2022." Compl. at ¶ 7. Dr. Tammy Hodo is the president and founder of a consulting firm that provides diversity training to various organizations, including corporations, non-profits, and educational institutions. Compl. at ¶ 8.

Defendants now move to dismiss Plaintiffs' claims, in their entirety or, alternatively, in part, under FED. R. CIV. P. 12(b)(1) and (6).

### STANDARD OF REVIEW

Rule 12 provides that a claim may be dismissed for either "lack of subject matter jurisdiction" or "failure to state a claim upon which relief can be granted." *Id.* Under Rule 12(b)(1), "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016). Even at the pleading stage,

"[m]ere conclusory statements do not suffice." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (internal citations omitted). The plaintiff "must clearly and specifically set forth facts to satisfy" the injury-in-fact requirement. *Id*. (cleaned up). Courts will not "imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none," nor will courts "create jurisdiction by embellishing a deficient allegation of injury." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000) (internal citations omitted).

Under Rule 12(b)(6), a court should dismiss a claim "when the plaintiff's factual allegations, if true, don't allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (cleaned up). The court must "view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true," but it cannot credit "mere conclusory statements," *id*. at 1296, and a plaintiff's allegations must be supported with enough detail to "nudge[ ] their claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

Article III standing is an "irreducible constitutional minimum" requiring that "the plaintiff must have suffered an 'injury in fact' ": "an invasion of a legally

protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). The party invoking jurisdiction "bears the burden of establishing these elements." *Id*. at 561. In this case, Plaintiffs have failed to meet their burden to allege an injury in fact with respect to all four of their claims. Moreover, even if some or all of these claims *could* go forward, the Governor must be dismissed as a defendant as to all claims because he has no direct authority to enforce any of the challenged provisions.

Finally, Plaintiffs' claims should also be dismissed on the merits under Rule 12(b)(6), for the reasons articulated in our response to Plaintiffs' Preliminary Injunction Motion, which is filed contemporaneously herewith.

## I.   Count I Should Be Dismissed Because No Educator Plaintiff Alleges an Injury In Fact Under the Act as Written.

None of the three educator Plaintiffs—Falls, Harper, and Cassanello— adequately alleges an injury in fact because the complaint contains no allegations whatsoever about how their curriculum preferences would conflict with the Act. And even those non-party educators who submitted declarations linked their curriculum preferences only to obvious misreadings of the Act. Count I should be dismissed.[2]

---

[2] Count I must be dismissed against the Board of Governors for the additional reason that Plaintiffs cannot trace any injury to the Board of Governors nor can any injury they suffer be redressed by action against that body. *See Lujan*, 504 U.S. at 560-61 (standing requires that "the injury . . . be fairly traceable to the challenged action of the defendant" and that it is "likely . . . that the injury will be redressed by

Standing to raise a pre-enforcement challenge to a law that restricts speech requires a showing that the plaintiff's "intended future conduct is arguably proscribed by the [challenged] statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up). There also must "exist[] a credible threat of prosecution thereunder." *Id.* at 159 (cleaned up). It is not enough that a plaintiff merely fears future enforcement: "Allegations of a 'subjective chill' are not an adequate substitute for . . . a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs."). An actionable fear of future prosecution "will only inure if the plaintiff's intended speech arguably falls within the statute's reach." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). Where a plaintiff fails to allege an intention to take a specific future action that would arguably violate the challenged statute, the plaintiff lacks Article III standing. *See, e.g., Christian Action League of Minnesota v. Freeman*, 31 F.4th 1068, 1074 (8th Cir. 2022) (plaintiff lacked standing where challenged statute's definition of "harassment" would not cover plaintiff's

---

a favorable decision"). The Board of Governors has delegated the authority to make personnel decisions to Florida's universities and has no authority to take action against individual professors based on any violation of the Act. Bd. of Gov. Regs. 9.006.

proposed speech); *Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) (Plaintiff lacked standing where he had "not proposed an interpretation of the [challenged] policy that would arguably apply to his intended speech and ha[d] not given any details about what he intends to say."); *Legacy Ent. & Arts Found., Inc. v. Mina*, 2021 WL 4444688, at *5 (M.D. Fla., August 20, 2021) (plaintiffs seeking to peacefully protest lacked standing where "they do not allege any intended conduct that is 'arguably proscribed' by the [challenged]" Act, which "explicitly allow[ed] for peaceful protests").

Here, the educator-plaintiffs make either conclusory allegations (as in the complaint) or propose future conduct that does not violate the Act or Rule (as in the Falls and Cassanello declarations), none of which can establish Article III standing.

Beginning with the complaint, Falls, Harper, and Cassanello make only conclusory allegations that are insufficient to show an injury in fact. Each simply describes his or her teaching role and states, without support, that "[t]he legislation at issue restricts his [or her] ability to accurately and fully teach." Compl. at ¶¶ 4, 5, 6. Count I then alleges that the Rule "unconstitutionally infringe[s]" these teachers' First Amendment rights and is "unconstitutional both facially and as applied to Plaintiffs Falls, Harper, and Cassanello's curricula." *Id*. at ¶ 61. But the complaint makes no allegations as to any actual lesson in Plaintiffs' preferred curricula that would violate the Act. Notably, Count I also does not allege that the Act infringes

Plaintiffs' rights, but only the Rule. *Id*. at ¶¶ 58-61. Still less do Plaintiffs allege that there is any credible threat that the State would enforce the statute in such circumstances. These allegations are purely conclusory and do not establish an injury in fact for standing purposes.

Plaintiffs' declarations do not cure this defect. Harper submits no declaration at all, and since the complaint describes her as merely a *substitute* teacher, it is unclear what lessons she could teach that would run afoul of the Act or Rule. Harper has failed to demonstrate standing for Count I.

Falls has submitted a declaration, but because it depends on a misreading of the Act, it fails to establish any injury in fact. Falls avers that he has taught students about "the economic problem of inequality in the United States and globally," Decl. of Donald Falls at ¶ 7, Doc. 30-1 (May 18, 2022) ("Falls Decl."), "the nation's history of slavery," *id*. at ¶ 8, and "our nation's long history of racial segregation and discrimination," *id*. at ¶ 11; and he asserts that each topic may make a student "feel bad or guilty," *id*. at ¶ 7, feel "discomfort, guilt, anguish … [and] psychological distress on account of his or her race," *id*. at ¶ 8, or become "uncomfortable," *id*. at ¶ 11. But the Act does not prohibit educators from teaching material that makes students feel uncomfortable, guilty, distressed, or any other unwelcome emotion.[3]

---

[3] Indeed, the Act affirmatively *requires* that the subjects Falls identifies be taught:

This is what the Act actually prohibits teaching:

A person, by virtue of his or her race, color, sex, or national origin, *bears personal responsibility for and must feel* guilt, anguish, or other forms of psychological distress because of actions, in which the person

———————————————

Members of the instructional staff of the public schools, subject to the rules of the State Board of Education and the district school board, shall teach efficiently and faithfully … the following:

The history of African Americans, including the history of African peoples before the political conflicts that led to the development of slavery, the passage to America, the enslavement experience, abolition, and the history and contributions of Americans of the African diaspora to society. Students shall develop an understanding of the ramifications of prejudice, racism, and stereotyping on individual freedoms, and examine what it means to be a responsible and respectful person, for the purpose of encouraging tolerance of diversity in a pluralistic society and for nurturing and protecting democratic values and institutions. Instruction shall include the roles and contributions of individuals from all walks of life and their endeavors to learn and thrive throughout history as artists, scientists, educators, businesspeople, influential thinkers, members of the faith community, and political and governmental leaders and the courageous steps they took to fulfill the promise of democracy and unite the nation. Instructional materials shall include the vital contributions of African Americans to build and strengthen American society and celebrate the inspirational stories of African Americans who prospered, even in the most difficult circumstances. Instructional personnel may facilitate discussions and use curricula to address, in an age-appropriate manner, how the individual freedoms of persons have been infringed by slavery, racial oppression, racial segregation, and racial discrimination, as well as topics relating to the enactment and enforcement of laws resulting in racial oppression, racial segregation, and racial discrimination and how recognition of these freedoms has overturned these unjust laws.

FLA. STAT. § 1003.42(2)(h).

> played no part, committed in the past by other members of the same
> race, color, national origin, or sex.

FLA. STAT. § 1000.05(4)(a)(7) (emphasis added). A lesson would not violate the Act

merely because students studying it might feel anguished about historical events;

rather, a lesson would violate the Act only if it teaches a student that (1) *because of*

his or her race, the student bears (2) *personal responsibility* for and (3) *must feel*

guilt, anguish, or other forms of psychological distress (4) *because of* past injuries

in which the student played no part. Falls does not allege or aver that the lessons he

would plan to teach would violate that standard, nor does he invoke any other part

of the Act that his lessons would violate. Accordingly, Falls' declaration only avers

an imagined injury caused by a law that does not exist, which is insufficient to show

an injury in fact for standing purposes. *See Legacy Ent. & Arts Found., Inc.*, 2021

WL 4444688, at *5 (plaintiffs seeking to peacefully protest lacked standing because

challenged act permitted peaceful protests).

Falls also says that "many topics" he discusses in class "could be interpreted

as depicting an America contrary to the principles articulated in the Declaration of

Independence" in violation of the Rule, but that misreads the Rule, too. The Rule

says "[i]nstruction may not utilize material from the 1619 Project and may not define

American history as something other than the creation of a new nation based largely

on universal principles stated in the Declaration of Independence." FLA. ADMIN.

CODE r. 6A-1.094124 (2021). The 1619 Project expressly aims to create "A New

Origin Story" for the United States and "reframe the country's history by placing the consequences of slavery and the contributions of black Americans at the very center of our national narrative." The 1619 Project, N.Y. Times, *available at* https://nyti.ms/3lOCKFm. Falls merely says his teaching could portray the United States as not living up to the ideals of the Declaration of Independence, but the Rule does not forbid that. The Rule forbids *reframing* American history as *something other* than an effort to achieve the ideals of the Declaration of Independence. Falls does not claim that his teaching would do *that*.

Cassanello's declaration makes the same mistakes. Cassanello says that "[p]sychological distress, anguish, or a feeling of personal responsibility to correct injustices is often a natural response when students learn" about Jim Crow and the civil rights movement, Decl. of Dr. Robert Cassanello at ¶ 20, Doc. 30-2 (May 18, 2022) ("Casanello Decl."). But again, the Act does not prohibit lessons that arouse such feelings in students. The Act prohibits inculcation of a very specific idea: that students *must* feel anguish because of their *race* based on the notion that they somehow bear *personal responsibility* for past events in which they played no part. And Cassanello himself expressly avers that he would do no such thing: "I would not instruct a student, for example, that they bear personal responsibility for a lynching committed in the past." *Id.* at ¶ 20.

Cassanello also says he would teach the "bell curve" in his classes, which he describes as "a discredited interpretive lens" whose "proponents suggested connections between race and intelligence that purportedly explained socio-economic disparities between various races." *Id*. at ¶ 9. Cassanello claims that the Act will "restrict [his] ability to explain the bell curve's failings to students since it prohibits [him] from instructing students that 'such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin or sex." *Id*. at ¶ 10. Here again, Cassanello claims he is injured by a law that does not exist. The Act prohibits teaching that:

> Such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin, or sex.

FLA. STAT. § 1000.05(4)(a)(8). In other words, the Act prohibits teaching that (1) certain enumerated virtues (2) *are* racist or sexist or (3) were created by one race or sex to oppress another race or sex. Nowhere does Cassanello say that his bell curve lesson plans would teach *that* lesson to students by, for example, instructing that the virtue of "merit" is either *itself* racist or was created by white people to oppress black people. Rather, Casanello says he would teach that "socio-economic disparities are determined by a wide range of societal factors outside a person's control [rather]

than a person's innate intelligence." Cassanello Decl. at ¶ 9. The Act plainly does not prohibit such a lesson, and it is entirely speculative that the State would attempt to enforce it in such circumstances.

Cassanello also claims that the Act will prohibit him from assigning a book entitled *The New Jim Crow* by Michelle Alexander, which "posits that America's justice system perpetuates a racial caste system through government funded policing, racial profiling and other factors that then disproportionately labels [sic] black men as criminals and felons and justifies subjecting them to inhuman treatment." *Id*. at ¶ 11. Cassanello says the book's thesis violates the Act's prohibition on teaching that "a person's moral character or status as either privileged or oppressed is necessarily determined by his or her race," *id*. at ¶ 12, but he does not explain what specific propositions from the book are contrary to the Act, and it is unclear whether any are, based solely on Cassanello's brief description. For example, simply describing societal conditions that contribute to disparate outcomes for black men in the criminal justice system would not run afoul of the Act's prohibition on teaching that "a person's moral character or status as either privileged or oppressed is *necessarily determined* by his or her race." FLA. STAT. § 1000.05(4)(a)(3) (emphasis added).

Moreover, even if the book does include ideas contrary to the Act's requirements, Cassanello would *still* be free to include the text in his syllabus, so

long as he teaches it "in an objective manner without endorsement of the concepts" that the Act rejects. FLA. STAT. § 1000.05(4)(b). Cassanello teaches at the university level, and his students can be expected to engage with a text critically.

While Cassanello disavows the possibility of teaching history in an "objective" manner, his own declaration elsewhere refutes that claim. For example, he rightly explains that "holocaust denial" is "an interpretive lens that virtually all serious academics reject," but that on many other historical questions "there is no single interpretation or explanation . . . , but instead there are debates which are based on scholarly research and discourse," and that he thus "strive[s] to teach these subjects fully and accurately to my students" by "giving them the tools to explore their own interpretations based on research of that history." Cassanello Decl. at ¶¶ 5, 7, 8. That appears to describe precisely the type of objective, evenhanded instruction that the Act allows.

For the same reasons, other texts that Cassanello proposes to teach would also be acceptable under the Act. Cassanello does not provide enough information about the texts *Why Busing Failed: Race, Media, and the National Resistance to School Desegregation* by Matthew Delmont or *The Wages of Whiteness* by David Roediger to know whether they contain material that violates any provision of the Act. *Id*. at ¶¶ 13-18. But even assuming that they do, Cassanello can discuss them objectively with his students so long as he refrains from endorsing or advocating any of the

"concepts" prohibited by the Act. This is consistent with his own descriptions of how he teaches students, by "giving them the tools to explore their own interpretations based on research of . . . history." *Id.* at ¶ 5.

Because none of the three educator plaintiffs has adequately alleged or averred an injury in fact, Count I should be entirely dismissed.

## II.    Count II Should Be Dismissed Because the Student Plaintiff Has Not Alleged an Injury In Fact.

Because the only named student Plaintiff, RMJ, has not alleged an injury in fact resulting from the Act's enforcement, Count II, "First Amendment – Student Access to Information," should also be dismissed in its entirety.

RMJ is a rising kindergartener who will enroll at Nassau County Public School in August 2022. The complaint contains *no* factual allegations linking RMJ to any injury that could conceivably be caused by the Act's enforcement. RMJ merely asserts a right "to receive information regarding sociological, historical, and civic issues," and concludes that by "banning instruction on critical race theory," the Act and/or Rules "unconstitutionally infringe on Plaintiff RMJ's First Amendment rights." Compl. at ¶¶ 63-66. Those wholly conclusory allegations are inadequate to establish an injury-in-fact for standing purposes. *See Muransky*, 979 F.3d at 924-25. They are also implausible on their face. RMJ is a kindergartener who will spend the coming school year learning letters and numbers, trying not to sleep during nap time, and developing basic social skills. No kindergarten curriculum in Florida public

schools includes controversial "information regarding sociological, historical, and civic issues" or "instruction on critical race theory," and that is the only connection between RMJ and the Act's enforcement that the complaint alleges. Compl. at ¶¶ 63-66. Neither RMJ nor her next friend, Plaintiff Stephanie Nicole Jamieson, have submitted a declaration to supplement the complaint's conclusory allegations. And while other students have submitted declarations, none of those student declarations can establish standing because none of the declarants are named as plaintiffs in this case.

Because no named plaintiff is a student with standing to assert Count II's "First Amendment – Student Access to Information" claim, that claim should be entirely dismissed.

## III. Count III Should Be Dismissed Because No Plaintiff Has Alleged an Injury in Fact Related to Employers' Freedom of Expression.

Plaintiff Hodo has alleged that the Act violates her and her clients' First Amendment rights, but because she has provided no factual allegations to support that claim, Count III should be dismissed.

Hodo is the president of All Things Diverse, "a consulting firm who provides trainings to clients in a wide variety of industries" on topics including "race & ethnicity, implicit bias training, microaggressions, institutional racism, anti-racism work, and critical race theory." Compl. at ¶ 8. In the complaint, Hodo offers only the barest allegation of how the Act infringes her First Amendment rights: "[t]he

legislation at issue here restricts her right to speak as an employer as well as has a direct impact on her business providing training to other employers as a diversity and inclusion consultant." *Id*. That conclusory allegation is insufficient to establish an injury in fact. Hodo does not allege that she mandates training of her employees that would violate the Act, nor that she will lose any concrete and identifiable amount of business from her clients if the Act goes into effect. And she does not allege that the State has credibly threatened to enforce the statute against her.

Hodo has submitted a declaration that attempts to add factual allegations to the conclusory statements of the complaint, Decl. of Dr. Tammy Hodo, Doc. 30-4 (May 18, 2022) ("Hodo Decl."), but her declaration gets her no closer to establishing an injury in fact. Again, Hodo's statements are premised on an obvious misreading of what the Act prohibits. She states that she offers a "60-minute course on institutional racism" that "would put both my company and my clients at risk of civil liability" if she "continued to teach this course as currently taught." *Id*. at ¶¶ 5-6. But nothing in the Act restricts Hodo from teaching—or her clients from offering—*any* course, regardless of what or how it teaches. The Act only makes it an "[u]nlawful employment practice" to subject any individual "*as a condition of employment* … to training, instruction, or any other *required* activity that espouses" one of eight enumerated prohibited concepts. FLA. STAT. § 760.10(8). In other words, Hodo could devise a course that espouses all eight of the enumerated concepts, and the Act would

*still* leave her and her clients free to offer that course so long as employee attendance was not a condition of employment or a required activity.

Hodo's standing thus depends on the assumption that some appreciable number of prospective customers who would retain her consulting services *if they could mandate* employee attendance will *decline* to hire her if their employees' attendance is entirely voluntary. And where a plaintiff's standing "depends upon the decision of an independent third party"—here, the decision of Hodo's prospective clients not to hire her, in light of the Act—it is "substantially more difficult to establish." *California v. Texas*, 141 S.Ct. 2104, 2117 (2021) (quotation marks omitted). Hodo does not come close. Indeed, she provides no allegations or evidence whatsoever to support her speculative theory that fewer employers will hire her after the Act takes effect, and the theory is far from obvious. To the contrary, it seems likely that Florida employers who are currently interested enough in Hodo's services to hire her will *continue* to do so even if they cannot compel their employees to attend. *Cf. Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 985 (11th Cir. 2005) ("We simply cannot conclude that the loss of a hypothetical and uncertain *prospect* of earning a sum of money amounts to an 'actual' or 'imminent' injury.").

Hodo compares the Act to President Trump's executive order *banning* diversity, equity, and inclusion training for federal employees, which she says "halted" her business's ongoing training course contract with the Department of

22

Veterans Affairs Hospital in Dublin, Georgia. Hodo Decl. at ¶ 14. Here, however, the Act works no ban at all—it simply protects employees from being *required* to attend such trainings and/or from being adversely affected in their employment if they refuse to do so. The contrast between the federal ban and the provisions here thus *cements* Hodo's lack of standing in this case.

Because Hodo fundamentally misunderstands the Act's scope, she has failed to nudge her conclusory allegations of injury "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Count III should be entirely dismissed.

### IV. Count IV Should Be Dismissed Because No Student or Educator Plaintiff Has Plausibly Alleged How the Rule or Act Is Vague.

Plaintiffs claim that the Rule and Act are unconstitutionally vague, but such a claim cannot be implicated here because Plaintiffs have no liberty interest at stake that could trigger the protections of the federal Due Process Clause. *See United States v. Williams*, 553 U.S. 285, 304 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). In-class instruction offered by state-employed educators is pure government speech, not the speech of the educators themselves. And "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006).

Even if Count IV *could* implicate Plaintiffs' due process rights (and it cannot), Count IV should be dismissed for the additional reason that none of the Plaintiffs have plausibly alleged any vagueness in the Rule or the educational provisions of the Act that is sufficient to cause them a concrete injury in fact.

To establish standing to litigate a vagueness claim, a plaintiff must allege more than "mere fear of unconstitutional action alone" by the defendant. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1382 (11th Cir. 2019). Such a fear "is too speculative an injury to confer standing." *Id*. For example, in *Harrell v. The Florida Bar*, 608 F.3d 1241 (11th Cir. 2010), the Eleventh Circuit held that a lawyer had properly alleged a plausible injury-in-fact as to five allegedly unconstitutionally vague rules governing lawyers' advertisements, but had failed to allege an injury-in-fact as to four other allegedly vague rules. To have standing to mount a vagueness challenge, the Court concluded, the lawyer would have to show each of the following things: "(1) he seriously wishes to advertise his services, (2) such advertising would arguably be affected by the rules, but the rules are *at least arguably vague* as they apply to him, and (3) there is at least a minimal probability that the rules will be enforced, if they are violated." *Id*. at 1254 (emphasis in original) (cleaned up). Plaintiffs have failed to satisfy these conditions here, for none of them actually alleges any way in which the Act or Rule are arguably vague as applied to their proposed conduct. *See also U.S. v. A Single Fam. Residence and Real Prop.*

*Located at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 630 (11th Cir. 1986) (plaintiff "must establish that [the statute] was vague as applied to it in order to have standing to make a facial challenge to the statute").

To begin, the complaint makes only conclusory vagueness allegations, stating simply that "[r]easonable minds could differ" about whether "a given theory 'distorts historical events,' " Compl. at ¶ 74, and that the Act's "six 'principles of individual freedom' " are "vague[ ] and nebulous," *id.* at ¶ 75—"so vague," in fact, "that they fail to put a reasonable person on notice of what is prohibited and would cause people of common intelligence to guess at its meaning and differ as to its application," *id.* at ¶ 76. These assertions are merely legal conclusions shorn of any factual allegations showing that *any* plaintiff intends to engage in curricular speech that the Act or Rule would "at least arguably" circumscribe. *Harrell*, 608 F.3d at 1254.

The Plaintiffs' declarations do not help their vagueness claims. As shown, Plaintiffs misread the Act and Rule in fundamental ways, which leads them to claim that the Act or Rule will circumscribe curricular speech that it clearly will not. Plaintiffs also offer conclusory allegations of vagueness without showing how the Act or Rule is "at least arguably vague" as to any lessons or training sessions the Plaintiffs would give.

For example, Falls says that "many topics I discuss . . . could be interpreted as depicting an America contrary to the principles articulated in the Declaration of

Independence," and so he "ha[s] no idea if [his] instruction is presenting a theory that the legislature or state board of education considers to 'suppress or distort historical events.' " Falls Decl. at ¶ 15. But the Rule prohibits "defin[ing] American history as something other than the creation of a new nation based largely on universal principles stated in the Declaration of Independence," and Falls has alleged no proposed teaching activity that might even *arguably* run afoul of that provision. FLA. ADMIN. CODE r. 6A-1.094124 (2021).

The Rule also defines lessons that "suppress or distort significant historical events" as those that distort the history of slavery and the civil rights movement by "teaching … Critical Race Theory, *meaning the theory that racism is not merely the product of prejudice, but that racism is embedded in American society and its legal systems in order to uphold the supremacy of white people.*" *Id.* (emphasis added). That provision is not vague on its face, and Falls has certainly not alleged that his preferred curriculum even plausibly falls within its ambit. For similar reasons, the contention of Plaintiffs' expert, Prof. Black, that Critical Race Theory "has no inherent meaning or scope," Declaration of Prof. Derek W. Black at ¶ 13, Doc. 30-3 (May 18, 2022) ("Black Decl."), is completely irrelevant, in light of the Rule's *own express definition* of the term. Black *disagrees* with the Rule's definition of Critical Race Theory in various respects, *id.* at ¶¶ 19–26, but he nowhere shows that the definition is unconstitutionally vague.

Cassanello's declaration suffers from the same problems. Throughout his declaration, Cassanello argues that what he wants to teach "could be violating the law" because it "could be construed" to violate various provisions. *See* Cassanello Decl. ¶¶ 12, 18. Yet he fails throughout to articulate a single lesson he would teach that would even arguably run afoul of any provision of the Act or Rule. *See supra*, 15-19.

Cassanello further complains that the Act "put[s] the power in individual students to interpret the law and determine if a lesson implicates one of the forbidden viewpoints," *id*. at ¶ 19, and that he has "no control over how students will interpret a particular lesson," *id*. at ¶ 20; *see also id*. at 21 (claiming the Act "permits students to interpret the law's vague principles as they wish and bring legal action if they feel my lessons violate those principles"). But Florida's legal system exists to adjudicate disputes just like these, not to rubberstamp student complaints. A complaining student would have to prove with specificity what the educator espoused or advocated in a lesson and would have to show that it violated a specific provision of the Act. Cassanello has not alleged a single lesson he would teach that would open him to a plausible student complaint under the Act or Rule.[4]

---

[4] Count VI alleges vagueness only as to the Rule and the Act's educational provisions, not the employment provisions. But even if the plaintiffs did allege that the employment provisions are vague, such a claim would also fail, because nothing in the complaint or in Hodo's declaration even purports to show any vagueness in those provisions of the Act.

Because none of the Plaintiffs have alleged an injury in fact for purposes of the Count IV vagueness claim, that claim should also be entirely dismissed.

## V.     The Governor Is Not a Proper Defendant to Any of Plaintiffs' Claims.

For the above reasons, all of Plaintiffs' claims should be dismissed in their entirety. But even if one or more of these claims could go forward, the Governor is not a proper defendant as to any of them.[5]

Under *Ex Parte Young*, 209 U.S. 123 (1908), "[a] state official is subject to suit in his official capacity when his office imbues him with responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). This is an exception to the States' Eleventh Amendment sovereign immunity, which would otherwise bar suit against a State. *Id.*  However, "a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with the enforcement of the provision at issue." *Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (internal citations omitted); *see also Support Working*

---

[5] Florida law grants the Attorney General authority to bring civil suits to remedy "a pattern or practice of discrimination as defined by the laws of this state," or to bring suit because someone "[h]as been discriminated against as defined by the laws of this state and such discrimination raises an issue of great public interest." FLA. STAT. § 760.021. Plaintiffs also lack standing to sue the Attorney General because it is entirely speculative whether Plaintiffs either intend to engage in conduct that would violate Florida's discrimination laws, or that they would do so in the carefully delineated circumstances that would trigger the Attorney General's authority to enforce those laws under Section 760.021.

*Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021) ("[W]here, as

here, a plaintiff has sued to enjoin a government official from enforcing a law, he

must show, at the very least, that the official has the authority to enforce the

particular provision that he has challenged, such that an injunction prohibiting

enforcement would be effectual."). The Governor's general executive authority to

enforce state laws and oversee the executive branch, standing alone, "is insufficient

to make him the proper party whenever a plaintiff seeks to challenge the

constitutionality of a law." *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276-77 (N.D. Fla.

2000) (collecting cases); *see also Women's Emergency Network v. Bush*, 323 F.3d

937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis

for jurisdiction in most circumstances.").

Here, the parties directly charged with issuing regulations to implement the

education-related provisions of the Act and Rule are the state Board of Education

and the Board of Governors—not the Governor. Fla. Stat. § 1000.05(5) (governing

enforcement by state Board of Education and Board of Governors); *see* 2022 Fla.

Laws 72, § 2 (stating that subsection Section 1000.05(5) will be renumbered and

retained); Fla. Stat. § 1003.42(2); Fla. Stat. § 1006.31. Private citizens may also

enforce the Act through a direct action—but again, not the Governor. Fla. Stat.

§ 1000.05(8) (governing private enforcement); *see* 2022 Fla. Laws 72, § 2 (stating

that subsection 1000.05(8) will be renumbered and retained). The Governor also has

no enforcement authority over the employer-related provisions of the Act, which are enforceable only by the Attorney General and certain private citizens. FLA. STAT. § 760.021; FLA. STAT. § 760.11.

Accordingly, the Governor must be dismissed entirely from this case.

## VI.   Plaintiffs' Claims Should Also Be Dismissed Under FED. R. CIV. P. 12(b)(6) for Failure To State a Claim.

In addition to the myriad problems with Plaintiffs' standing to advance their claims, all of those claims also fail on the merits. As explained in Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction, filed contemporaneously with this Motion, all of Plaintiffs' claims fail as a matter of law. The Act's educational provisions regulate pure government speech, so the First Amendment simply does not apply; and even if it did, (1) Florida's decisions concerning the content of curricular speech must prevail in disputes with individual educators and (2) the State's indisputably compelling interest in preventing its educators from espousing the prohibited concepts, which the State condemns as discriminatory and abhorrent, to Florida's students would justify any burden the Act may place on the Free Speech rights of individual teachers or students to advocate or hear those ideas on the State's dime.

The challenge to the employment provisions also fails. The First Amendment is not implicated by those provisions, either: everything an employer (or its paid consultants) could say *before* the Act takes effect they can *still say after*, so no

speech is restricted at all. All the Act regulates is the *pure conduct* of employers *requiring* their employees to listen to certain speech against their will if they wish to keep their jobs. And again, even if First Amendment rights were at stake, the State's compelling interest in stamping out discrimination on the basis of race and other immutable characteristics in the workplace would amply justify this law.

Accordingly, all of Plaintiffs' claims fail to state a claim upon which relief may be granted, and the Complaint must be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed in their entirety under FED. R. CIV. P. 12(b)(1) and (6).

Dated: June 1, 2022

/s/ Timothy L. Newhall
Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody,
in her official capacity*

Respectfully Submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
johlendorf@cooperkirk.com
mwold@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Defendants Ron DeSantis,
in his official capacity, et al.*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendant's Memorandum of Law in Support of Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 7,783 words as measured by Microsoft Office for Word 365.

<u>s/      Charles J. Cooper  </u>
Charles J. Cooper