# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| DONALD FALLS, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>RON DESANTIS, in his official capacity as Governor of Florida, et al.,<br><br>    *Defendants*. | Case No. 4:22-cv-166-MW/MJF |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs allocate little of their combined brief to responding to Defendants' motion to dismiss, yet that motion goes to the Court's fundamental power to decide this case. Plaintiffs' suit cannot proceed because they have not adequately alleged that the challenged laws cause some concrete injury, that the injury is traceable to the law's challenged provisions, and that a judgment striking down the law would redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**I. Plaintiffs' Complaint Should Be Dismissed Because No Plaintiff Has Alleged an Injury-in-Fact.**

Plaintiffs bear the burden to allege an injury-in-fact, but they have not, and nothing in their opposition brief fills the gap.

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, … and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). In the context of a pre-enforcement First Amendment challenge, like this one, a plaintiff must show that some "intended future conduct is arguably proscribed by the [challenged] statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up). And *none* of the Plaintiffs has described any intended conduct that would be banned by the Act or Rule.

### A. The Educator Plaintiffs Lack Standing.

The Educator Plaintiffs describe lessons they would teach, but those lessons—as *they themselves describe them*—plainly do not violate the Act or Rule. Defs.' Mem. of Law In Supp. of Mot. to Dismiss at 11-19, Doc. 42-1 (June 1, 2022) ("MTD"). Without an allegation that the Act or Rule would restrict any future conduct in which Plaintiffs intend to engage, Plaintiffs simply have not alleged the concrete, imminent injury that Article III requires. Plaintiffs have no response to the detailed showing, in our motion to dismiss, that *none* of the statements in their complaint (or declarations) establishes intended conduct that arguably violates the

act. MTD 12-19. Plaintiffs' failure to even engage with our detailed discussion of their allegations on this issue is telling.[1]

Instead, Plaintiffs attempt to *lower the standard*—asserting that "[t]he injury requirement is most loosely applied … where First Amendment rights are involved," Br. at 50, quoting *Hallendale Pro. Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991). But "loosely applied" or not, as the very case Plaintiffs cite explains, "even in a [F]irst [A]mendment context the injury-to-the-plaintiff requirement cannot be ignored." *Id.* Plaintiffs claim their complaint is sufficient because "[e]ach [educator plaintiff] alleges the subject they teach, which is covered by the Act and the fact that the IFA and Regulation restrict their ability to teach their subjects fully and accurately." Br. at 51. But such general allegations do not suffice to show an injury-in-fact. Else, plaintiffs could *always* obtain standing

---

[1] The closest Plaintiffs come is their assertion that the IFA would not allow them to teach about the "widely accepted phenomenon" of "[i]mplicit bias." Br. at 31. But quite apart from the fact that none of the Educator Plaintiffs—as opposed to their expert—complains about the inability to teach implicit bias theory, *nothing in the IFA would prohibit* teaching the theory, at least as it is "widely accepted." For as the same author Plaintiffs cite has explained, a person's implicit biases are *not* determined "solely by virtue of his or her race," but rather by "a variety of factors," including "past experiences, emotional reconditioning, cultural biases," "cognitive balance," "one's desire to maintain social order," "societal stereotypes," and "other potential causal links." Justin D. Levinson, *Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering*, 57 Duke L.J. 345, 362-63 & n.80 (2007).

3

for First Amendment claims by a threadbare allegation that the challenged law restricts their First Amendment rights.

The Educator Plaintiffs also claim they face an injury-in-fact based on the threat of enforcement against them *personally*, but no provision of the Act or the Rule would allow such an enforcement action. The Educator Plaintiffs say that violating the law would "risk serious professional consequences" that include "discrimination lawsuits," Br. at 33; Casanello specifically alleges in his declaration that, if he taught any of the prohibited concepts, he would be "putting [him]self at risk of civil liability," Decl. of Dr. Robert Cassanello at 8–9, Doc. 30-2 (May 18, 2022) ("Cassanello Decl."); and Plaintiffs repeatedly invoke the possibility of a private action brought against them by a student or parent, *see, e.g.*, Br. at 33 (claiming each teacher "must also have confidence every student in the classroom [and] parent of said student" would agree that lessons taught do not violate the law); *id*. at 34 (claiming the "effect of the IFA and Regulation is to punish teachers bold enough to teach difficult topics about race and gender"). Not one of these allegations can establish standing, because there is no enforcement mechanism in the Act, the Rule, or any other provision of Florida law that Plaintiffs have identified, that *would actually expose the Educator Plaintiffs to civil liability*.

The Rule on its face is only enforceable against "school districts." FLA. ADMIN. CODE ANN. R. 6A-1.094124. Yes, the Rule requires that "[i]nstruction on

4

the required topics must be factual and objective," including the specific language of which Plaintiffs complain. *Id*. at 6A-1.094124(3)(b). But the Rule is also clear about the enforcement mechanisms for this requirement—and they *do not* include any actions against teachers. Rather, the Rule sets reporting requirements for *school districts* provides that "[f]ailure to comply with the requirements of this rule may result in the imposition of sanctions described in Section 1008.32," *id*. at 6A-1.094124(9)—which, in turn, empowers the State Board of Education to sanction *only* "early learning coalitions, district school boards, and Florida College System institution boards of trustees," not individual teachers, FLA. STAT. § 1008.32. And the statute expressly provides that "[n]othing in this section shall be construed to create a private right of action." FLA. STAT. § 1008.32(5). Direct enforcement against a teacher is not possible under the Rule.

Nor can the Act be directly enforced against teachers. The Act sets out "six principles of individual freedom" to be added to FLA. STAT. § 1003.42, but it directs "[e]ach district school board" to provide certain required instruction and follow certain principles with regard to all instruction. *Id*. § 1003.42(1)(a). The statute contains no enforcement provision itself, but "encourage[s]" the State Board of Education "to adopt standards and pursue assessment of the requirements." *Id*. § 1003.42(1)(t). The Board has done so *through the challenged Rule*. *See* FLA. ADMIN. CODE ANN. R. 6A-1.094124(1) ("In order to provide information about the manner

5

in which the prescribed courses of study set forth in Section 1003.42(2), F.S., are provided by school districts …"). And as just explained, the Rule *does not* provide for enforcement against individual teachers.

Nor, finally, is there any risk that the Educator Plaintiffs could face "civil liability," Cassanello Decl. at 8-9, under the eight principles that the Act will add to FLA. STAT. § 1000.05. Section 1000.05 explicitly addresses the actions of *public educational institutions*, not their individual employees. It states that

> "[n]o person in this state shall, on the basis of race, ethnicity, national origin, gender, disability, religion, or marital status, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, … *conducted by a public educational institution that receives or benefits from federal or state financial assistance*."

FLA. STAT. § 1000.05(2)(a). This statutory provision "is patterned after [federal] Title IX," *Hawkins v. Sarasota Cnt.y Sch. Bd.*, 322 F.3d 1279, 1286 (11th Cir. 2003), which, in turn, "was patterned after [federal] Title VI," *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979). And as the Eleventh Circuit has explained, based on the statutory text of Title VI and Title IX, suits may be brought *only* against institutions —*not* individuals. *See, e.g., Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169-70 (11th Cir. 2003).

That long-understood limitation on Title VI and Title IX claims is based on statutory language in those federal statutes that parallels the "education institution" language from Section 1000.05 just highlighted. Because Title VI and Title IX

6

prohibit discrimination by *recipients of federal funding*, a lawsuit may only be brought against the recipients of the federal funds—the institutions. Again, Florida's statute is of a kind: because it regulates activities "conducted by a public educational institution that receives or benefits from federal or state financial assistance," any action enforcing it must be addressed to that educational institution, not to any individual teacher.

Past practice under Section 1000.05 confirms what the Statute's text, and the close analogy to federal law, already make clear: liability under this Florida law lies only against education institutions, not individual educators. The private cause of action in 1000.05(8) has existed in its current form *for twenty years* and has been used. *See, e.g.*, *Doe v. Sch. Bd. of Miami-Dade Cty., Fla.*, 521 F. Supp. 3d 1242, 1244 (S.D. Fla. 2019) (suit against schoolboard for alleged sexual assault committed by individual teacher); *Ren v. Univ. of Cent. Fla. Bd. of Trustees*, 179 F.App'x. 680, 680 (11th Cir. 2006). Yet Plaintiffs have identified *no case* in which an individual teacher has been held liable under it. The reason is not hard to see: *individual liability is simply not available*, under Section 1000.05's plain text.[2]

---

[2] Again, even if the Attorney General's enforcement authority under Fla. Stat. § 760.021(1)(b) could conceivably be used against individual teachers, Plaintiffs have completely failed to allege that they intend to engage in any conduct that would trigger the carefully delineated enforcement authority under this section.

All of this means that the Educator Plaintiffs *cannot* have an objective fear of civil liability under the Rule or Act.[3] At most, Educator Plaintiffs could claim to fear that an enforcement action *against their institutional employer* could somehow lead to a downstream personal consequence. But the Educator Plaintiffs have not articulated what consequence that would be, let alone shown that it is anything more than speculative. "When … a plaintiff's asserted injury arises from the government's allegedly unlawful regulation … of *someone else*," standing is much more difficult to establish. *Lujan*, 504 U.S. at 562. Just so here: the Educator Plaintiffs' alleged injury at best "depends on the unfettered choices made by independent actors not before the courts"—school boards or college boards of trustees—"whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id*. The purported risk of civil liability for violating the Act or the Rule cannot establish standing.

The Educator Plaintiffs next fall back on the purported "vague[ness]" of the Act and Rule and the corresponding "chilling effect" on them. Br. at 52. But these

---

[3] Even if Section 1000.05(8)'s private right of action *did* extend to individual teachers, Plaintiffs' challenge to the "chill" they face by virtue of that right of action would still fail for the independent reason that no judgment entered by this Court could prevent private parties from bringing actions under Section 1000.05(8), since any injunctive or declaratory relief would not be binding on them. Accordingly, any risk of injury Plaintiffs face by virtue of the private right of action is not redressable by this Court in this lawsuit. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021).

8

arguments also depend on the possibility of enforcement against the Educator Plaintiffs directly, which as shown, is not possible. *See* Br. at 52 (asserting that the "vague terms of the law … and the enforcement mechanisms in the Act, establish a reasonable threat of enforcement" and that Educator Plaintiffs are "chill[ed]" because they "are subject to the enforcement mechanisms of the Act."). It is well settled that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).

Even if the Educator Plaintiffs *could* make a vagueness argument or claim a "chilling effect" absent some objective fear of enforcement, Plaintiffs have failed to do so here because they do not identify any provisions of the Act or Rule that "are *at least arguably vague* as they apply to [Plaintiffs]." *Harrell v. The Florida Bar*, 608 F.3d 1254 (11th Cir. 2010). As shown in our opening brief, none of the supposedly vague provisions pointed to in Plaintiffs' complaint or declarations is actually vague, and nothing in their response advances the ball.[4] And to have pre-enforcement standing in the First Amendment context based on a law's purported

---

[4] The closest the response brief comes is the assertion that if they taught about "implicit bias, affirmative action and/or other remedial remedies, or America's unfortunate history of slavery and racism" they would be unsure whether they were " 'indoctrinating or persuading' students to a particular point of view." Br. at 46. But we explained in our opening brief why these provisions are not vague, and Plaintiffs do not address our arguments or explain how they remain confused about what these provisions mean.

"chilling effect," a plaintiff must show that their reticence to engage in First-Amendment-protected expression is *objectively reasonable* in light of the challenged law. *Laird*, 408 U.S. at 14. Unless Plaintiffs can identify some specific provision of the law that fails to give fair notice that some specific action they intend to take is prohibited—and they have not done so—they cannot make that showing. Accordingly, the Educator Plaintiffs lack standing to pursue their claims, and this Court lacks jurisdiction to decide them.

### B. The Student Plaintiff Lacks Standing.

Plaintiffs' arguments about the adequacy of the student plaintiff's allegations do not fare any better. Plaintiffs simply assert that RMJ is injured in "her right to access information," without making any attempt to show what information—regarding the nuanced subjects of racism and sexism—a *kindergarten* student would fail to receive by operation of the Act or Rule. Br. at 53. Plaintiffs' access to information claim simply cannot go forward, as pleaded, consistent with Article III.

### C. The Employer Plaintiff Lacks Standing.

Plaintiffs' opposition brief also completely fails to establish that the single Plaintiff challenging the Act's employment provisions—Dr. Hodo—has standing. Plaintiffs repeat their claim that because President Trump's *ban* on diversity and inclusion training in federal agencies ended one of Dr. Hodo's contracts, she has established the likelihood of "the injury she will face when the IFA's prohibitions

on diversity and inclusion training go into effect." Br. at 54. That argument completely ignores that *unlike* the federal ban, the IFA *does not prohibit* Hodo's trainings. Rather, as we explained at length in our motion to dismiss, the Act only prohibits employers from *compelling* their employees to attend them. MTD at 21-23. Hodo makes no allegations that she has any current Florida clients who would cease paying her to deliver these sessions once they can no longer force their employees to attend them. And without such an allegation, Dr. Hodo has shown no injury-in-fact and lacks standing.

**II. Governor DeSantis Is Not a Proper Defendant.**

Governor DeSantis should be dismissed because he is not a proper defendant. As explained in our motion to dismiss, "a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with the enforcement of the provision at issue," Osterback v. Scott, 782 F.App'x 856, 859 (11th Cir. 2019), but Governor DeSantis has no such enforcement authority here. The Florida Board of Education, Board of Governors, and private citizens are empowered to enforce the education-related provisions of the Act and Rule, but not the Governor. MTD at 29-30. Nor does the Governor have any enforcement authority over the employer-related provisions of the Act, which are enforceable only by the Attorney General and private citizens. MTD at 30.

Plaintiffs rely heavily on this Court's decision in *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1078-81 (N.D. Fla. 2021), but that case is not apposite. *Dream Defenders* concerned the definition of a "riot" under Florida law. The Court concluded that the Governor was a proper defendant to the challenge because Florida law gave him two specific powers: the power to call out the state's militia in response to a "riot," *id*. at 1079, and second, the specific power to order "sheriffs to suppress riots and unlawful assemblies and to take direct command of the Florida Highway Patrol to do the same," and to suspend any sheriffs who failed to follow his directives. *Id*. at 1079-80.

Here, the Governor does not have anything like these specific enforcement powers. Plaintiffs argue that the Governor is a proper defendant due to his power to suspend school board members, superintendents, and members of the Florida Commission on Human Relations, but *Dream Defenders*, *refutes* this argument. This Court specifically noted there that "the power to suspend" an enforcing cannot "*alone* . . . establish that Plaintiffs' injuries are traceable to [the] Governor." Rather, it is only where the State law "*combines that power* with the power to" order and even take control of the law's enforcement that the Governor possesses a sufficient connection to the challenged law to make him a proper defendant. *Dream Defenders*, 553 F. Supp. 3d at 1080. Here, the Governor has no similar authority and is therefore not a proper defendant. Other decisions from this Court are in accord. *Namphy v.*

12

*DeSantis*, 493 F. Supp. 3d 1130, 1137 (N.D. Fla. 2020) (holding Governor was not a proper defendant where he had no affirmative authority over voter registration); *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1208-09 (N.D. Fla. 2020) (holding Governor was not a proper defendant where his general executive authority was insufficient to connect him with the duty of enforcing a constitutional amendment forbidding dog racing).

Lastly, Plaintiffs point to a letter the Governor sent to the Commissioner of the Department of Education, but that letter does not support Plaintiffs either. Br. at 55-56 and Ex. 4. In the letter, the Governor simply communicates his interpretation of the law at issue. The Governor is free to share his interpretation of state law with executive agencies, and even to "direct" them to follow his interpretation. Such importuning is not the same as having the formal legal authority to directly enforce the challenged law. Plaintiffs cannot point to any such authority here, so the Governor is not a proper defendant.[5]

---

[5] Defendants made clear in their motion to dismiss that Plaintiffs also "lack standing to sue the Attorney General because it is entirely speculative whether Plaintiffs either intend to engage in conduct that would violate Florida's discrimination laws, or that they would do so in the carefully delineated circumstances that would trigger the Attorney General's authority to enforce those laws." MTD at 28, n.5. Plaintiffs offered no response to this argument in their opposition to Defendants' motion to dismiss. Accordingly, the Attorney General should be dismissed.

Date: June 19, 2022

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper
(Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro hac vice)*
P. Davis Cooper (Bar No. 114059)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
johlendorf@cooperkirk.com
pdcooper@cooperkirk.com
jramer@cooperkirk.com

*Attorneys for Defendants Ron DeSantis, in his official capacity, et al.*


Timothy L. Newhall
Special Counsel
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody, in her official capacity*

# CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendant's Reply Brief in Support of Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 3,155 words as measured by Microsoft Office for Word 365.

/s/    Charles J. Cooper
Charles J. Cooper
