## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DONALD FALLS, et al.,**

   *Plaintiffs*,

**v.**            **Case No.:  4:22cv166-MW/MJF**

**RON DESANTIS, in his official
capacity as Governor of Florida,
et al.,**

   *Defendants*.

_____/

## ORDER GRANTING IN PART AND
## DENYING IN PART MOTION TO DISMISS

In this case, Plaintiffs challenge a state regulation and recently passed law as, among other things, violative of their First Amendment rights.[1] Pending before this Court is Defendants' motion to dismiss. ECF No. 42. Defendants argue (1) that the Governor is not a proper party, (2) that Plaintiffs lack standing, and (3) that, even if Plaintiffs have standing, they have failed to state plausible claims for relief. This Court addresses each argument in turn, beginning with whether the Governor is a proper party.

---

[1] More specifically, Plaintiffs challenge a Board of Education regulation, Fla. Admin. Code R. 6A-1.094121 (2021), and provisions of the Individual Freedom Act (IFA), Ch. 2022-72, Laws of Fla. This Court has already set out this case's background—including the challenged provisions, the parties, and the procedural posture—in its order on Plaintiffs' motion for a preliminary injunction. ECF No. 62. So, this Court sets out in this Order only the background essential to its analysis of Defendants' motion to dismiss.

I

Starting with Governor DeSantis, he asserts he is not a proper defendant as to any of Plaintiffs' claims. ECF No. 42-1 at 33. His argument is clear: "The Governor's general executive authority to enforce state laws and oversee the executive branch, standing alone, 'is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a law.' " *Id.* (citations omitted). This Court agrees. And it has not been shy about dismissing Governor DeSantis from cases where he did "not have more than 'some connection' with the underlying claim." *See Namphy v. DeSantis*, 493 F. Supp. 3d 1130, 1137 (N.D. Fla. 2020); *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1209 (N.D. Fla. 2020). On this argument, this Court can quickly resolve traceability as to Plaintiffs' claims. Plaintiffs have identified no provision of Florida law that provides the Governor with *any* enforcement authority when it comes to the challenged provisions.

This Court is unpersuaded by Plaintiffs' arguments to the contrary, as the cases Plaintiffs rely upon in their papers and at the hearing on the motion for preliminary injunction are distinguishable for myriad reasons. *See, e.g.*, *Luckey v. Harris*, 860 F.2d 1012, 1014 (11th Cir. 1988) (discussing scope of *Ex parte Young* exception to the eleventh amendment and noting that Georgia law provides the Governor of Georgia with a specific, residual power to commence criminal prosecutions); *Bd. of Public Educ. for City of Savannah & Cnty. of Chatham v. State of Ga.*, No. CV 490-

2

101, 1990 WL 608208 (S.D. Ga. Sept. 24, 1990) (discussing Georgia Governor's connection to challenged actions regarding school desegregation in the context of *Ex parte Young* exception to eleventh amendment). Governor DeSantis has no comparable power vis-à-vis the provisions challenged in this case, and thus does not have the requisite connection. Further, the *Ex parte Young* analysis is, if anything, more lenient than Article III's traceability requirement (discussed in-depth below). *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020). Thus, Plaintiffs lack standing to sue Governor DeSantis. *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). Accordingly, Defendants' motion is **GRANTED in part**. Plaintiffs' claims against Governor DeSantis are dismissed.

## II

Next, this Court considers Plaintiffs' standing as to the remaining Defendants. Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

For standing purposes, Plaintiffs can be divided into three rough categories: teachers, students, and employers. This Court addresses each category in turn, starting with the teachers.

A

The teacher Plaintiffs bring pre-enforcement First Amendment claims. Thus, to address their standing, this Court must apply the three-part test enunciated by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014). *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (en banc); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). Under *Driehaus*, the teachers "must show" (1) that they intend "to engage in a course of conduct arguably affected with a constitutional interest," (2) that the challenged provisions arguably proscribe that conduct, "and (3) that [they] [are] subject to 'a credible threat of enforcement.' " *Cartwright*, 32 F.4th at 1119–20 (quoting *Driehaus*, 573 U.S. at 149, 159, 162). Bottom line, to determine whether the teachers have standing, this Court need only "ask whether the 'operation or enforcement' " of the challenged provisions "would cause a reasonable would-be speaker to 'self-censor,' " even though those provisions "fall short of a direct prohibition against the exercise of First Amendment rights." *Id.* at 1120 (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972), *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257

(11th Cir. 2012) and *Wollschlaeger*, 848 F.3d at 1305) (cleaned up). Holding this test in mind, this Court addresses each *Driehaus* factor in turn.

1

In most pre-enforcement First Amendment cases, the first *Driehaus* factor goes uncontested. But not here. Defendants argue that the teachers do not intend to engage in a course of conduct arguably affected with a constitutional interest. This is so, they say, because the teachers' in-class speech is government speech unprotected by the First Amendment. *See, e.g.*, ECF No. 44 at 22. Not so.

Beginning with Dr. Cassanello, consider controlling Eleventh Circuit precedent—*Bishop v. Aronov*, 926 F.2d 1066 (11th Cir. 1991). *Bishop* recognized that while there is no independent right to academic freedom under the First Amendment, there *is* a "strong predilection for academic freedom as an adjunct of the free speech rights of the First Amendment." *Id.* at 1075. Taking *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1998) (which requires courts to ask whether government censorship of curricular student speech advances a legitimate pedagogical purpose) "as its polestar," *Bishop* crafted a balancing test to judge whether a public university's restriction on a professor's speech violates the professor's rights under the First Amendment. *Id.* at 1074. *Bishop* weighed (a) the context in which the speech at issue occurred and (b) the University's position as a public employer against (c) academic freedom. *Id.* at 1074–75. *Bishop*—to be sure—

5

is not the cleanest case, but it at least suggests that a professor's in-class speech is entitled to some First Amendment protection.

Nothing the Supreme Court or the en banc Eleventh Circuit have said since can be read to displace *Bishop.* True, post *Bishop*, the Supreme Court has expanded the government speech doctrine. But, in doing so, it has been careful to note "that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence." *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). For that reason, the Court has not enunciated a test to control in-class speech. *Id. Bishop* thus controls. And while *Bishop* requires careful balancing, the question at this stage is only whether Dr. Cassanello intends to engage in conduct that is "*arguably* affected with a constitutional interest." *Driehaus*, 573 U.S. at 159 (emphasis added) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Dr. Cassanello's speech—if nothing else—is arguably protected. He thus meets the first *Driehaus* prong.

The same is true for Falls and Harper, though the analysis is slightly different. For them, *Kingsville Independent School District v. Cooper*, 611 F.2d 1109 (5th Cir. 1980) governs.[2] In *Kingsville*, an American history teacher at a school in Texas was

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

chastised for discussing "Blacks in American history" and other such "controversial" topics in the classroom. *Id.* at 1111. Essentially admitting that the teacher's instruction on the Reconstruction Era drove their decision, the school's board of trustees declined to renew her contract. *Id.* The teacher filed suit. Applying the Supreme Court's *Pickering* line of cases, the Fifth Circuit held that the First Amendment protected the teacher's speech. *Id.* (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979)).

To be sure, the en banc Eleventh Circuit has since called *Kingsville* into question, noting that *Kingsville* "may not be applicable to the speech of public employees" given subsequent Supreme Court decisions. *Wollschlaeger*, 848 F.3d at 1311 n.6. But noncommittal observations in footnotes do not overrule cases. And, just three years ago, the Fifth Circuit quoted *Kingsville* for the proposition that "classroom discussion is protected activity." *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019) (quoting *Kingsville*, 611 F.2d at 1113). Thus, while *Kingsville* may hang by a thread, it remains binding on this Court. So this Court cannot ignore it, even if it believes that the en banc Eleventh Circuit or Supreme Court might go in a different direction if deciding the issue today. In short—right now, in this Circuit—the First Amendment protects classroom discussion. Falls and Harper's speech is thus arguably affected with a constitutional interest.

2

Moving to the second *Driehaus* factor, Defendants argue that the teachers lack standing because their speech is not "arguably . . . proscribed by" the challenged provisions. *Babbitt*, 442 U.S. at 289. But Defendants parse those provisions too closely. At this stage, the teachers need only show that the challenged provisions "*at least arguably*" forbid their desired expression. *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 (11th Cir. 2010) (emphasis in original) (quoting *Hallandale Pro. Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 762 (11th Cir. 1991)). In *Harrell*, an attorney described a series of advertisements he wished to run and explained how the bar's rules "seem[ed] to proscribe" them. *Id.* The Eleventh Circuit required nothing more. *Id.*; *see also Graham v. Butterworth*, 5 F.3d 496, 499 (11th Cir. 1993) (finding standing where the statute "seemed to proscribe" the plaintiff's desired conduct). The teachers do the same here.

Start again with Dr. Cassanello. In his affidavit, he discusses the "bell curve" theory—which falsely suggests that connections between race and intelligence explain socio-economic disparities. ECF No. 30-2 ¶ 9.[3] Dr. Cassanello asserts that, under the IFA, he cannot explain how proponents of the bell curve theory have "used the concept of merit and innate intelligence to justify socioeconomic inequality

---

[3] It is within this Court's power—when ruling on a motion to dismiss for lack of standing—to consider, "by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

among various races and ethnicities." *Id.* ¶ 10. Similarly, Dr. Cassanello explains that—absent the IFA—he planned to assign *The New Jim Crow. Id.* ¶ 11. That book "posits that America's justice system perpetuates a racial caste system." *Id.* Given that the IFA prohibits promoting the view that "[a] person's . . . status as either privileged or oppressed is necessarily determined by his or her race," it seems to proscribe teaching that our legal system perpetuates a racist caste system. Ch. 2022-72, § 2, at 5–6, Laws of Fla.

Defendants acknowledge Dr. Cassanello's examples of arguably proscribed conduct—like his claim that the IFA prohibits assigning *The New Jim Crow*—but they fall back on the argument that, even if the statute does apply, "Dr. Cassanello would *still* be free to include the text in his syllabus, so long as he teaches it 'in an objective manner without endorsement of the concepts' that the Act rejects." ECF No. 42-1 at 22–23. Is that really all the First Amendment offers, that you can speak all you want as long as you toe the government line? "To ask such a question is nearly to answer it." *Cawthorn v. Amalfi*, 35 F.4th 245, 248 (4th Cir. 2022).

Turn next to Falls. The vast majority of Falls's affidavit consists of (often sarcastic) rhetorical questions suggesting that he cannot teach about the past without sometimes making students feel bad. But the IFA does not bar instruction that incidentally makes students feel bad; it bars *instructing* students that they "*must* feel guilt, anguish, or other forms of psychological distress for actions, in which he or

she played no part, committed in the past by other members of the same race or sex." Ch. 2022-72, § 3, at 11–12, Laws of Fla. (emphasis added). Indeed, Falls suggests that he *does not* so instruct students. ECF No. 30-1 ¶ 8. That said, Falls does allege that he teaches "about our nation's long history of racial segregation and discrimination" and that "many topics [he] discuss[es] . . . could be interpreted as depicting an America contrary to the principles articulated in the Declaration of Independence." *Id.* ¶¶ 11, 15. Drawing every reasonable inference in Falls's favor, he has alleged—by the slenderest of reeds—that his conduct is arguably proscribed by the provisions he challenges.[4]

3

Finally, as to the final *Driehaus* factor, Defendants argue that this Court must dismiss Count I against the Board of Governors because "Plaintiffs cannot trace any injury to the Board of Governors nor can any injury they suffer be redressed by action against that body." ECF No. 42-1 at 14 n.2. In other words, Defendants claim that Dr. Cassanello has not alleged a credible threat of enforcement. This is so, they say, because the Board lacks the "authority to take action against individual professors based on any violation of the Act." *Id.* At the hearing on the preliminary

---

[4] Because this Court ultimately concludes that Falls has standing, it need not consider whether Harper's allegations suffice as well. *See, e.g.*, *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1195 (11th Cir. 2009).

injunction, Defendants extended this argument to Falls's and Harper's claims against the Board of Education.

At least at this stage, the attenuation Defendants identify is not fatal. Again and again, the Eleventh Circuit has explained that "[t]he injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where first amendment rights are involved." *Hallandale*, 922 F.2d at 760. To that end, "[t]he threat of formal discipline or punishment is relevant to the [standing] inquiry, but it is not decisive." *Cartwright*, 32 F.4th at 1120. Without question, a defendant can chill speech even if it lacks the power to punish. For example, a defendant could threaten to refer the plaintiff to an entity that has the power to punish the plaintiff. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 61–63 (1963). Or a defendant could imply that they will use their official powers—whatever they may be—to retaliate against the plaintiff for speaking. *See Okwedy v. Molinari*, 333 F.3d 339, 343–44 (2d Cir. 2003). Thus, while Defendants raise a relevant consideration, the Boards' lack of authority to *directly* punish is hardly decisive. At this stage, that makes all the difference. The teachers allege that the Boards can pressure their institutions to punish them for speaking. *See*, *e.g.*, ECF No. 1 ¶ 39, 40. At the motion to dismiss stage, that's enough.

At least one teacher Plaintiff has satisfied each of the *Driehaus* prongs as to each of the challenged provisions and as to each of the Board Defendants. As the

Plaintiffs conceded at the hearing on their motion for preliminary injunction, Falls and Harper intend to proceed only with respect to the Board of Education, while Cassanello intends to proceed against the Board of Governors. Accordingly, the teachers have standing at the motion-to-dismiss stage with respect to their relevant governing agency. Defendants' motion to dismiss is thus **GRANTED in part** as to Harper's and Falls's claims against the Governor, the Board of Governors, and Attorney General Moody. Defendants' motion to dismiss is also **GRANTED in part** as to Plaintiff Cassanello's claims against the Governor, the Board of Education, and Attorney General Moody. Plaintiffs Harper and Falls may proceed against the Board of Education and Plaintiff Cassanello may proceed against the Board of Governors.

B

Next, this Court addresses RMJ's standing. This Court previously found that RMJ failed to establish a substantial likelihood of standing at the preliminary injunction stage based on the lack of evidence submitted on RMJ's behalf—that is, Plaintiffs supplemented the record with zero evidence to show what materials, discussions, or other information RMJ is (or will be) denied access to by operation of the challenged provisions.

However, at the pleading stage, RMJ need not come forward with additional evidence. Her factual allegations—although scant—and all reasonable inferences drawn therefrom suffice to demonstrate standing at this juncture. *See Glynn Env't*

*Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) ("At the motion-to-dismiss stage, we evaluate standing by determining whether the complaint clearly alleges facts demonstrating each element [of Article III standing]." (citation and quotation marks omitted)).

Contrary to Defendants' characterization in their motion to dismiss, RMJ's allegations are not wholly conclusory. Rather, RMJ alleges particular facts demonstrating that the challenged regulation prohibits instruction in critical race theory—which the Board of Education defines as "the theory that racism is not merely the product of prejudice, but that racism is embedded in American society and its legal systems in order to uphold the supremacy of white persons"—and prohibits use of material from the *1619 Project*. *See* ECF No. 1 ¶¶ 21–22. This prohibition extends to kindergarteners, like RMJ, and has already been enforced to reject "twenty-eight mathematics textbooks from Florida's approved K-12 instructional materials 'because they incorporate prohibited topics or unsolicited strategies, including CRT.' " *Id*. ¶ 23. Based on these factual allegations, this Court may reasonably infer at the pleading stage that the challenged provisions and the provisions' alleged vagueness (discussed further below) will chill RMJ's teachers' classroom discussions. Thus, Plaintiff RMJ will be denied access to historical and sociological information in violation of the First Amendment when she begins

kindergarten in August.[5] *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipient both." (footnote omitted)).

As this Court noted on the record at the preliminary injunction hearing, Plaintiff RMJ's alleged injury is traceable only to the Board of Education. Finally, an injunction prohibiting the Board of Education from enforcing its ban on critical race theory or use of the *1619 Project* materials in instruction is likely to redress, at least in part, Plaintiff RMJ's alleged injury. *See I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014) (noting that relief that "would likely redress (at least in part) the plaintiffs' injury, . . . is enough for standing purposes"). Accordingly, Plaintiff RMJ has standing to proceed against the Board of Education. However, as Plaintiffs conceded at the preliminary-injunction hearing, Plaintiff RMJ does not have standing—nor does she intend to proceed—against any other Defendant. Thus, Defendants' motion to dismiss is **GRANTED in part** as to Plaintiff RMJ's claims against the Governor, the Board of Governors, and Attorney General Moody.

---

[5] Of course, like the teachers, RMJ has established standing at the pleading stage by the thinnest of reeds. To survive further stages of this litigation with more demanding burdens of proof, Plaintiffs must supplement the record with evidence supporting standing as this case progresses.

C

Next, this Court turns to employer standing. As this Court noted in its order denying preliminary injunction, the complications are immediately apparent.

Plaintiff Dr. Tammy Hodo is the president of All Things Diverse, a consulting firm who provides training to clients in the areas of race and ethnicity, implicit bias, microaggressions, institutional racism, anti-racism work, and critical race theory. ECF No. 1 at 3. Plaintiff Hodo brings Count III, claiming the IFA's amendments to the Florida Civil Rights Act of 1992 unlawfully restrict the First Amendment rights of Florida employers. *Id.* at 22. She argues she has standing based on two theories: (1) because she can stand in the shoes of her clients, and (2) she will lose business because the challenged provisions prohibit her clients from requiring employees to attend mandatory trainings she would otherwise provide. Defendants argue Plaintiff Hodo does not have standing to bring this claim under either theory. This Court agrees for the reasons stated below.

First, Plaintiff Hodo has not established that she has standing to bring claims on behalf of her clients. She says in the complaint that the challenged provisions unconstitutionally infringe on the First Amendment rights of her clients. *Id.* at 22. While this point is not addressed in Plaintiffs' response to the motion to dismiss, Plaintiff Hodo's counsel addressed it at the hearing on Plaintiffs' motion for preliminary injunction. Counsel cited *Flast v. Cohen*, in which the Supreme Court

held taxpayers have standing to challenge the constitutionality of a federal spending program. 392 U.S. 83 at 102 (1968).

On the other hand, Defendant argues the test outlined in *Kowalski v. Tesmer* is appropriate to determine whether Plaintiff Hodo has standing to bring these claims on behalf of her clients. ECF No. 58 at 65. In *Kowalski*, the Court reaffirmed the general rule that parties must assert their own legal rights and cannot rest their claims on the legal rights of third parties. 543 U.S. 125, 129 (2004). However, this rule is not absolute, and limited exceptions may be made if plaintiffs can show they have a "close" relationship with the people who possess the right, and there is a "hindrance" to those people bringing their own claims. *Id.* at 130. This Court agrees that *Kowalski* offers an appropriate test to determine whether Plaintiff Hodo can bring a claim on behalf of her clients.

Applying the two-pronged test of *Kowalski*, Plaintiff Hodo has not alleged facts sufficient to confer standing to bring this claim on behalf of her clients. She makes no allegations that she has a close relationship with her clients. In *Kowalski* the Court explained that an existing attorney-client relationship may confer third-party standing, but a hypothetical attorney-client relationship would not. *Id.* at 130-31. In her complaint and declaration Plaintiff Hodo has only referenced past clients, and hypothetical future clients, without alleging that she presently has clients impacted by the law. Additionally, she has not alleged that any of her clients are

16

hindered from bringing a claim on their own. As such, Plaintiff Hodo has not alleged facts sufficient to establish her standing to bring this claim on behalf of her clients.

Second, Plaintiff Hodo argues she has standing because she will lose business as a result of the IFA. Defendants disagree and argue Count III should be dismissed because Plaintiff Hodo does not allege any concrete loss of business attributable to the IFA. ECF No. 42-1 at 26. The closest Plaintiff comes is in offering an anecdotal account of the effects of an unrelated Trump Administration policy that banned diversity, equity, and inclusion trainings for federal employees. Due to the ban, she lost a government client, and, she argues, the same thing will happen now in response to IFA. ECF No. 30-4 at 6. However, the Trump-era policy operated as a blanket ban. But here, the challenged provisions only prohibit trainings that are required as conditions of employment. Thus, employers could still hire Plaintiff Hodo to give trainings to which attendance is voluntary.

While this Court must draw all reasonable inferences in Plaintiffs' favor, the conclusion that Plaintiff Hodo will lose clients as a result of the IFA stacks multiple inferences absent sufficient factual allegations. Rather than allege specific facts identifying any actual or reasonably anticipated disruption to her business or clients in Florida based on the challenged provisions, she asks this Court to speculate about the IFA's effect on her bottom line. Without more this Court cannot draw the reasonable inference that Plaintiff Hodo is injured by the challenged provisions.

17

Accordingly, Defendants' motion to dismiss is **GRANTED in part** as to Count III. Plaintiff Hodo's claims are dismissed without prejudice for lack of standing.

D

Finally, Defendants argue that Plaintiffs have not suffered an injury-in-fact sufficient to sustain their vagueness claim (Count IV) for two reasons; namely, (1) that "Plaintiffs have no liberty interest at stake that could trigger the protections of the federal Due Process Clause" and (2) "that none of the Plaintiffs have plausibly alleged any vagueness in the Rule or the [IFA] . . . that is sufficient to" injure them. ECF No. 42-1 at 23–24.

This Court can easily resolve the first point. Defendants do not dispute that RMJ has a First Amendment right to receive information. And parties may sue to vindicate their "right to receive information" when those who would furnish them that information are discouraged from doing so by a vague law. *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 621 n.5 (1976); *see also Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015) (citing *Hynes* and holding that students had standing to raise a vagueness claim to a statute that did not apply to them but inhibited their right to receive information). Assuming that the challenged provisions are vague, RMJ has standing to challenge them.

The same is true for the teachers. As this Court explained in section II.A.1 above, the teachers' speech is arguably affected with a constitutional interest. So, Defendants' first argument lacks merit.

This Court turns next to Defendants' argument that Plaintiffs have not plausibly alleged any vagueness in the challenged provisions. In arguing that Plaintiffs have not alleged an injury-in-fact because the provisions are not vague, Defendants invite this Court to err. Consider a recent case out of the Eleventh Circuit. There, the district court dismissed a claim against Georgia officials because it concluded that the officials had no legal duty—as the plaintiffs alleged—to provide Spanish-language election materials for Spanish-speaking voters. *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1116 (11th Cir. 2022). Because the defendants had no duty to provide the materials the plaintiffs sought, the district court reasoned, it could not grant the relief the plaintiffs sought, and thus could not redress the plaintiffs' injury. *Id.* That was error. As the Eleventh Circuit explained, "whether [the] [d]efendants ha[d] an obligation to provide certain bilingual materials to voters . . . [was] the legal question at the center of th[e] case." *Id.* By treating that question as a standing issue, "the district court improperly equated 'weakness on the merits with the absence of Article III standing.' " *Id.* (quoting *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015)).

19

So too here. The—or at least one—"legal question at the center of this case" is whether the challenged provisions are unconstitutionally vague. Plaintiffs have identified the provisions they challenge and language that they assert is vague. They have identified the subject matters they teach—like sociology, history, civics, slavery, and America's history of discrimination—topics that the challenged provisions arguably restrict. And they identify arguably vague language in the challenged provisions that apply to the subjects the Plaintiff teachers teach. For example, under the challenged regulation, a theory that "distorts historical events" is otherwise undefined outside the examples of Holocaust denial and Critical Race Theory. *See* Fla. Admin. Code R. 6A-1.094121 (2021). Who is to decide whether a theory distorts historical events? At least arguably, the challenged provisions rely on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008) (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (holding that ordinance criminalizing "annoying" assemblies of three or more persons on sidewalks was unconstitutionally vague on its face) and *Reno v. ACLU*, 521 U.S. 844, 870–71, 871 n.35 (1997)). In short, the complaint goes beyond conclusory allegations. To decide the merits, when addressing standing at the pleading stage, would be error.

III

Next this Court turns to Defendants' 12(b)(6) arguments for dismissal for failure to state a claim. As Defendants' arguments are brief (totaling about a page-and-a-half), so is this Court's analysis. First, Defendants argue that the challenged provisions "regulate pure government speech, so the First Amendment simply does not apply." ECF No. 42-1 at 35. This Court has already rejected that argument above. Defendants also argue that, even assuming that First Amendment applies, "(1) Florida's decisions concerning the content of curricular speech must prevail in disputes with individual educators and (2) the State's indisputably compelling interest in preventing its educators from espousing the prohibited concepts" outweighs any interests Plaintiffs might assert. *Id.* But to say that the state's interests must always win out in a dispute between those interests and educators' First Amendment rights is just another way of saying educators have no First Amendment rights. This Court has already rejected that position. At least at the motion to dismiss stage, RMJ and the teacher Plaintiffs have alleged plausible claims.

IV

In sum, this Court determines that Plaintiffs lack standing to proceed against Governor DeSantis, Plaintiff Hodo lacks standing to proceed as to her claims, Plaintiffs Falls, Harper, and RMJ lack standing to proceed against the Florida Board of Governors, and Plaintiff Cassanello lacks standing to proceed against the Florida

Board of Education. As to the balance of the teachers' and student's claims, this Court finds Plaintiffs have stated plausible claims for relief. Accordingly,

**IT IS ORDERED**:

1. Plaintiffs' motion for to dismiss, ECF No. 42, is **GRANTED in part and DENIED in part.**

2. Plaintiffs' claims against Governor DeSantis are **DISMISSED for lack of standing**.

3. Plaintiff Hodo's claims are **DISMISSED for lack of standing**.[6]

4. Plaintiffs Falls and Harper's claims against the Board of Governors are **DISMISSED for lack of standing**. However, these Plaintiffs may proceed against the Florida Board of Education.

5. Plaintiff RMJ's claims against the Florida Board of Governors are **DISMISSED for lack of standing**. However, Plaintiff RMJ may proceed against the Florida Board of Education.

---

[6] Plaintiff Hodo's claims are dismissed for deficient allegations that fail to establish standing. However, if Plaintiffs seek to amend their allegations to attempt to fix this deficiency, they must so notify this Court.

6. Plaintiff Cassanello's claims against the Florida Board of Education are **DISMISSED for lack of standing**. However, Plaintiff Cassanello may proceed against the Florida Board of Governors.

**SO ORDERED on July 8, 2022.**

**s/Mark E. Walker**
**Chief United States District Judge**