## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DONALD FALLS, et al.,

                *Plaintiffs*,

      v.

RON DESANTIS, in his official
capacity as Governor of Florida, et al.,

                *Defendants.*

Case No. 4:22-cv-166-MW/MJF

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## IN OPPOSITION TO PLAINTIFF CASSANELLO'S MOTION
## FOR A PRELIMINARY INJUNCTION

Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody,
in her official capacity*

September 7, 2022

Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Defendants Ron DeSantis,
in his official capacity, et al.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................2

I.    Dr. Cassanello's Claim Is Incoherent Because He Denies That
Race Exists As An Immutable Characteristic. ...................................3

II.   Dr. Cassanello Has Disavowed Any Argument That His Teaching
Violates The Act. ................................................................6

III.   Dr. Cassanello Offers No Objective Basis For Fearing Enforcement
By The Board Of Governors. ......................................................10

CONCLUSION ................................................................................13

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                 **<u>Page</u>**

*Frontiero v. Richardson*,
    411 U.S. 677 (1973)..................................................................................3

*Garcia v. Gloor*,
    618 F.2d 264 (5th Cir. 1980) ............................................................. 4

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)..............................................................................4

*Harrell v. The Florida Bar*,
    608 F.3d 1241 (11th Cir. 2010) ................................................8, 13

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)..............................................................................8, 9

*Honeyfund.com, Inc. v. DeSantis*,
    No. 4:22-cv-227, 2022 WL 3486962 (N.D. Fla. Aug. 18, 2022)................... 8

*Laird v. Tatum*,
    408 U.S. 1 (1972)........................................................................... 8, 11

*Speech First, Inc. v. Cartwright*,
    32 F.4th 1110 (11th Cir. 2022)....................................................2, 10

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021)........................................................................11

**<u>Statute</u>**

FLA. STAT.
    § 1000.05(4)(a)(1)............................................................................5
    § 1000.05(4)(a)(2)........................................................................... 5

## INTRODUCTION

Dr. Cassanello's response is perhaps most notable for what it does not say. It does not say that his classroom instruction violates the Act. It does not say that he believes or otherwise endorses any of the prohibited concepts. And it does not say that he *intends* to violate the Act by expressing any of the prohibited concepts. Dr. Cassanello has thus effectively disavowed any argument that the Act actually prohibits his intended instruction or speech.

Dr. Cassanello's standing to seek a pre-enforcement injunction, then, depends entirely on whether he can show a credible threat of enforcement against him by the Board of Governors that would justify his self-censorship. But as he stated at his deposition, his self-censorship is based primarily on his fear of enforcement action *by other parties* who he believes may *misinterpret* either the Act or his instruction. At his deposition, Dr. Cassanello expressed the fear that "random people off the street" or a specifically named individual legislator would bring a meritless claim against him. In his response memorandum, Dr. Cassanello now highlights his fear of meritless claims by students. But Dr. Cassanello is not seeking an injunction against a student, a random person off the street, or that individual legislator. Instead, he's seeking an injunction against *the Board of Governors*. And he has no basis for fearing erroneous enforcement against him by the Board.

Dr. Cassanello attempts to salvage his standing by highlighting the Board's recently finalized rule implementing the Act. But that rule *refutes* his argument because it makes clear that the Board will enforce the Act only against *universities*, will require evidence establishing a violation, and will punish only *willful and knowing* violations. Because Dr. Cassanello admits that his instruction does not violate the Act and that he has no intention of violating it, he cannot show an "objective chill" on his speech caused by a reasonable fear of enforcement by the Board. He therefore lacks standing to enjoin the Board's enforcement of the Act.

## ARGUMENT

To demonstrate an imminent injury-in-fact sufficient to support standing to seek a preliminary injunction in this pre-enforcement challenge, Dr. Cassanello must show "that his conduct is arguably proscribed" by the Act and "that he is subject to a credible threat of enforcement." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119-20 (11th Cir. 2022) (cleaned up).[1] He has failed on both scores. Dr. Cassanello has *admitted* that his instruction is not proscribed by the Act, he has disavowed any intent to violate it, and his personal belief that race "does not exist" makes it impossible for him to endorse any of the concepts that are prohibited. Moreover, Dr.

---

[1] He must also show that his conduct is "arguably affected with a constitutional interest." *Speech First*, 32 F.4th at 1119-20 (cleaned up). As Defendants have explained in prior briefing, Dr. Cassanello's classroom instruction is government speech and is thus not protected by the First Amendment. *See, e.g.*, Defs.' Mem. in Opp. to Pls.' Mot. for Prelim. Inj., Doc. 44, at 14-25 (June 2, 2022).

Cassanello faces no credible threat of enforcement by the Board of Governors—the only defendants he is seeking to enjoin. He lacks standing.

## I.   Dr. Cassanello's Claim Is Incoherent Because He Denies That Race Exists As An Immutable Characteristic.

As explained in our previous brief, Dr. Cassanello's idiosyncratic view of race renders his claims incoherent. Dr. Cassanello stated in his deposition that he does not believe that "race is something which exists." *See* Ex. 1 to Notice of Filing Dep. Excerpts, Doc. 73-1 at 143:13-18 (Aug. 12, 2022) ("Dep. Tr."). Instead, he believes a person's race is his or her own "self-ascribed identit[y]." Dep. Tr. 158:14-21. Dr. Cassanello's view of race—that it is fluid, mutable, and merely a discretionary self-ascribed identity—is contrary to the bedrock premise of nondiscrimination laws and jurisprudence. *See* Defs.' Mem. in Support of Defs.' Mot. for Partial Summ. J., Doc. 74-1, at 8-9 ("MSJ Mem."). Racial discrimination is unconstitutional, unlawful, and reprehensible *precisely because* it "is an immutable characteristic determined solely by the accident of birth." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973).

Given Dr. Cassanello's idiosyncratic view, his claim that he is injured by the Act comes apart at the seams. For someone who does not believe "race is something which exists," the Act is an utter irrelevancy. After all, the Act—like the Equal Protection Clause and Title VII—is premised upon the idea that race *does*, in fact, exist; that race is an immutable personal characteristic, not merely an individual's "self-ascribed identity"; and that discrimination on the basis of race should be

3

unlawful *precisely because* it is an immutable characteristic "long recognized as in most circumstances irrelevant" to one's individual merit. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003); *see Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir. 1980) (Title VII prohibits discrimination based on characteristics that are "beyond the victim's power to alter."). Therefore, for Dr. Cassanello, any prohibition on stating, for example, that "one race is morally superior to another race" is simply nonsense, not censorship. He thus has no Article III injury.

Dr. Cassanello's attempt to resist this conclusion misses the point. He argues that the "consensus of those in his field" is that "race is socially constructed and not biologically defined." Pl. Cassanello's Resp. to Defs.' Mot. for Partial Summ. J., Doc. 77, at 2-4 (Aug. 31, 2022) ("Resp. Mem."). But whether or not that is true, Dr. Cassanello *never explains* how someone who views race as a "self-ascribed identity" that can change at the discretion of each individual can even conceivably endorse any of the propositions identified by the Act. Because Dr. Cassanello does not believe the premise underlying the prohibited concepts (not to mention the Equal Protection Clause and all civil rights laws)—that race exists as an immutable characteristic—he cannot plausibly assert that the Act infringes his academic freedom or free speech rights.

As a backup, Dr. Cassanello contends that his view of race as discretionary is merely the "contemporary" view of race prevalent among scholars in his field, while

his teaching centers on "the historically biological construction of race." Resp. Mem. 2-4. But Dr. Cassanello's discussion regarding one of the texts he intends to assign suggests otherwise. *See* Decl. of Dr. Robert Cassanello ¶ 15, Doc. 30-2 (May 18, 2022) (citing WHY BUSING FAILED). In describing the book, Dr. Cassanello said it discussed how "predominantly white antibusing activists" opposed desegregation. *See id.* When asked how one can know these people were "white" antibusing activists, Dr. Cassanello did not simply say they were white based on a "historically biological construction of race." Instead, he assumed the author was using the contemporary understanding of discretionary self-identity: "So I didn't do the research. Delmont did the research and he's ascribing people being Black and white. And I'm assuming he's basing that on their own self-ascribed identities." Dep. Tr. 158:17-21.

Moreover, even if Dr. Cassanello uses the *historically biological construction of race* in his teaching about race, that *refutes* his standing rather than bolsters it. The Act concerns "contemporary" *endorsement* of the enumerated concepts—not historical description of past understandings of race. The provisions primarily prohibit statements about *the present*—*i.e.*, that members of one race "*are* morally superior to members of another race," FLA. STAT. § 1000.05(4)(a)(1) (emphasis added), or that "[a] person, by virtue of his or her race ... *is* inherently racist," *id.* § 1000.05(4)(a)(2) (emphasis added). If it is really true that when Dr. Cassanello

"researches, writes, and instructs about" race he only "discusses the historically biological construction of race," rather than any "contemporary view of race," Resp. Mem. 3-4, then his research, writing, and instruction *plainly* do not implicate the Act, which is concerned with assertions about the present.

## II.   Dr. Cassanello Has Disavowed Any Argument That His Teaching Violates The Act.

At his deposition, Dr. Cassanello testified that he does not believe, and has no intention of endorsing, any of the concepts the Act prohibits. *See* MSJ Mem. 10-14. He explained in detail that, as part of his teaching method, he does *not* espouse or endorse the reading material that he assigns. *Id.* at 11-12. While Dr. Cassanello now claims that his assignment of various books might give rise to a claim that he violated the Act, even the portions of his deposition testimony cited in his response brief make clear that any such claim would be based on a *misunderstanding* of his decision to assign the book. *See* Resp. Mem. 7-8 (citing deposition testimony expressing concern that "[s]omeone could construe" the classroom discussion of a book as "an endorsement" even though "I may not have been intending that"). Indeed, while Dr. Cassanello indicated a general "fondness" for the book *Wages of Whiteness*, his testimony makes very clear that it would be wrong to think that his assignment of a book—"[a]ny book"—should be construed as him "espous[ing], promot[ing], or advanc[ing]" its contents. Dep. Tr. 117:15-118:2.

6

Even if Dr. Cassanello's expression of fondness for the book could reasonably be interpreted as an endorsement, his description of the thesis and content of the book has provided no basis for concluding it espouses any of the prohibited concepts. By his own description, the book discusses a labor movement in a specific time and place—New York in the 1800s. *See* Ex. 1 to Notice of Filing Dep. Excerpts, Doc. 79-1 at 127:6-128:7 (Sept. 7, 2022). And when asked what in the book would support the proposition "that today ... a person's moral status as either privileged or oppressed is necessarily determined by his or her race," Dr. Cassanello did not identify any particular content within the book. *See Id.* at 132:15-134:7.

In addition, Dr. Cassanello affirmatively rejected nearly all the concepts prohibited by the Act. MSJ Mem. 12-13. And for those concepts he declined to reject outright, his hesitance was based on a demonstrably erroneous reading of the Act's plain language. *See id.* at 13-14.[2] Given his teaching method and his personal belief, Dr. Cassanello's instruction does not and could not violate the Act's prohibition on espousing or otherwise endorsing the prohibited concepts.

---

[2] Plaintiffs claim that our brief only addresses Dr. Cassanello's misunderstanding of Concept 7 and "do[es] not mention the other concepts Cassanello feared his teaching violates, such as concept 3." That is not so; we discuss Dr. Cassanello's testimony regarding Concept 3 (as well as Concept 8) at pages 13-15 of our brief, which show that Dr. Cassanello rejected Concept 3 in part, as it pertains to an individual's "moral character," and clearly misunderstands the remainder of it, pertaining to an individual's "status as privileged or oppressed."

Dr. Cassanello's main response is to argue that the Act is vague. *See* Resp. Mem. 5-6. But to demonstrate standing in a pre-enforcement vagueness challenge, Dr. Cassanello must show (among other things) that the Act's prohibitions "are at least arguably vague *as they apply to him*," *Harrell v. The Florida Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) (emphasis added), to such a degree that his self-censorship is *objectively reasonable* due to a "threat of specific future harm," *Laird v. Tatum*, 408 U.S. 1, 14 (1972). Dr. Cassanello cannot possibly make this showing because he has *admitted* that his instruction is not proscribed by the Act. *See* MSJ Mem. 10-14.

Dr. Cassanello points to this Court's conclusion, in *Honeyfund.com, Inc. v. DeSantis*, No. 4:22-cv-227, 2022 WL 3486962 (N.D. Fla. Aug. 18, 2022), that the Act's distinction between "discussion of the [eight] concepts ... in an objective manner" and "endorsement of the concepts" is unconstitutionally vague. Defendants continue to believe respectfully, that there is no impermissible vagueness in this distinction, for the reasons presented in prior briefing in *Honeyfund* and in this case. But even if the Court continues to see the matter otherwise, it surely should not credit *Dr. Cassanello*'s assertion that he struggles to understand the meaning of the word "endorsement." Resp. Mem. 5.

A plaintiff who understands the meaning of a provision as applied to his own expression "cannot raise a successful vagueness claim ... based on the speech of

8

others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). And Dr. Cassanello expressed *no confusion whatsoever* about the idea of "endorsing" a concept when it was discussed repeatedly during his deposition. Indeed, when explaining his belief that race does not exist, Dr. Cassanello used the word numerous times with no reservation: "I don't want to endorse the notion of race and say race is something which exists. So I don't want to say, you know, 'I believe everyone of every different race should be treated equally' because then I'm endorsing the notion of race, that I'm endorsing." Dep. Tr. 143:12-19. He used the word "endorse" as anyone would use it in everyday discourse and never suggested the word was vague or unknowable. He cannot backtrack from his deposition testimony in a last-ditch attempt to seize on this Court's *Honeyfund* decision to survive a motion for summary judgment.[3]

In all events, even assuming Dr. Cassanello could show that he reasonably cannot understand one of the Act's prohibitions, he would *still* have failed to establish any imminent injury sufficient to support standing. For the only remaining named defendant to Dr. Cassanello's vagueness challenge—the Board—has promulgated an implementing rule making clear that it will enforce the Act only against universities and only for the *willful and knowing* failure *to correct* violations.

---

[3] The same goes for his contention that he does not understand the word "objective," Resp. Mem. 5, given his assertion that he has an "objective fear" to support standing on a theory of self-censorship, *id.* at 10.

The rule further makes clear that instructors like Dr. Cassanello can be subject to discipline under the rule only if the University, after investigation, concludes that the instructor has violated the Act, has been mandated to conform his or instruction to it, but has nonetheless *refuses to do so*. Importantly, neither the rule's scienter requirement nor its opportunity to cure apply to the employment provisions of the Act that are at issue in the *Honeyfund* litigation. And given these limitations, and Dr. Cassanello's own testimony that he does not intend to endorse any of the prohibited concepts, he cannot possibly fear that either that the Board or his University will somehow act against him for violating the Act.

## III.   Dr. Cassanello Offers No Objective Basis For Fearing Enforcement By The Board Of Governors.

Finally, Dr. Cassanello lacks standing for the independent reason that he cannot demonstrate that his classroom instruction is "objectively chill[ed]" by the prospect of any named Defendant's enforcement of the Act. *Speech First*, 32 F.4th at 1120. During his deposition, Dr. Cassanello repeatedly stressed that the Act would force him to self-censor because of the risk that random "people off the street" or, separately, a single specifically named legislator would misconstrue Dr. Cassanello's classroom instruction and sue him. *See* MSJ Mem. 16-17. But neither people "off the street" nor that individual legislator are vested with authority to enforce the Act. *Id.* at 17. And neither that legislator nor a random person are defendants in this suit. Self-censorship out of fear that a non-party who lacks

10

enforcement authority might bring a meritless lawsuit is the epitome of "a 'subjective chill'" that is "not an adequate substitute for ... a threat of specific future harm." *Laird*, 408 U.S. at 13-14.

Dr. Cassanello responds by highlighting the possibility of lawsuits by *another* non-party to justify his self-censorship: his students. Resp. Mem. 10. Again, no injunction this Court could enter against the Board of Governors could do anything to alleviate Dr. Cassanello's fear that a student might bring suit based on a misinterpretation of his instruction or a misinterpretation of the Act. For the historical limits on the Court's equitable power do not permit it to "enjoin the world at large" or "purport to enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) (internal quotation marks omitted). Thus, Dr. Cassanello may not seek an injunction against the Board of Governors based on a fear that others—students, one isolated legislator, or random people on the street—will misconstrue his instruction, the Act, or both and bring a meritless claim.

Dr. Cassanello insists that he does indeed fear that the Board of Governors will misconstrue the Act and enforce it against him, specifically highlighting the Board's recently finalized rule implementing the Act. *See* Resp. Mem. 9-11; Ex. A to Notice of Filing of Final Regulation, Doc. 75-1 (Aug. 29, 2022) ("Rule 10.005"). But Rule 10.005 shows precisely the opposite: that Dr. Cassanello has no objective

basis to fear enforcement by the Board *against him* based on a *misreading* of his instruction or the Act.

Rule 10.005 is limited in three ways. First, the Board, as noted earlier, will enforce the Act only against "a university," not against individual teachers. *See* Rule 10.005(4)(d). Second, the Board will enforce the Act only if a claim is "substantiated," *id.*, meaning that the Board has "establish[ed] the existence or truth of a particular [violation] through the use of competent evidence," *see* Rule 10.005(1)(d). And third, the Board will enforce the Act only if there is evidence that the university "*willfully and knowingly* engaged in conduct at the institutional level that constituted a substantiated violation of" the Act. Rule 10.005(4)(d) (emphasis added). Indeed, the Board will not even investigate unless it receives "a credible allegation that a university willfully and knowingly failed to correct a violation" of the university's own regulation implementing the Act. Rule 10.005(4)(a).

It necessarily follows from these three limitations of the rule that Dr. Cassanello has no basis for fearing enforcement by the Board. First, and most obviously, Dr. Cassanello is not "a university." Rule 10.005(4)(a)(d). Second, Dr. Cassanello's claimed injury is based, again, on the fear that the Act will be *mistakenly* enforced against him—based on a *misinterpretation* of his instruction or of what the Act proscribes—and Rule 10.05 requires that any violation be established through the use of competent evidence. Accordingly, a complaint against

12

Dr. Cassanello based on an erroneous interpretation of his instruction or the Act will not cut it. Third, and relatedly, the rule creates a scienter requirement—applying only if a university "willfully and knowingly" violated the Act. Therefore, even if Dr. Cassanello were "a university," and even if the Rule's "competent evidence" requirement were ignored, Dr. Cassanello could not even *theoretically* be subject to any injury under Rule 10.005 based on a *mistaken or unintended* endorsement of a prohibited concept.[4] That alone dooms his attempt to show standing.

## CONCLUSION

For the foregoing reasons, the Court should deny Dr. Cassanello's motion for a preliminary injunction and grant summary judgment for Defendants on Dr. Cassanello's claims.

---

[4] Dr. Cassanello's contention that the Board's "intent to enforce the rule may be inferred," Resp. Mem. 11 (citing *Harrell*, 608 F.3d at 1257), is thus completely irrelevant. While it may be reasonable to infer that the Board intends to enforce its rule *in general*, Dr. Cassanello cannot show any objectively reasonable risk that they will enforce it *against him*, for all of the reasons just explained.

Date: September 7, 2022                        Respectfully submitted,

/s/ Timothy L. Newhall                         /s/ Charles J. Cooper
Timothy L. Newhall                             Charles J. Cooper (Bar No. 248070DC)
*Special Counsel*                              John D. Ohlendorf (*Pro Hac Vice*)
Complex Litigation                             Megan M. Wold (*Pro Hac Vice*)
Office of the Attorney General                 John D. Ramer (*Pro Hac Vice*)
The Capitol, PL-01                             COOPER & KIRK, PLLC
Tallahassee, FL 32399-1050                     1523 New Hampshire Avenue, N.W.
Telephone: (850) 414-3300                      Washington, D.C.  20036
timothy.newhall@myfloridalegal.com             Telephone:  (202) 220-9600
                                               Facsimile:  (202) 220-9601
                                               ccooper@cooperkirk.com
*Counsel for Defendant Ashley Moody,*          johlendorf@cooperkirk.com
*in her official capacity.*                    mwold@cooperkirk.com
                                               jramer@cooperkirk.com

                                               *Counsel for Defendants Ron DeSantis,*
                                               *in his official capacity, et al.*

14

## **LOCAL RULE 7.1(I) CERTIFICATE OF WORD COUNT**

Pursuant to Northern District of Florida Rule 7.1(I), the undersigned counsel hereby certifies that the foregoing Defendants' Reply Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiff Cassanello's Motion for a Preliminary Injunction, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(I), contains 3,197 words as measured by Microsoft Office for Word 365.

Date: September 7, 2022

Respectfully submitted,

/s/ Timothy L. Newhall
Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody,
in her official capacity.*

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 220-9600
Facsimile:  (202) 220-9601
ccooper@cooperkirk.com
johlendorf@cooperkirk.com
mwold@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Defendants Ron DeSantis,
in his official capacity, et al.*