## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DONALD FALLS, et al.,**

        *Plaintiffs*,

  v.                              Case No.  4:22cv166-MW/MJF

**RON DESANTIS, in his official**
**capacity as Governor of Florida,**
**et al.,**

        *Defendants*.

_____/

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Sparking the latest battle in this three-front war over the Individual Freedom Act's constitutionality, Defendants move for partial summary judgment as to Plaintiff Dr. Robert Cassanello's standing. ECF No. 74. Defendants also ask this Court to deny Dr. Cassanello's pending motion for a preliminary injunction. Because, drawing all reasonable inferences in Dr. Cassanello's favor, he has established standing, Defendants' motion for summary judgment is **DENIED**. As for Dr. Cassanello's motion for a preliminary injunction, this Court takes Defendants' arguments under advisement.

I

Because there are several challenges to the IFA pending before this Court, it is useful to set out this case's relevant procedural history before addressing

Defendants' arguments. In this case, five Plaintiffs sued Governor DeSantis, Attorney General Moody, the Commissioner of the Department of Education, and the Florida Board of Governors of the State University system.

Plaintiffs include two public school teachers (Donald Falls and Jill Harper), a history professor at UCF (Dr. Cassanello), a kindergartener enrolling in the Nassau County public school system (RMJ), and a diversity and inclusion consultant (Dr. Tammy Hodo). Relevant here, Plaintiffs Falls, Harper, and Cassanello claim that the IFA's challenged provisions violate their right to free expression and academic freedom (Count I). ECF No. 1 ¶¶ 57–61.

Though Plaintiffs challenge several of the IFA's provisions, Defendants' current motion implicates only one of those provisions. That provision amends the Florida Education Equity Act (FEEA), which prohibits discrimination in public education. The IFA amends the FEEA to add eight categories of prohibited discrimination to Florida's existing education law:

> It shall constitute discrimination on the basis of race, color, national origin, or sex under this section to subject any student or employee to training or instruction that espouses, promotes, advances, inculcates, or compels such student or employee to believe any of the following concepts:
> 1. Members of one race, color, national origin, or sex are morally superior to members of another race, color, national origin, or sex.
> 2. A person, by virtue of his or her race, color, national origin, or sex is inherently racist, sexist, or oppressive, whether consciously or unconsciously.

3. A person's moral character or status as either privileged or oppressed is necessarily determined by his or her race, color, national origin, or sex.
4. Members of one race, color, national origin, or sex cannot and should not attempt to treat others without respect to race, color, national origin, or sex.
5. A person, by virtue of his or her race, color, national origin, or sex bears responsibility for, or should be discriminated against or receive adverse treatment because of, actions committed in the past by other members of the same race, color, national origin, or sex.
6. A person, by virtue of his or her race, color, national origin, or sex should be discriminated against or receive adverse treatment to achieve diversity, equity, or inclusion.
7. A person, by virtue of his or her race, color, sex, or national origin, bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the person played no part, committed in the past by other members of the same race, color, national origin, or sex.
8. Such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin, or sex.

Ch. 2022-72, § 2, at 5–6, Laws of Fla. (amending §§ 1000.05, Fla. Stat.). This provision also contains a carve-out, stating that the foregoing "may not be construed to prohibit discussion of the concepts listed therein as part of a larger course of training or instruction, provided such training or instruction is given in an objective manner without endorsement of the concepts." *Id.* § 2, at 6.

The FEEA applies to all K-20 public education in Florida. *See* § 1000.05(2)(a), Fla. Stat. And since Plaintiffs filed this action, the Florida Board of Governors has adopted a regulation requiring Florida universities to investigate suspected violations of the FEEA, as amended by the IFA, and discipline employees

3

who violate the Act. ECF No. 75-1 at 3–4. The regulation also gives the Board the power to refer complaints to individual universities and penalize universities that fail to follow the regulation. *Id.* at 4–5.

After filing their complaint, Plaintiffs moved for a preliminary injunction, which this Court denied as to Plaintiffs Falls, Harper, RMJ, and Hodo. ECF No. 62. This Court then dismissed Governor DeSantis as a Defendant and dismissed Plaintiff Hodo's claims for lack of standing. ECF No. 68. In light of the then-pending Florida Board of Governors regulation, however, this Court took the motion for a preliminary injunction under advisement as to Dr. Cassanello.

Now, Defendants claim that recent discovery proves that Dr. Cassanello lacks standing. On that basis, they ask this Court to grant partial summary judgment and deny Dr. Cassanello's motion for a preliminary injunction.

## II

Before turning to the merits, this Court sets out the relevant legal standard. As to Defendants' motion for summary judgment, this Court accepts the facts in the light most favorable to Plaintiff, *see Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008), and does not resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Summary judgment is appropriate if Defendants "show[] that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine"

4

dispute exists "if the evidence is such that a reasonable jury [or, here, this Court] could return a verdict for [Plaintiff]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id.*

As to Plaintiffs' motion for a preliminary injunction, A district court may grant a preliminary injunction if the movant shows: "(1) it has a substantial likelihood of success on the merits;" (2) it will suffer irreparable injury "unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). The "affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's reaching the merits, which in turn depends on a likelihood that [a] plaintiff has standing." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring and dissenting).

Finally, as to standing, Dr. Cassanello brings a pre-enforcement First Amendment claim. Thus, this Court must apply the three-part test enunciated by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014). *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (en banc);

*see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). Under *Driehaus*, Dr. Cassanello "must show" (1) that he intends "to engage in a course of conduct arguably affected with a constitutional interest," (2) that the challenged provisions arguably proscribe that conduct, "and (3) that he is subject to 'a credible threat of enforcement.' " *Cartwright*, 32 F.4th at 1119–20 (quoting *Driehaus*, 573 U.S. at 149, 159, 162). Bottom line, to determine whether Dr. Cassanello has standing, this Court need only "ask whether the 'operation or enforcement' " of the challenged provisions "would cause a reasonable would-be speaker to 'self-censor,' " even though those provisions "fall short of a direct prohibition against the exercise of First Amendment rights." *Id.* at 1120 (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972), *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012) and *Wollschlaeger*, 848 F.3d at 1305) (cleaned up).

With these standards in mind, this Court turns to the parties' arguments.

III

A

Defendants argue that Dr. Cassanello lacks standing because—by his own admission—he does not wish to violate the IFA. In other words, Defendants argue that the IFA is not causing Dr. Cassanello to self-censor. In advancing their main argument, Defendants make three sub-arguments.

6

*First*, Defendants argue that Dr. Cassanello *cannot* violate any of the IFA's eight principles because he does not believe that race exists. *Second*, Defendants argue that Dr. Cassanello does not plan to violate the IFA because he does not endorse any material he assigns. Rather, Dr. Cassanello fears only that someone could misconstrue his instruction as endorsing a prohibited concept. *Third*, and finally, Defendants argue that Dr. Cassanello himself rejects most of the prohibited concepts and misunderstands the rest. Thus, they say, Dr. Cassanello is not reasonably self-censoring. *See Cartwright*, 32 F.4th at 1119–20.

Plaintiffs retort that Dr. Cassanello *does* believe that race exists. He merely believes that race is not biological, but rather is a social construct. More importantly, they say, Dr. Cassanello testified that he still researches, writes, and teaches using the historical, biologically based concept of race. As to Defendant's second point, Plaintiffs point to this Court's prior ruling that a parallel provision of the IFA is vague and argue that what constitutes endorsement is not so clear cut. Plaintiffs do not directly address Defendants' third point.

## B

Having weighed the parties' arguments, this Court finds that Defendants are not entitled to summary judgment. To explain why, this Court addresses each of Defendants' arguments in turn.

1

Start with Defendants' argument that Dr. Cassanello does not believe in race, and thus cannot violate the IFA. That is an unfair characterization of Dr. Cassanello's testimony. For example, in a portion of his deposition, Dr. Cassanello synthesizes the scholarship of Michelle Alexander, whose book, *The New Jim Crow*, he would assign if not for the IFA:

> Q And this labeling Black men as criminals and felons --
> A Uh-huh.
> Q -- as you put it, disproportionately labeling Black men, but that -- but am I correct, though, that the label of white men as criminals and felons who have been convicted is -- is also the same label, correct?
> A No.
> Q How so?
> A Okay. So there is a proportionality to this. Right? So if you look at stats, right, and, you know, Black men and women are caught in the criminal justice system at higher proportions to white men and women. Right? So on the part of people who might be so inclined to pursue the moral character of one race over another might look at those stats and say, "See, Black people have a propensity to criminality because look at these stats of convictions, stats of incarceration," da, da, da, yada, yada, yada. But you don't hear the same argument for white criminality or white people who are caught in the criminal justice system. So see, there's a difference in how the population is interpreted by some. That's the – that's the kind of clothing of a status, if you will.
> Q And that is based upon the disproportionate conviction and imprisonment of Blacks?
> A Right.

ECF No. 73-1 at 11. Plainly, Dr. Cassanello is capable of discussing race without producing incomprehensible gobbledygook. Plus, Dr. Cassanello explained that, although he believes that terms such as Black and White are social constructs, he

8

still uses them when he teaches. *Id.* at 18 (explaining that, in class, Dr. Cassanello uses the term "Black" to describe "people of African decent").

Bottom line, whether Dr. Cassanello believes that race is socially or biologically determined, he remains perfectly capable of violating the IFA.

2

Next, Defendants argue that Dr. Cassanello does not wish to—and cannot— violate the IFA because he does not endorse any material he assigns. Rather, Dr. Cassanello fears that someone could misconstrue his teachings as endorsing a prohibited concept:

> I think you're focusing on the wrong thing here. What -- how it can be construed, how it can be construed, right, I think is -- is the idea that someone sees that I'm assigning that book. Right? And then that book is going to come with a set of prejudices along the lines of what is prohibited in this piece of legislation.

*Id.* at 13. Again, Defendants' argument falls short. On this score, two points bear mentioning.

First, Defendants place too much weight on Dr. Cassanello's claims that he does not endorse material, and that he fears that others will misconstrue the act of assigning material as endorsing that material. Sure, one *could* interpret this statement as Defendants do; namely, that Dr. Cassanello does not believe that his instruction will violate the IFA, but that some will mistakenly believe that it violates the IFA. But one could just as easily interpret Dr. Cassanello to be saying, "I personally do

not believe I am endorsing these concepts when I assign them, but within the meaning of the IFA, I would be endorsing these concepts." So framed, Dr. Cassanello's chill is reasonable, and stems from Defendants' enforcement of the IFA.

Second, the IFA permits discussion of the forbidden concepts "provided such training or instruction is given in an objective manner without endorsement of the concepts." Ch. 2022-72, § 2, at 5–6, Laws of Fla. Even if "without endorsement" is not problematic, "objective manner" is. As Dr. Cassanello explained, he very much intends to violate this admonition:

> And what we, as historians, must do is understand that we are not objective. Right? The history produced is not objective. Right? History I produce is not objective. And I would say never the articles I have written, the books I've done, represent anything approaching a variable truth. It represents a truth. It represents what I believe to be true; what I'm trying to interpret; what I'm trying to prove. Right? But it doesn't represent something that is, sort of, universally true, if you will. Right? And so when I instruct students on the practice of history, right, I have this objectivity discussion with them because what I don't want them to come away with is the idea that there is a single objective truth. It's philosophically, sort of, a school of thought that I think predominates in history as an academic discipline now. And so the problem with objectivity and the problem with -- specifically with our -- the guidance we have been given at UCF – I've seen at the University of Florida and the language I've seen in this document, as well as previous laws passed about the instruction of history in the Florida legislature, all assume that history is objective truth. It's a single objective truth. Right? And it's not. It's not what I do, and it's not how I instruct students to think, if their intent is to become a practicing historian in some capacity.

ECF No. 73-1 at 7.

In short, drawing all reasonable inferences in Dr. Cassanello's favor, he reasonably believes that the IFA bars him from providing instruction that he would otherwise provide.

3

Finally, Defendants argue that Dr. Cassanello rejects almost all of the prohibited concepts and simply misunderstands the ones that he does not reject outright. But for at least one concept, it is Defendants who misunderstand.

 Consider concept 3, which prohibits endorsing the concept that "[a] person's . . . status as either privileged or oppressed is necessarily determined by his or her race, color, national origin, or sex." Ch. 2022-72, § 2, at 5–6, Laws of Fla. Defendants argue that "[i]t is plain from the Act's use of the word 'necessarily' that the prohibited concept is categorical." ECF No. 74-1 at 18. And, Defendants say, "Dr. Cassanello stressed that he was merely contending that a greater 'proportion' of oppressed people are racial minorities." *Id.* at 18.

This argument misunderstands Dr. Cassanello's testimony about *The New Jim Crow*. Look again to the testimony quoted in section III.B.1 *supra*. True, Dr. Casssanello testified that "Black men and women are caught in the criminal justice system at higher proportions to white men and women." ECF No. 73-1 at 11. But that is not where the categorical component comes in. As Dr. Cassanello explained, though not all Black people interact with the criminal justice system, the

disproportionate ratio of Black people in the criminal justice system creates a skewed perception of Black people as a whole—which necessarily impacts all Black people. *See* ECF No. 77 at 127.

Contrary to Defendants' position, drawing all reasonable inferences in Dr. Cassanello's favor, this *does* violate the IFA's prohibitions on suggesting that one's status as oppressed is necessarily determined by race. Thus, Dr. Cassanello's speech arguably runs afoul of at least one of the IFA's provisions.

IV

In sum, at the summary judgment stage, Dr. Cassanello's testimony does not establish that he has suffered no injury traceable to Defendants' enforcement authority under the IFA. Accordingly, Defendants' motion for partial summary judgment is **DENIED**. That said, this Court recognizes that it must view the same evidence in a different light when considering Dr. Cassanello's motion for a preliminary injunction. And so it takes Defendants' arguments under advisement as

they relate to that motion.

In sum,

**IT IS ORDERED**:

Defendants' motion for partial summary judgment, ECF No. 74, is **DENIED**.

**SO ORDERED on September 8, 2022.**

**s/Mark E. Walker**

**Chief United States District Judge**