UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD FALLS, et. al.,
    Plaintiffs,

vs.                              CASE NO: 4:22-cv-00166 MW-MJF

RON DESANTIS, in his official
Capacity as Governor of Florida, et. al.,
    Defendants.
_____/

**AFFIDAVIT OF DANIEL EVANS IN SUPPORT OF NON-PARTY THE SCHOOL BOARD OF PINELLAS COUNTY, FLORIDA'S VERIFIED MOTION TO QUASH SUBPOENA**

STATE OF FLORIDA

COUNTY OF PINELLAS

BEFORE ME, the undersigned authority, on this 4th day of November, 2022, personally appeared DANIEL J. EVANS, who after having been duly sworn, deposes and says:

1.     My name is Daniel J. Evans. I am over the age of eighteen years and competent to testify as to all matters in this Affidavit. I have personal knowledge of the facts and information contained within this Affidavit and the statements made herein are based on my personal knowledge.

Exhibit E

1

2. I am the Associate Superintendent of Teaching and Learning Services, for the School District of Pinellas County. In that capacity, I have personally reviewed the Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Civil Action (hereinafter "Subpoena") issued on October 21, 2022, which was directed to the Pinellas County School District – Superintendent: Kevin Hendrick and served on October 25, 2022.

3. In my position as Associate Superintendent of Teaching and Learning Services, I have personal knowledge regarding the employee staffing of the School District of Pinellas County, Florida, as to both instructional and support staff, including administrators, and also regarding classroom teaching and curriculum materials.

4. As the Associate Superintendent, I also have personal knowledge of the regular business practices of the School District of Pinellas County, Florida including having a working knowledge of the record-keeping practices and system relating to records, including but not limited to any that I reviewed in order to make the statements or provide the information contained in this affidavit. I am a person who is qualified to act as a records custodian for any and all documents of the School District of Pinellas County. As an Associate Superintendent and a records custodian for the School District of Pinellas County, Florida, I consider any documents that I reviewed or relied upon in any way in providing the

statements or information in this affidavit to be business records of the School District of Pinellas County, Florida. Any document that I reviewed or relied upon in any way in providing the statements or information in this affidavit was a document that: was made at or near the time of the events being recorded in the document; was made by, or from information transmitted by, a person with knowledge of those events; was kept in the course of a regularly conducted business activity; and it was the regular practice of that business activity to make the document.

5. The Subpoena served upon the Pinellas County School District (hereinafter "School Board") entailed twenty-two (22) items of document requests to be produced by November 4, 2022, as part of discovery in the case *Donald Falls, et al v. Ron Desantis, et al.*, U.S. District Court for the Northern District of Florida, Case No. 4:22-cv-00166.

6. The scope of and the time required for the production of documents sought by the Subpoena are unreasonable, unduly burdensome, and disruptive to operations of the School Board, including both instructional and support staff, including administrators. The production sought would also cause an unreasonable expense in terms of the number of staff who will be needed for the process, the time involved, and the cost of identifying, locating, retrieving and copying of multiple matters. There are a total of 128 schools in Pinellas County, with a total of

approximately 18,000 classes, a total of approximately 13,384 employees of which approximately 7,395 are instructional staff, approximately 5,580 are support staff, and approximately 410 are administrators. While it is impossible to calculate precisely the expense associated with the requested production, it is estimated that the process would require the full-time commitment of many staff members simply to perform the investigation to initially identify what responsive documents might exist. This would not account for the amount of time that each member of the instructional, support staff, or administrators would have to provide in responding to the process.

7. Based on a review of the Subpoena, it is estimated that it would take, at a minimum, between 3 and 5 minutes to conduct the initial interview with each employee to attempt to identify whether they have any documents responsive to the twenty-two (22) Items in the Subpoena. If the amount of time per instructional staff, support staff and administrators is limited to 5 minutes each, that would total of over 1,100 hours just for the initial investigation to identify potential documents. To conduct that initial investigation (using 1,110 hours) it is estimated that, applying 40 hours per week as a full-time employee equivalence, it would take at least 27 employees working 40 hours each to conduct the initial 5-minute investigation to cover all employees. Using 5 minutes for each interview, the combined amount of estimated time to conduct the initial investigation process would be over 2,200 hours

when accounting for both the person conducting the investigation and the person responding. Any questions that result from the vagueness or overbreadth of the language used in any request would require the addition of more time to this process. Even if the initial interview of the 13,384 employees took only 3 minutes on average, that would still be an estimated total of 1,338 hours needed between the people being interviewed and those conducting the investigation to complete the initial part of the process.

8. Because it is unknown at this point what the results of the initial investigation process would be, it is also unknown what would be the estimated amount of time needed to locate, retrieve, copy, and produce the documents. It would be unduly burdensome on the School Board to be required to allocate employees to spend well in excess of 1,000 hours in an attempt to identify the requested documents as set forth in the Subpoena.

9. The scope of and time required for the School Board to identify, locate, and produce of the documents sought are also an unduly burdensome means to obtain documents as many of these items are readily obtainable from the Florida Department of Education and/or by consulting legislative history relative to House Bill 7.

10. The scope of the twenty-two (22) items are not only overbroad insofar as they are duplicative of items obtainable from the Florida Department of Education

and/or by consulting legislative history relative to House Bill 7, they are also out of proportion to the needs of the case considering the following factors:

a) the importance of the issues at stake in the action;

b) the importance of the discovery in resolving case issues;

c) the parties' relative access to relevant information; and

d) whether the burden of expense of the discovery requested outweighs the likely benefit.

11. An example of how the scope of the requested documents, and therefore time required for the School Board to identify, locate, and produce the requested documents are overbroad and vague include Item 1, wherein the Subpoena seeks the production of all documents received by the School Board or its agents from any state agency, including the Florida Department of Education ("FLDOE") in connection with House Bill 7 directing teachers to "submit any supplemental teaching materials, not included in state approved texts, prior to dissemination of these materials to any student." What constitutes supplemental materials is not defined. What grades and courses they pertain to are not specified. No distinction is drawn between what are statutorily state approved texts and other texts adopted by a school board. See, F.S. 1006.28 – 1006.40. To respond to this request would effectively require the School Board to search every grade level and course material from elementary school through high school. This process would have to be

conducted separately for each class which would create an undue burden on both instructional staff and administrative staff conducting the investigation.

12.   Another example of how the requests are overbroad and vague is Item 2 which seeks "any and all communications in your possession, or in the possession of employees, agents, or staff from the Department of Education" that are "concerning teachers use of non-State approved materials in any class, including but not limited to courses in English, History, and Social Studies". As with item 1, attempting to gather this information would require the School Board to search every grade level and course material from elementary school through high school which would create an undue burden on staff and staff time. This search would also include every employee, agent, or staff as it relates to "communications". The difficulties with responding to this request are further compounded by the failure of the Subpoena to specify whether this includes supplementary materials, which is a key distinction.

13.  The overbreadth, vagueness, undue burden, imposed by the Subpoena can further be seen in Items 3, 4, and 5. Item 5, for example, pertains to the production of documents involving state-wide teacher training sessions "concerning the teaching of racial history to public school students within your district." What is meant by or included in the term "racial history" is neither defined nor explained. State standards set forth in F.S. 1003.42 include African-American History, the

7

History of African Peoples, contributions of the Hispanic community to the United States, the History of the Holocaust, as examples. Under the language of the Subpoena, the School Board would be required to speculate as to what it is meant by the term "racial history" to determine what curriculum materials might fit within that description as well as whether any grade levels would not have to be involved in the search. Additionally, based on the vagueness of the request it does not identify whether supplementary materials are also included. Items 1-5 are representative of what is problematic throughout the requests. Items 7-14 and 19-20 present similar difficulties for the School Board in responding.

14.     Additionally, the requests are not only overbroad, vague, and open-ended, they also provide no time frame that could assist the School Board in its review of what Plaintiffs are seeking. With respect to the Subpoena itself, as to items 1-20 there is no limit or identification as to how far back in time School Board staff must search, or whether any item can be narrowly tailored to fit a given time period for a particular issue that is part of their lawsuit in which this Subpoena was issued.

15.     Item 7 provides an example of the lack of time period in seeking production of very broad and undefined "educational materials" which description could include all such materials from pre-kindergarten classes through grade 12. As to overbreadth and vagueness, this request does not define whether it includes remediation and multi-tiered intervention-based materials. As to the time period,

this request does not identify wow far back in time the School Board must search or whether it would include a search when modifications have occurred.

16. I am aware that through communications between the School Board counsel and the attorney for the plaintiff issuing the Subpoena that an offer was extended to limit the time period for the search and production to January 1, 2022 to the present. However, even with that limited time period, the production of the requested documents, given the scope or and vagueness of the requests themselves would still create an unreasonable and undue burden on the School Board because the process of attempting to identify, locate, and produce the documents, even for the more limited time period, would still have to be the same.

17. The Subpoena also created an unreasonable response time and undue burden with the setting of a November 4, 2022, deadline date. The School Board was served on October 25, 2022. It is unreasonable to expect the School Board to research, identify, locate, retrieve, and review twenty-two (22) items of documents and produce them in Jacksonville, Florida by November 4, 2022. The burden on the number of staff that will be needed for the project, as well as the extensive amount of time for staff to complete the project, is out of proportion to what the plaintiffs in the lawsuit are seeking from the School Board. This time period of ten days from service is particularly unreasonable for the School Board, as a non-party. Because the School Board is not a party to the lawsuit in which the subpoena was issued it

was not anticipating the need to identify, locate, retrieve and produce documents of this scope during a ten-day period while the schools, and therefore teaching and administrative staff, are already fully engaged in the full-time function of educating the students of Pinellas County.

18. I am aware that through communications between the School Board counsel and the attorney for the plaintiff issuing the Subpoena that an offer was made to extend the time period to produce the documents to November 29, 2022. However, even with an extension to November 29, 2022, the scope of the requested documents, and therefore time required for the School Board to identify, locate, retrieve, and produce the requested documents, given the overbroad and vague nature of the requests, would still create an unreasonable and undue burden on the School Board because the process of attempting to identify, locate, retrieve and produce the documents would still have to be the same. Moreover, during the period between November 4, 2022 and November 29, 2022, there is the Thanksgiving holiday during which schools are closed from November 21, 2021 through November 25, 2021. This is a period of time during which many employees, including members of the instructional staff and administrators, historically take additional vacation time and would not be available to participate in the process.

19. The plaintiff in this matter has made no offer of substantial or particularized need for the materials requested in the Subpoena nor offered to pay

10

the expense of the production. This is particularly true since there is a less burdensome and intrusive means of obtaining requested items from the Florida Department of Education.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Daniel J. Evans

STATE OF _Florida_ )
COUNTY OF _Pinellas_ )

BEFORE ME, the undersigned authority, this _4_ day of _November_, 2022 personally appeared _Daniel J. Evans_ who is _personally known_ or produced identification ___ (type of identification produced _____), and upon being first duly sworn according to law, deposes and says that he/she executed the foregoing Affidavit and that the statements and allegations contained therein are true and correct.

Notary Public: _____
Printed Name of Notary:
_Kerry L. Michelotti_
My Commission Expires: _12-17-2025_