## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DONALD FALLS, et al.**

      **Plaintiffs,**

**vs.**                               **Case No.:  4:22-cv-00166-MW/MJF**

**RON DESANTIS, et al.**

      **Defendants.**

_____

## PLAINTIFF FALLS'S SECOND MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW

Plaintiff Donald Falls, by and through undersigned counsel and pursuant to Fed.R.Civ.P. 65, hereby moves this Court to enter its Order preliminarily enjoining Defendant Florida Board of Education from enforcing provisions of Florida's Individual Freedom Act ("IFA"), the related administrative regulation codified at Fla. Admin. Code. R. 6A-1.094124(3)(b) ("Regulation"), and the recently enacted Board of Education Rule providing for discipline to teachers who violate the same. In support thereof, Plaintiff Falls states as follows:

1.    Plaintiff Donald Falls ("Falls"), a high school teacher, previously sought a preliminary injunction against Defendant Florida Board of Education ("Board of Education"). (Doc. 4).[1]

---

[1] Plaintiffs Harper and RMJ also previously moved for a preliminary injunction.

2.     Relevant here, after a lengthy hearing and much briefing between the parties, the Court denied a preliminary injunction for Falls finding he lacked standing at that time. *See* (Doc. 62 at 12-15).

3.     Falls did not file an appeal following this Court's Order.

4.     The Court's unappealed Order was correct when entered, as Falls lacked the heightened requirements for standing to obtain a preliminary injunction.

5.     However, nearly four months following the entry of the Order, the Florida Board of Education approved and passed a rule providing for "revocation or suspension" of a teacher's "individual educator's certificate" "or other penalties" for engaging in conduct that would violate the IFA. *See* Fla. Admin. Code R. 6A-10.081(2)(a)8.

6.     This Rule now creates standing for Falls to obtain a preliminary injunction against the Florida Board of Education.  Whereas the argument before against standing was framed as "hip bone connected to the leg bone," the foot of the Board of Education is now firmly on the throats of Florida's teachers.

7.     The new Rule, coupled with the IFA and Regulation, imposes unlawful restrictions on the First and Fourteenth Amendment rights of teachers like Falls, whose classroom discussion is protected in this Circuit. *Kingsville Independent School District v. Cooper*, 611 F.2d 1109 (5th Cir. 1980).

8.      First, they intrude on the free expression and academic freedom of Florida's teachers by imposing a pall of orthodoxy over the classrooms. These provisions suppress a wide range of viewpoints accepted by academics for the sole reason that Florida's conservative lawmakers disagree with them. In other words, the IFA and Regulation amount to viewpoint discrimination in violation of the First Amendment.

9.      Second, these provisions are unconstitutionally vague. They employ sweeping general principles with which Florida's educators are required to either conform or are prohibited from disagreeing. These broad principles are subject to various interpretations and allow the State to arbitrarily decide what speech is prohibited and what speech is permitted.

10.     As such, Falls is likely to show that the IFA, Regulation, and subsequent Rule implementing it violate the First and Fourteenth Amendment rights of Florida's teachers.

11.     Furthermore, Falls will suffer irreparable harm if a preliminary injunction is not issued because of these provisions' sweeping restrictions on his First Amendment rights.

12.     The balance of harms also favors issuance of an injunction because the State lacks any legitimate interest in enforcing an unconstitutional statute.

13.     Likewise, the public interest favors enjoining statutes that infringe on citizens' First and Fourteenth Amendment rights.

14.     Indeed, this Court has already found the IFA to be unconstitutional in violation of the First Amendment because it amounts to viewpoint discrimination as well as unconstitutionally vague in violation of the Fourteenth Amendment. *Pernell v. Fla. Bd. of Governors*, ___ F.Supp.3d. ___, 2022 WL 16985720 (N.D. Fla. Nov. 17, 2022). As a result, this Court has enjoined the IFA's enforcement on the college and university level. *Id.*

15.     The result should be the same here as (1) Falls now has standing since he is now subject to discipline if he violates the IFA (Rule 6A-10.081(2)(a)8.); (2) his classroom discussions are protected by the First Amendment in this Circuit (*Kingsville*); and the IFA violates the First and Fourteenth Amendments (*Pernell*).

WHEREFORE, Plaintiff Donald Falls respectfully requests this Court enter an order preliminarily enjoining Defendant Florida Board of Education from enforcing the IFA, the Regulation (F.A.C. 6A-1.094124(3)(b)), and its recently amended Rule (F.A.C. 6A-10.081(2)(a)8.

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u> <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Falls is entitled to a preliminary injunction because he satisfies each prong of the four-part test necessary for the issuance of a preliminary injunction. Specifically, (1) Falls is likely to prevail on the merits of his constitutional claim; (2) he will be

irreparably injured in the absence of an injunction against Defendant's unconstitutional activities; (3) the granting of a preliminary injunction will cause less harm to the Defendant than would be caused to Falls in the absence of a preliminary injunction; and (4) the public interest would clearly be served by enjoining Defendant's unconstitutional acts. *See Nadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992).

## I.    **Substantial Likelihood of Success on the Merits**

Central to substantial likelihood of success on the merits prong is whether a plaintiff has standing. *See* (Doc. 62 at 11). Addressing this element, unlike before, Falls now meets this threshold question in light of the Florida Board of Education's recently passed Rule, which subjects Falls (and all Florida teachers) to mandatory discipline if they violate the IFA. *See* Fla. Admin. Code. R. 6A-10.081(2)(b)8.

## A.    **Standing**

This Court previously denied Falls a preliminary injunction because he failed to meet the heightened burden required to show standing to obtain a preliminary injunction. (Doc. 62 at 12). The three-part test for determining when standing exists requires a plaintiff to show (1) they have suffered an injury in fact, (2) the injury is traceable to the defendant, and (3) a favorable ruling can redress the injury. *Lujan v. Defs of Wildlife*, 504 U.S. 555, 560-61 (1992). Previously, this Court ruled that Falls failed to show traceability and redressability; therefore, this Court did not address

injury. However, with this recent amendment to Fla. Admin. Code R. 6A-10.081, Falls now meets the three prongs required to show standing.

### i.      Injury in Fact

In order to establish an injury-in-fact, a plaintiff must demonstrate they hold "a legally cognizable interest that has been or is imminently at risk of being invaded." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010). "The injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where First Amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced." *Hallandale Pro. Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991). Furthermore, it is well established that a plaintiff is not required to wait until they are subject to the ultimate consequence of a law before they may file suit. "[Courts] will not force a plaintiff to choose between intentionally violating a law to gain access to judicial review and foregoing what he or she believes to be constitutionally protected activity in order to avoid criminal prosecution." *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000); *West Virginia by and through Morrisey v. U.S. Dept. of Treasury*, ___ F.4th ___, 29 Fla.L.Weekly C2167a, 2023 WL 334914, *5 (11th Cir. Jan. 20, 2023) ("A plaintiff need not 'expose himself to liablity' to have standing to challenge the enforcement of a law.").

"[A]n actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998). The injury is self-censorship. *ACLU v. The Fla. Bar,* 999 F.2d 1486, 1492 (11th Cir. 1993). The fundamental question of standing in "speech code" cases "is whether the challenged policy 'objectively chills' protected expression." *Speech First, Inc. v. Cartwright,* 32 F.4th 1110, 1120 (11th Cir. 2022).

"In order for a plaintiff alleging that his speech was chilled to have standing, he or she must show that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution." *Pittman v. Cole*, 267 F.3d 1269, 1283–84 (11th Cir. 2001). A credible threat of prosecution arises when the following factors are considered (1) whether a plaintiff intends to engage in a course of conduct arguably affected by a constitutional interest; (2) whether plaintiff's conduct is "arguably proscribed by [t]he statute" they are seeking to challenge; and (3) whether there is a threat of some future enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014).

Falls now meets each of these requirements. In his Declaration, Falls provides examples of teaching he planned to engage in that is arguably proscribed by the statute at issue. For example, Falls states that he teaches "about our nation's long history of racial segregation and discrimination" and that "many topics [he]

7

discuss[es] … could be interpreted as depicting an America contrary to the principles articulated in the Declaration of Independence." Falls Declaration (Doc. 30-1 at ¶¶ 11, 15). This would run afoul of the Board's Regulation prohibiting the same. *See* Fla. Admin. Code R. 6A-1.094124. Falls has also now answered Interrogatories from the Board of Education which further expound upon how his instruction would violate the various concepts set forth in the IFA. A copy of his Interrogatory Answers are attached hereto as Exhibit 1. In order to avoid violating the law, he must now change the lesson plans and messages he conveys to students or be subject to discipline.

There also exists a credible threat of prosecution against Falls, given the recent Rule enacted by the Board of Education. The vague terms of the law, which abut First Amendment-protected activities, and the enforcement mechanisms now passed by the Board of Education, establish a reasonable threat of enforcement. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 302 (1979) (risk of injury was not speculative where "the State has not disavowed any intention of invoking the criminal penalty provision" even though state defendants maintained that the criminal penalty provision "may never be applied."); *see also, Harrell v. Florida Bar,* 608 F.3d 1241, 1244 (11th Cir. 2010) (finding a lawyer's speech was chilled, and therefore attorney had standing to sue, where certain Florida Bar rules failed to "provide a person of ordinary intelligence a reasonable opportunity to know what is

prohibited and fail[ed] to provide explicit standards for those who apply them.").

Indeed, Defendant has also vigorously defended the IFA against legal challenges,

which permits the Court to infer an intent to enforce the challenged statute. *Pernell*,

2022 WL 16985720, \*40 (citing *Wollschlager*, 848 F.3d at 1305)[2].

Falls is no doubt a teacher who teaches in areas the law proscribes and is

subject to the enforcement mechanisms of the Board of Education's disciplinary

Rule. Accordingly, Falls has properly alleged an injury-in-fact.

### ii.    Traceability and Redressability

In order to show traceability, a plaintiff must show the injury is "fairly

traceable to the challenged action of the defendant, and not the result of the

independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

With the passage of the recent Rule, Falls is now subject to injury caused by the

Board of Education. Specifically, should Falls teach any lesson plans endorsing the

eight prohibited concepts, he will be subject to disciplinary action under the

authority the Board of Education's Rule. *See* Fla. Admin. Code R. 10.081(2)(2)8.

In order to prove redressability, a plaintiff must show "the injury will be

readdressed by a favorable decision." *Lujan*, 504 U.S. at 561. An injunction

prohibiting the Board of Education from enforcing the law would give Falls the

---

[2] Additionally, the current commissioner of the Board of Education (Manny Diaz, Jr.) was a principal sponsor of the Stop WOKE Act when he previously served as a member of the Florida Senate. *See* 2022 Fla. Sen. Bill 148.

9

freedom to teach the eight concepts without fear of discipline. As such, Falls has now proven redressability. *See e.g. West Virginia*, 2023 WL 334914 at *6 (quoting *Harrell*, 608 F.3d at 1257).

In sum, Falls has now properly established standing to seek an injunction, which he previously was unable to do. As such, the substance of his claims must now be addressed.

**B.    Constitutionality of the IFA and Regulation**

    **i.    Classroom Discussion is Protected by the First Amendment**

As this Court has previously recognized, the First Amendment protects classroom discussion. (Doc. 68 at 6-7) (citing *Kingsville Independent School District v. Cooper*, 611 F.2d 1109 (5th Cir. 1980)).[3] *Kingsville* involved a public high school history teacher who employed a controversial technique called "Sunshine simulation" to teach American history of the post-Civil War Reconstruction period. *Id.* at 1111. The technique involved roleplaying by students to recreate that period of history and engendered both strong feelings from students on racial issues and complaints from parents. *Id.* Despite receiving strong reviews for her performance, the school district elected not to renew the teacher's contract, with several board members citing the Sunshine simulation as the reason. *Id.*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The teacher thereafter brought claims under 42 U.S.C. §1983 alleging her termination violated her First and Fourteenth Amendment rights. *Id.* at 1111–12. The former Fifth Circuit held that classroom discussion was protected by the First Amendment. *Id.* at 1113. It further held that a teacher could only be discharged for discussions conducted in the classroom if those discussions "clearly over-balance[d] her usefulness as an instructor." *Id.* As such, the Eleventh Circuit not only recognizes First Amendment protections for classroom instruction, but it also demands a substantial justification from the State when it seeks to regulate such instruction. *See also Pred v. Board of Public Instruction of Dade County, Fla.*, 415 F.2d 851, 856 (5th Cir. 1969) ("[T]he protections of the First Amendment have been given special meaning when teachers have been involved" and "[s]imply because teachers are on the public payroll does not make them second-class citizens regarding their constitutional rights."). "In short...in this Circuit—the First Amendment protects classroom discussion." (Doc. 68 at 7). And, of course, the State cannot regulate teachers in a manner that "cast[s] a pall of orthodoxy over the classroom." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).

11

**C.     The IFA and Rule Banning Critical Race Theory Constitute Viewpoint-Based Restrictions in Violation of the First Amendment**

This Court has already determined that the IFA constitutes an unlawful viewpoint based restriction in violation of the First Amendment. *Pernell*, 2022 WL 16985720, *41. As mentioned before, this Circuit protects classroom discussion, *Kingsville, supra*, and this Circuit has further held viewpoint based restrictions on curricular activity are not permitted. *Searcy v. Harris*, 888 F.2d 1314, 1319, n.7 (11th Cir. 1989)( "Although the Supreme Court did not discuss viewpoint neutrality in *Hazelwood*, there is no indication that the Court intended to drastically rewrite First Amendment law to allow a school official to discriminate based on a speaker's views."); *Id.* at 1325. For this Court's prior reasons elucidated in *Pernell*, it should likewise hold the IFA imposes unconstitutional viewpoint based restrictions on Falls.

**D.     The IFA and Regulation Are Vague**

**i.     The IFA**

Even if the IFA did not violate the First Amendment, this Court has also held that the IFA is impermissibly vague in violation of the Fourteenth Amendment's Due Process Clause. *Pernell*, 2022 WL 16985720 at *42. The provisions of the IFA that apply to college professors likewise apply to K-12 teachers like Falls here. Rather than restate this Court's prior findings, Falls asserts that the IFA is unconstitutionally vague for those very reasons.

12

ii.     **The Regulation**

The Regulation at issue provides as follows:

> (b) Instruction on the required topics must be factual and objective, and may not suppress or distort significant historical events, such as the Holocaust, slavery, the Civil War and Reconstruction, the civil rights movement and the contributions of women, African American and Hispanic people to our country, as already provided in Section 1003.42(2), F.S. Examples of theories that distort historical events and are inconsistent with State Board approved standards include the denial or minimization of the Holocaust, and the teaching of Critical Race Theory, meaning the theory that racism is not merely the product of prejudice, but that racism is embedded in American society and its legal systems in order to uphold the supremacy of white persons. Instruction may not utilize material from the 1619 Project and may not define American history as something other than the creation of a new nation based largely on universal principles stated in the Declaration of Independence. Instruction must include the U.S. Constitution, the Bill of Rights and subsequent amendments.

Fla. Admin. Code R. 6A-1.094124(3)(b).

While the Regulation at issue here was not addressed in *Pernell*, it likewise suffers from the same constitutional infirmities this Court held plagued the IFA for the reasons set forth below.

To begin, the Regulation incorporates the IFA. The Regulation cross-references "Section 1003.42(2), F.S." Subsection (h) of that particular statutory section specifically incorporates the principles of the IFA. *See* §1003.42(2)(h), Fla. Stat. (2022) ("However, classroom instruction in curriculum may not be used to

indoctrinate or persuade students to a particular point of view inconsistent with the principles enumerated in subsection (3) or the academic standards."). Subsection (3) of that statute thereafter restates and/or paraphrases the principles set forth in the IFA. *See* §1003.42 (3)(a) – (f), Fla. Stat. (2022). Thus, by incorporating the IFA, the Regulation suffers the same constitutional infirmities that plague the IFA and should likewise be enjoined. In fact, these provisions of section 1003.42 were amended by HB-7, later enacted as Ch. 2022-72, Laws of Florida, which is the legislation passed relating to the IFA. *See* Section 3, Ch. 2022-75, Laws of Florida.

Second, like the IFA, the Regulation requires instruction to be "objective." *See* Fla. Admin. Code. R. 6A-1.094124(3)(b). This Court held such a provision unconstitutional in *Pernell*, 2022 WL 16985720 **46-47.

Third, the Regulation prohibits teachers from offering instruction that "suppress[es] or distort[s] significant historical events." *Id.* Yet, the Regulation offers no guidance on how to determine whether instruction meets this threshold other than to offer examples that include critical race theory and materials obtained from the 1619 Project. *Id.* Given that the 1619 Project is a Pulitzer-prize winning piece of journalism that has inspired a wide-array curricular materials, its inclusion among the list of banned materials opens the door for state officials to act against virtually any historical theory they might disagree with.

14

Fourth, even if a teacher tried to abide by the examples set forth in the Regulation, they would find themselves having difficulty doing so. Critical race theory lacks a singular definition even among its proponents. The Regulation's definition — "that racism is not merely the product of prejudice, but that racism is embedded in American society and its legal systems in order to uphold the supremacy of white persons" — sweeps in concepts about institutional racism that far exceed the scope of traditional critical race theory.

The logical and intended effect of these broad principles is to chill teachers' speech when they discuss difficult topics related to race and sex. The State is the ultimate arbiter over whether a given statement violates one of these broad principles. When faced with such ambiguity, most teachers (like Falls) will choose to (a) err on the side of caution and either avoid these topics altogether or (b) espouse ideas with which Florida's conservative politicians agree, rather than risk discipline, which is now mandated by the Board of Education's Rule 6A-10.081(2)(b)8. As such, the Regulation, like the IFA, constitutes an unconstitutional viewpoint restriction and is unconstitutionally vague.

## II.   **Irreparable Harm**

Violations of First Amendment freedoms are commonly considered irreparable injury in regard to a preliminary injunction. The United States Supreme Court, in *Elrod v. Burns*, 427 U.S. 347, 373 (1976), held that the "loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See also*, *Walters v. National Assoc. of Radiation Survivors*, 473 U.S. 305 (1985).

## III.   **Balance of Harms**

The balance of harms favors Falls because the Board of Education has "no legitimate interest in enforcing an unconstitutional ordinance." *See KH Outdoor, LLC. v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). The harm to Falls in suppression of his First Amendment rights outweighs any harm to the State, as the implementation of these laws not only curbs teachers' speech, but could subject them to discipline for engaging in protected speech if these laws are enforced.

## IV.   **Public Interest**

The public interest is always served when constitutional rights are vindicated. *See, e.g., League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) ("The vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition."); *A Choice for Women v. Butterworth*, 2000 WL 34402611, at *13 (S.D. Fla. June 2, 2000) ("the public interest is well served when the Court protects the constitutional rights of the public"). As such, the public interest strongly favors the issuance of an injunction.

V.    **Bond**

This Court previously considered whether to require a bond in furtherance of the preliminary injunction in a challenge to the IFA provisions governing university professors/students employers. This Court recognized the unlawful impact on the plaintiffs' First Amendment rights and weighed against requiring a bond and waived the requirement. *Pernell*, 2022 WL 16985720, *51; *Honeyfund.com, Inc., et al. v. DeSantis, et al.*, 2022 WL 3486962, (N.D. Fla. 2022). It should so rule here.

## CONCLUSION

For the above reasons, Plaintiff Donald Falls respectfully asks this Court to preliminarily enjoin the Florida Board of Education from enforcing the IFA, Regulation, and Rule at issue.

Respectfully submitted,

Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Camille Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:  (904) 356-9661
Facsimile:   (904) 356-9667
Email:       sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFFS

18

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to

**Charles J. Cooper, Esquire,** ccooper@cooperkirk.com, **Davis Cooper, Esquire,**

pdcooper@cooperkirk.com, **John D. Ohlendorf, Esquire,**

johlendorf@cooperkirk.com, **John Ramer, Esquire,** jramer@cooperkirk.com,

**Timothy Newhall, Esquire,** timothy.newhall@myfloridalegal.com, **Alannah Lee**

**Shubrick, Esquire,** alannah.shubrick@myfloridalegal.com, via Electronic Mail

this 13th day of February, 2023.

_____
ATTORNEY