IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD FALLS, et al.,

    *Plaintiffs*,

v.                                       Case No.:  4:22cv166-MW/MJF

RON DESANTIS, in his official
Capacity as Governor of Florida,
et al.,

    *Defendants*.

_____/

## ORDER FOR SUPPLEMENTAL BRIEFING ON JURISDICTION

    This matter is before this Court following a hearing on Plaintiff Donald Falls's second motion for preliminary injunction. ECF No. 99. This Court has a duty to ensure it has jurisdiction at every stage of the proceeding, regardless of whether the parties raise the issue. In reviewing this case, this Court has new doubts about whether the remaining Plaintiffs had Article III standing at the time they filed this action. Specifically, for the reasons set out below, both Plaintiffs seem to have fallen short of establishing, from the outset of this case, that their injuries were traceable to Defendants' conduct.

    Plaintiffs filed this action on April 22, 2022, the same day HB 7 was signed into law and months before any of the Defendants took official action pursuant to the commands of section 1000.05(6), Florida Statutes, to implement the challenged

amendments to the Florida Equity in Education Act. ECF No. 1. At the time Plaintiffs filed the complaint, they challenged section 1000.05(4)(a)'s viewpoint prohibitions as enforced by the Defendants, relying not on any specific enforcement authority pursuant to section 1000.05(6), but instead arguing that Defendants could enforce the challenged provisions through their general enforcement authority. *See* ECF No. 1 at ¶ 39.[1] As this Court recently held, general supervisory and enforcement authority to ensure compliance with state and federal laws, on its own, is insufficient to establish traceability for standing purposes. *See Link v. Diaz*, --- F. Supp. 3d ---, 2023 WL 2984726, at *4 (N.D. Fla. Apr. 17, 2023) (Walker, C.J.). With respect to the Defendants' specific enforcement authority, the Board of Governors Defendants did not propose any regulations to enforce the challenged provisions until July 2022, and the Board of Education appears to have taken even longer to implement a regulation enforcing section 1000.05(4). The new enforcement mechanism that Plaintiff Falls now relies on in seeking a preliminary injunction, which enables Defendants to revoke a teacher's license for failure to comply with section 1000.05(4)(a)'s mandate and which went into effect in November 2022, did not exist

---

[1] Plaintiff Falls also challenges the HB 7's amendments to section 1003.42(3), Florida Statutes. However, as discussed at the hearing on Plaintiff Falls's second motion for preliminary injunction, this provision lacks a specific enforcement provision—both at the time this suit was filed and presently. Because the lack of an enforcement mechanism defeats traceability, Plaintiff Falls need not address section 1003.42(3) in his response to this Order. The same is true with respect to Plaintiffs' challenge to Florida Administrative Code Rule 6A-1.094124, which was implemented almost a year before HB 7 was signed into law.

2

when Plaintiffs filed this suit. The question, properly framed, is whether section 1000.05(6), Florida Statutes, and the allegations in Plaintiffs' verified complaint, are sufficient to establish traceability at the outset of this case.

This Court previously denied Defendants' motion to dismiss, concluding that Plaintiffs had, "by the slenderest of reeds," alleged sufficient allegations to establish standing to proceed at the pleading stage. ECF No. 68 at 10. In so doing, this Court was guided by the parties' briefing and focused on the parties' primary dispute concerning whether Plaintiffs Falls and Cassanello had sufficiently alleged an injury-in-fact with respect to their pre-enforcement First Amendment challenges. However, this Court was *not* focused on how these Plaintiffs' alleged injuries were traceable to the Defendant Board members. And when this Court denied Plaintiff Falls's first motion for a preliminary injunction, it found that his evidentiary showing regarding traceability did not satisfy the heightened evidentiary burden he faced at the preliminary-injunction stage. ECF No. 62 at 14–15.

Plaintiff Falls has now filed a second motion for preliminary injunction, claiming that the recently amended Florida Administrative Code Rule 6A-10.081(2)(a)9. specifically permits the Board of Education Defendants to discipline teachers directly for failure to comply with section 1000.05(4)(a), Florida Statutes, thus establishing traceability of his injury to the Board of Education Defendants. *See* ECF No. 99 at 2. This rule, Plaintiff Falls argues, "now creates standing for Falls to

3

obtain a preliminary injunction against the Florida Board of Education." *Id*.

Here's the problem with that argument. To establish jurisdiction sufficient for a preliminary injunction, Plaintiff Falls must develop facts that existed *at the time he filed his complaint*. The Eleventh Circuit explained this in a detailed string cite collecting other court decisions:

> Article III standing must be determined as of the time at which the plaintiff's complaint is filed. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000) ("[W]e have an obligation to assure ourselves that FOE had Article III standing at the outset of the litigation."); *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) ("[S]tanding does not have to be maintained throughout all stages of litigation. Instead, it is to be determined as of the time the complaint is filed."); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000) (noting that *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), "clearly indicat[es] that standing is to be 'assessed under the facts existing when the complaint is filed' ") [ (citations omitted) ]; *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) ("Standing is examined at 'the commencement of the litigation.' "); *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) ("We do not think, however, that the actual use of checkpoints in 1997, 1998, and 1999 is relevant on the issue of standing because all of these events occurred after [the plaintiff] filed her original complaint."); *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit."); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction.").

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003). In plainer terms, this Court doubts that it can consider the amended Rule

4

6A-10.081(2)(a)9. as part of Plaintiff Falls's new standing argument because the amended rule did not exist when he filed his complaint in April 2022.[2] And although this Court previously denied Plaintiff Cassanello's motion for preliminary injunction as moot in light of preliminary injunctions already in place in other cases, this Court *sua sponte* revisits Plaintiff Cassanello's standing to proceed at the outset of this litigation in light of the arguably premature filing of this case in April 2022—months before the Board of Governors took *any* action related to section 1000.05, Florida Statutes.

In short, Plaintiff Falls's reliance on this new enforcement mechanism has flagged for this Court a potential standing deficiency that has arguably existed since the outset of this case. Clearly, Plaintiffs' reliance in the complaint on general enforcement authority is insufficient to establish traceability. *See Link*, 2023 WL 2984726, at *5. But here, although neither side discussed this at any length, the Legislature specifically commanded the Board of Education and the Board of Governors to "adopt rules to implement this section" as it relates to school districts,

---

[2] This Court does not have qualms about considering the impact of Rule 6A-10.081(2)(a)9. on Plaintiff Falls for purposes of establishing a new irreparable harm with respect to his second attempt at a preliminary injunction. However, be it Plaintiff Falls's first or second attempt to acquire a preliminary injunction, he still must submit evidence of standing sufficient to meet the heightened burden for evaluating a motion for summary judgment. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). And here, this Court doubts that it can consider the current version of Rule 6A-10.081(2)(a)9. as part of Plaintiff Falls's renewed showing on traceability.

Florida College System institutions, and state universities. § 1000.05(6)(a)–(b), Fla. Stat. (2022). Thus, the Defendants have more than just "general enforcement authority" with respect to enforcing section 1000.05(4), Florida Statutes. The question for the parties is whether the specific statutory command to the Boards to implement the challenged amendments to section 1000.05(4) by promulgating regulations, along with the factual allegations in Plaintiffs' verified complaint, was sufficient to establish the causal link necessary for traceability to Plaintiffs' alleged First Amendment injuries in April 2022.

Neither side framed its traceability arguments this way, nor has this Court addressed this issue in detail. But this Court "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). And here, while the parties did not raise this traceability argument,[3] this Court must raise the issue to ensure jurisdiction is proper.

In so stating, this Court is not gratuitously elevating form over substance; instead, this Court is seeking to meet its independent obligation to ensure it has jurisdiction to review Plaintiffs' claims, including Plaintiff Falls's second motion for

---

[3] Indeed, both parties' briefing on the second motion for preliminary injunction failed to address this traceability problem, focusing instead on Plaintiff Falls's injury-in-fact even though this Court denied the original motion for preliminary injunction on traceability grounds.

preliminary injunction. In meeting that obligation, this Court must apply binding precedent, including the law of this Circuit, which is laser-focused on the form and origin of a would-be defendant's enforcement authority. Moreover, it is a waste of the parties' time and judicial resources to reach the merits of an issue while overlooking a jurisdictional defect, only to have that decision reversed on appeal.[4] Accordingly, the parties must file supplemental briefs on the following questions only:

1. In light of the binding precedent cited above, can this Court consider the current version of Rule 6A-10.081(2)(a)9. (or any other rule that went into effect months after Plaintiffs filed their lawsuit) for purposes of analyzing Plaintiffs' standing at the outset of the litigation?

2. If this Court cannot consider the current version of Rule 6A-10.081(2)(a)9. or any other rule that went into effect months after Plaintiffs filed suit, have Plaintiff Falls and Cassanello met their burden to establish traceability for purposes of standing? Namely, is the Legislature's specific command in section 1000.05(6)(a), Florida Statutes, to Defendants to implement the challenged amendments to section 1000.05(4) by promulgating regulations,

---

[4] Even if this Court were to dismiss this case for lack of subject matter jurisdiction due to some defect from the outset of the litigation, nothing prevents Plaintiffs from filing a new case identifying the pertinent enforcement regulations that are now in place and simultaneously moving for a preliminary injunction.

along with the factual allegations included in Plaintiffs' verified complaint, sufficient to establish, at the pleading stage, the causal link necessary for traceability to Plaintiffs' alleged First Amendment injuries?

This Court pauses to note issues that the parties *should not* address in their supplemental briefs. The parties should not submit further arguments on Plaintiff Falls's injury-in fact or this Court's consideration of Plaintiff Falls's supplemental declaration, Doc. 108-1.[5]

\* \* \*

As set out above, this Court **ORDERS** the parties to file supplemental briefs

---

[5] On this point, this ship has sailed for Defendants. Rather than raising their grievances with Plaintiff Falls's submission of a supplemental declaration at any point in the five days between its filing and the preliminary injunction hearing, Defendants took a gamble and voiced their opposition for the first time at the hearing. To date, Defendants have not requested time to submit their own rebuttal declarations, or even for the opportunity to file a sur-reply addressing the factual allegations in Plaintiff Falls's supplemental declaration. Instead, Defendants argue that this Court should exclude the supplemental declaration from its consideration of Plaintiff Falls's second motion for preliminary injunction.

This argument fails for two reasons. First, Plaintiff Falls's supplemental declaration was expressly permitted under this Court's briefing order with respect to the second motion for preliminary injunction. *See* ECF No. 103. This Court specifically allowed for Defendants to file a response and declarations in support of their response and for Plaintiff Falls to file a reply and any rebuttal declarations prior to the hearing. *Id.* Plaintiff Falls's supplemental declaration, which responded to arguments Defendants raised in response to the second motion for preliminary injunction, falls within the scope of this Court's order. *See Hogan v. City of Fort Walton Beach*, Case No. 3:18-cv-1332-MCR-HTC, 2019 WL 11638966, at *2 (N.D. Fla. Jun. 3, 2019) (noting that a reply brief allows "a party to 'rebut any new law or facts contained in the opposition's response to a request for relief before the court' "). Second, this Court has discretion to fashion a remedy, if any. This Court declines to do so where Defendants fail to ask for any remedy short of exclusion, and exclusion is not merited here.

8

addressing the two jurisdictional questions posed above **on or before Friday, April 28, 2023**.

**SO ORDERED on April 21, 2023.**

<u>s/Mark E. Walker</u><br>
**Chief United States District Judge**