UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| DONALD FALLS, et al.,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>RICHARD CORCORAN, in his official capacity as Commissioner of the Florida State Board of Education, et al.,<br><br>   *Defendants*. | Case No. 4:22-cv-166-MW/MJF |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING JURISDICTION**

   The Court rightly doubts whether Plaintiffs had Article III standing at the time they filed this action. When Plaintiffs filed their complaint, they failed to show that their alleged injuries were traceable to any enforcement authority held by Defendants. At the time, Defendants possessed *only* general rulemaking authority to implement the statutory provisions amended by the Individual Freedom Act. And they had not yet exercised that authority. As both this Court and the Eleventh Circuit have previously held, this type of general rulemaking authority is insufficient to establish traceability for purposes of standing. And under binding precedent, administrative actions that occurred after the filing of Plaintiffs' complaint may not be considered for purposes of standing. Therefore, the Court lacks jurisdiction.

1

## BACKGROUND

In April 2022, Plaintiffs filed a complaint challenging various provisions of the Individual Freedom Act (IFA or the Act), *see* 2022 Fla. Laws 72, and a Florida regulation governing required instruction in K-12 schools, FLA. ADMIN. CODE r. 6A-1.094124(3). *See* Doc. 1. Plaintiffs were a university professor, two K-12 teachers, a consultant, and a rising kindergartner. Along with their complaint, Plaintiffs also sought a preliminary injunction against enforcement of the Act.

At the preliminary-injunction hearing, Defendants informed the Court that the Florida Board of Governors was in the process of drafting a regulation to implement the IFA with respect to institutions of higher education. *See* PI Tr. 89 (June 21, 2022). After the hearing, Plaintiffs filed with the Court a copy of draft Regulation 10.005. *See* Doc. 59-1. Defendants filed a response, explaining why the draft regulation, if finalized, demonstrated that the university professor plaintiff, Dr. Cassanello, could not demonstrate traceability or redressability. Specifically, the text of the draft regulation showed that any injury to Dr. Cassanello was "far downstream and depend[ed] not only on the possibility of several intervening acts by 'independent actors not before the courts,' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), but also *deliberate and persistent* violations of the policy by the teacher." *See* Doc. 60 at 2. That same day the Court ordered supplemental briefing regarding Dr. Cassanello's standing. *See* Doc. 61.

While that briefing was ongoing, the Court denied the other Plaintiffs' motion for a preliminary injunction because they had failed to demonstrate standing sufficient to satisfy the heightened preliminary-injunction standard. *See* Doc. 62. Specifically, the Court held that the kindergartner plaintiff and the consultant plaintiff had failed to demonstrate an injury-in-fact. *Id.* at 16-17, 21. And it held that the K-12 teachers had failed to show "how their injury is traceable to the Defendant Board of Education, or how an injunction against the Board can redress their injury." *Id.* at 12. The Court reserved ruling on Dr. Cassanello's motion given the pending supplemental briefing. *See id.* at 2 n.1.

The following day, the parties submitted their supplemental briefs regarding draft Regulation 10.005. In their supplemental brief, Defendants explained that the IFA had not yet taken effect, that the Board of Governors had not yet proposed a regulation, and that, once proposed, the regulation would have to go through a notice-and-comment period before being finalized. *See* Doc. 63 at 2. The day after the parties filed these briefs, the Court ordered Defendants to file an additional brief stating the outcome of the Board of Governors' vote on draft Regulation 10.005. *See* Doc. 65. Defendants did so the day after the Board officially proposed Regulation 10.005. *See* Doc. 66.

The following week, the Court denied in part Defendants' motion to dismiss. *See* Doc. 68. The Court agreed that the Plaintiff-Consultant had failed to demonstrate

3

standing at the motion-to-dismiss stage. *See id.* at 15-18. But the Court held that Dr. Cassanello, the two K-12 teachers, and the kindergartner had adequately alleged facts sufficient to demonstrate standing by "the thinnest of reeds." *See id.* at 14 n.5.

After the Court's rulings, the regulatory implementation of the IFA began to take shape. The Board of Governors Regulation 10.005 was finalized on August 26, 2022. *See* Doc. 75. In November, the Board of Education finalized a rule that made it a violation of the principles of professional conduct for Florida K-12 educators to subject a student to training or instruction that endorses the concepts listed in the IFA. *See* Fla. Admin. Code r. 6A-10.081(2)(a)9.

Four months after the Board of Education finalized that rule, one of the K-12 teachers, Plaintiff Falls, filed a second motion for a preliminary injunction. *See* Doc. 99. Falls's new standing argument was premised exclusively on the Board of Education's November amendment to Rule 6A-10.081(2)(a)9. *Id.* at 2. On April 6, the Court held argument on the motion, which is currently pending. *See* Doc. 109.

On April 21, the Court ordered supplemental briefing regarding jurisdiction, explaining that it "has new doubts about whether the remaining Plaintiffs had Article III standing at the time they filed this action." Doc. 110 at 1. The Court noted that the relevant implementing regulations—Board of Governors Regulation 10.005 and the Board of Education's amendment to Rule 6A-10.081(2)(a)9—had been adopted

*after* Plaintiffs had filed their complaint. *See id.* at 3-5. The Court therefore ordered the parties to file supplemental briefs in response to the following questions:

> 1. In light of the binding precedent cited [by the Court], can this Court consider the current version of Rule 6A-10.081(2)(a)9 (or any other rule that went into effect months after Plaintiffs filed their lawsuit) for purposes of analyzing Plaintiffs' standing at the outset of the litigation?
>
> 2. If this Court cannot consider the current version of Rule 6A-10.081(2)(a)9 or any other rule that went into effect months after Plaintiffs filed suit, have Plaintiff Falls and Cassanello met their burden to establish traceability for purposes of standing? Namely, is the Legislature's specific command in section 1000.05(6)(a), Florida Statutes, to Defendants to implement the challenged amendments to section 1000.05(4) by promulgating regulations, along with the factual allegations included in Plaintiffs' verified complaint, sufficient to establish, at the pleading stage, the causal link necessary for traceability to Plaintiffs' alleged First Amendment injuries?

*Id.* at 7-8.[1] Defendants now file this response to those questions.

## ARGUMENT

"The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-

---

[1] On April 26, the Court issued an order clarifying that the parties' supplemental briefs should also address the standing of Plaintiffs Harper and RMJ and noting that the standing arguments "will be substantially the same" for all plaintiffs. *See* Doc. 112 at 1.

61 (1992). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021). And they must demonstrate they had standing at the time the complaint was filed. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (collecting cases). If a party lacks Article III standing, the Court lacks subject-matter jurisdiction. *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 922 (11th Cir. 2023).

Here, the Plaintiffs failed to allege facts in their complaint showing an injury that is "fairly traceable to the challenged conduct of the defendant" and "that is likely to be redressed by the requested relief." *Cruz*, 142 S. Ct. at 1646.[2] The regulation and rule that arguably make Plaintiffs' alleged injuries traceable to Defendants' actions were adopted months after Plaintiffs filed their complaint. As a result, the Court may not consider them for purposes of standing. And without those administrative actions, at the time Plaintiffs filed their complaint, they could cite only the Boards' general rulemaking authority, which is insufficient to demonstrate traceability necessary for standing. Therefore, the Court lacks jurisdiction and should dismiss the case.

---

[2] Pursuant to the Court's direction, Defendants' supplemental brief is limited to addressing traceability and redressability and does not address Plaintiffs' failure to demonstrate an injury in fact. *See* Doc. 110 at 8.

I.  **The Court May Not Consider the Regulation or Amended Rule Because They Were Adopted After Plaintiffs Filed Their Complaint.**

As this Court explained in its order, "'Article III standing must be determined as of the time at which the plaintiff's complaint is filed.'" *See* Doc. 110 at 4 (quoting *Focus on the Fam.*, 344 F.3d at 1275). Therefore, standing "is not altered by events unfolding during litigation." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 n.3 (11th Cir. 2005) (citing *Focus on the Fam.*, 344 F.3d at 1275). And the Court's standing "analysis must ignore the subsequent changes" to the regulatory landscape. *See In re Walker*, 515 F.3d 1204, 1209 n.2 (11th Cir. 2008); *see also Gomez v. Dade Cnty. Fed. Credit Union*, 610 F. App'x 859, 865 (11th Cir. 2015) (holding that Court could not consider developments occurring "following the motion to dismiss" for purposes of standing); 13A WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531 (3d ed. Apr. 2023 update) ("Post-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress.").

Here, neither Board of Governors Regulation 10.005 nor amended Board of Education Rule 6A-10.081(2)(a)9 were in effect at the time Plaintiffs filed their complaint. Plaintiffs filed their complaint on April 22 of last year; Regulation 10.005 was adopted on June 30; and Rule 6A-10.081(2)(a)9 was amended in relevant part

7

on November 22. Therefore, the Court may not consider these administrative actions when assessing Plaintiffs' standing.

## II. The Boards' General Rulemaking Authority Is Insufficient To Confer Standing.

The Eleventh Circuit has held that a plaintiff may not demonstrate traceability by merely pointing to a government official's unexercised rulemaking authority. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020) ("If rulemaking authority were sufficient to establish traceability, plaintiffs could presumably also challenge a law by suing the legislators who enacted it instead of the officials who execute it."); *see also West Flagler Assocs. Ltd. v. DeSantis*, 568 F. Supp. 3d 1277, 1283 (N.D. Fla. 2021) (explaining that *Jacobson* held "that a Secretary's rulemaking power was not sufficient to establish traceability"). Instead, Plaintiffs must "show that *they've* been threatened with prosecution" or enforcement "for violating" the IFA *by the Defendants*. *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021) (emphasis added). "And it is no answer to argue that," at the time Plaintiffs filed their complaint, Defendants would eventually take on "more direct enforcement and/or implementation authority . . . because speculation about the nature and manner of future enforcement is not a sufficient basis for standing." *Support Working Animals, Inc. v. Moody*, No. 4:19-cv-570-MW/MAF, 2020 WL 10728640 at *1 (N.D. Fla. 2020).

The Court recently applied these principles in *Link v. Diaz*, No. 4:21-cv-271-MW/MAF, 2023 WL 2984726 (N.D. Fla. Apr. 17, 2023). There, Plaintiffs challenged various provisions of Florida House Bill 233 (2021), which required post-secondary institutions to conduct an annual survey of "intellectual freedom and viewpoint diversity," to refuse to shield individuals from "expressive activities," and to permit students to record class lectures for educational use or in connection with an administrative, civil, or criminal proceeding. *See id.* at *1. The plaintiffs alleged First Amendment and Due Process violations by the same official-capacity Defendants in this case—the members of the Florida Board of Governors and the members of the Florida Board of Education. The plaintiffs attempted to establish traceability by "point[ing] to the Boards' general enforcement powers" under various statutory provisions. *See id.* at *3.

The Court held that this general authority was insufficient to demonstrate traceability for purposes of standing. *Id.* at *4. Although some of the provisions addressed "the Defendants' 'general enforcement authority' with respect to their constituent *institutions* (not individual professors or students)," the plaintiffs "point[ed] to no law or rule that specifically ties any general supervisory or enforcement authority" to enforcement "against individuals in this case." *Id.* This showing, the Court held, was "simply not sufficient to establish traceability for standing purposes." *Id.*

9

Here, Plaintiffs' showing is likewise insufficient to establish traceability. When Plaintiffs' complaint was filed, Defendants' only authority with respect to the IFA was a statutory provision authorizing the Boards to "adopt regulations to implement" the statutory section amended by the IFA. *See* FLA. STAT. § 1000.05(6)(a)-(b).[3] These provisions are nearly identical to one of the provisions the *Link* Plaintiffs attempted to use to demonstrate traceability for the Board of Education. *See Link*, No. 4:21-cv-271, 2023 WL 2984726 at *3 (citing FLA. STAT. § 1001.02(1), which grants the Board the "authority to adopt rules" and "implement the provisions of law conferring duties upon it for the improvement of the state system of Early Learning-20 public education"). As in *Link*, the general rulemaking authority at issue here—before the implementation of any particular rule—is insufficient to demonstrate traceability.

In addition, as Defendants previously argued, the Act itself does not provide for an enforcement mechanism by *the Boards* against *individual teachers*. *See* Doc. 56 at 4-5. As relevant here, the Act amended FLA. STAT. § 1000.05, which is patterned after Title VI and Title IX and is best read to permit suits *only* against institutions—*not* individuals. *See* Doc. 56 at 6-7. And even if the teacher plaintiffs "claim[ed] to fear that an enforcement action *against their institutional employer*

---

[3] Because the Court has already explained that the IFA's amendments to FLA. STAT. § 1003.42(3) and Rule 6A-1.094124 "lack[] a specific enforcement provision," Doc. 110 at 2 n.1, Defendants do not address those provisions here.

10

could somehow lead to downstream personal consequence," they had "not articulated what consequence that would be, let alone shown that it [wa]s anything more than speculative." *Id.* at 8.[4] Moreover, because RMJ's "right to receive information is coextensive with" her teachers' "asserted right to free speech with respect to their in-class speech," *Pernell v. Florida Board of Governors of State University System*, No. 4:22-cv-304-MW/MAF, 2022 WL 16985720, at *12 n.18 (N.D. Fla. 2022), she lacks standing for the same reasons that Plaintiffs Falls and Harper lack standing: no K-12 teacher could demonstrate traceability to the Board of Education when the complaint was filed.

In sum, at the time Plaintiffs filed their complaint, no Defendant possessed enforcement authority for the Act against Plaintiffs. Therefore, Plaintiffs could not show that their alleged injury was traceable to Defendants' actions. As a result, Plaintiffs lacked standing, and the Court lacks jurisdiction.

---

[4] Previously, the Court considered this argument in the context of assessing whether Plaintiffs had demonstrated an injury-in-fact under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), at the motion-to-dismiss stage. *See* Doc. 68 at 10-11. Although the Court held that Plaintiffs satisfied *Driehaus*, it did not consider this argument in the context of *traceability*, which is governed more directly by this Court's decision in *Link* and the Eleventh Circuit's decisions in *Jacobson* and *Stop Working Animals*.

11

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff Falls's renewed motion for a preliminary injunction and dismiss the remaining Plaintiffs' complaint for lack of jurisdiction.

Dated: April 28, 2023

/s/ Timothy L. Newhall
Timothy L. Newhall
*Special Counsel*
Complex Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: 850.414.3300
timothy.newhall@myfloridalegal.com

*Counsel for Defendant Ashley Moody, in her official capacity*

Respectfully Submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
johlendorf@cooperkirk.com
mwold@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Defendants Richard Corcoran, in his official capacity, et al.*

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendants' Supplemental Brief Regarding Jurisdiction, including body, headings, quotations, and footnotes, and excluding those portions exempt by Rule 7.1(F), contains 2,545 words as measured by Microsoft Office for Word 365.

/s/ Charles J. Cooper
Charles J. Cooper
