IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD FALLS, et al.,

        *Plaintiffs*,

v.                                Case No.:  4:22cv166-MW/MJF

RON DESANTIS, in his official
Capacity as Governor of Florida,
et al.,

        *Defendants*.

_____/

## ORDER DISMISSING CASE FOR LACK OF JURISDICTION

This matter is before this Court following a hearing on Plaintiff Donald Falls's second motion for preliminary injunction. ECF No. 99. This Court has a duty to ensure it has jurisdiction at every stage of the proceeding, regardless of whether the parties raise the issue. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 1995). In reviewing this case, this Court arrived at new doubts about whether the remaining Plaintiffs had Article III standing at the time they filed this suit. This Court ordered the parties to submit supplemental briefing as to this issue, *see* ECF Nos. 110, 112, 118–19.

The parties have submitted their briefs in accordance with this Court's Orders, and this Court has considered them prior to entry of this Order. For the reasons set out below, Plaintiffs' remaining claims are **DISMISSED without prejudice for**

**lack of standing** and Plaintiff Falls's second motion for preliminary injunction, ECF No. 99, is **DENIED as moot**.

I

Some background is necessary to situate this Court's standing analysis. To start, Plaintiffs originally filed this action the same day that Governor DeSantis signed HB 7 into law. ECF No. 1. Plaintiff Falls, a public high school history teacher, Plaintiff Harper, a public school substitute teacher, and Plaintiff RMJ, a kindergartner who attends public school, sought to enjoin enforcement of several provisions of HB 7 and a 2021 regulation from the Board of Education as they applied in the K-12 setting. *Id*. Plaintiff Cassanello, a professor at a state university, sought to enjoin enforcement of several of the same provisions of HB 7 as they applied in the state university setting. *Id*.

Specifically, Plaintiffs Falls, Harper, and RMJ challenged the Board of Education's rule (Florida Administrative Code Rule 6A-1.094124) prohibiting, among other things, instruction in critical race theory and the 1619 Project, and which went into effect in 2021. ECF No. 1 ¶¶ 21–22, 59–66. They also challenged HB 7's amendments to section 1003.42, Florida Statutes, which added six "principles of individual freedom" and prohibited classroom discussions from being "used to indoctrinate or persuade students to a particular point of view inconsistent with the principles of this subsection or state academic standards." *Id*. ¶¶ 35–38, 59–

2

66. And Plaintiffs Falls, Harper, and Cassanello challenged HB 7's amendments to the Florida Educational Equity Act, which this Court has found to be unconstitutional in other cases. *Id*. ¶¶ 40–44, 59–61. Finally, Plaintiffs challenge the above provisions as void for vagueness, in violation of the Fourteenth Amendment. *Id*. ¶¶ 72–78. The amendments to Florida Statutes pursuant to HB 7 did not go into effect until about ten weeks after Plaintiffs filed their lawsuit.

Defendants moved to dismiss these Plaintiffs' claims, asserting they had failed to allege a cognizable injury-in-fact. ECF No. 42-1 at 14–25, 33. This Court denied Defendants' motion to dismiss, concluding that Plaintiffs Falls, Cassanello, and RMJ had, by the thinnest of reeds, alleged sufficient facts to establish standing to proceed at the pleading stage.[1] ECF No. 68 at 10–12, 14 n.5. In so doing, this Court focused on the parties' primary dispute concerning whether Plaintiffs had sufficiently alleged an injury-in-fact with respect to their pre-enforcement First Amendment challenge. *Id*. at 11 (noting that lack of authority to directly punish speech is not decisive when considering the reasonableness of a plaintiff's asserted chilled speech injury in First Amendment pre-enforcement challenge). But this Court denied Plaintiffs' first motion for a preliminary injunction, finding that Plaintiffs Falls and Harper failed to

---

[1] This Court did not explicitly consider whether Plaintiff Harper had established standing to proceed given that it determined at least one Plaintiff (Falls) had standing to proceed with respect to the same claims and same Defendant. *See* ECF No. 68 at 10 n.4 (citing *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1195 (11th Cir. 2009)).

meet their heightened evidentiary burden to establish traceability and redressability with respect to their First Amendment injuries. ECF No. 62 at 14–15 ("Plaintiffs' argument requires the Court to stack multiple layers of inferences . . . . Without further factual support, however, Plaintiffs' theory simply requires too many inferential leaps to demonstrate standing at the preliminary injunction stage."). And this Court found that, given the fact that Plaintiff RMJ is a kindergartner and had not identified any specific material that the challenged provisions denied her access to, Plaintiff RMJ failed to meet her burden to establish an injury-in-fact for purposes of a preliminary injunction. *Id*. at 16–17 ("Plaintiffs could have introduced an affidavit from a school official, teacher, or employee explaining what materials they anticipate removing from the kindergarten curriculum. Plaintiffs have not done so, and thus have not carried their burden as to RMJ."); *see also id*. at 17 n.12 ("And even as to vagueness, RMJ has the same problem. Assuming the challenged provisions are unconstitutionally vague, she has not shown that kindergarten teachers would offer certain information to their classes absent the allegedly vague provisions."). This Court reserved ruling on the motion with respect to Plaintiff Cassanello, but ultimately denied the motion as moot without explicitly addressing Plaintiff Cassanello's standing, in light of an injunction entered in another case. *See* ECF No. 94.

Plaintiff Falls has now filed a second motion for preliminary injunction,

4

claiming that a recently enacted Board of Education regulation specifically permits the Board of Education Defendants to discipline teachers directly for failure to comply with section 1000.05(4)(a), Florida Statutes, thus establishing traceability of his injury to the Board of Education Defendants. *See* ECF No. 99 at 1. Plaintiff Falls's reliance on this "new" enforcement mechanism flagged for this Court a potential standing deficiency that has arguably existed since the outset of this case. This Court ordered the parties to brief the matter, ECF No. 110; namely, whether this Court could consider the recently amended enforcement regulation for purposes of establishing Plaintiffs' standing at the outset of this litigation, and, if not, whether Plaintiffs had established standing absent consideration of that change in law.

After asserting this new enforcement regulation finally established Plaintiff Falls's standing for a preliminary injunction, Plaintiffs promptly conceded this Court could not consider the new regulation to determine if they had standing at the outset of the case. ECF No. 113 at 1. Instead, Plaintiffs asserted they had standing from the beginning because the precursor to this new enforcement regulation in effect at the time the case was filed was sufficient to confer standing. *Id*. at 2–6. However, Plaintiffs' factual allegations make no mention of this regulation or its effects on Plaintiffs' speech. Accordingly, Plaintiffs' theory of standing has shifted from one based, in part, on the threat of financial penalties to school districts and universities to a new theory based on the possible suspension of some of Plaintiffs' teaching

certificates for violating section 1000.05(4)(a). Plaintiffs' shifting positions only highlight what has become clear to this Court—Plaintiffs lacked standing at the time they filed their complaint.[2]

## II

This Court "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). It is essential that this Court ensure that Plaintiffs have standing to challenge each of the provisions at issue with respect to each of their claims and against each Defendant. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision"). And, "[f]or jurisdiction, standing had to exist when the suit was filed (not arise later) . . . . It is not enough for Plaintiff to try to establish, in terms of shifting reality, the requirements of standing as the case progresses through the federal courts." *ACLU of Fla., Inc. v. Dixie Cnty.*, 690 F.3d 1244, 1257 n.5 (11th Cir. 2012).

The Supreme Court has long held that an actual controversy exists when the parties have "such a personal stake in the outcome of the controversy as to assure

---

[2] This Court recognizes that Plaintiffs may have been able to remedy their deficient factual allegations by voluntarily amending their complaint. However, Plaintiffs did not pursue any amendment, the time for doing so has long expired, and their claims are now due to be dismissed.

that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (explaining that standing doctrine "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action"). "This is the gist of the question of standing." *Carr*, 369 U.S. at 204.

Ultimately, when it comes to standing, the inquiry is whether "concrete adverseness" exists between the parties. Over time, the Supreme Court has developed a three-part test for determining when such adverseness exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) will likely be redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. "[E]ach element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Church*, 30 F.3d at 1336 (quoting *Lujan*, 504 U.S. at 561).

As to Plaintiffs Falls, Harper, and Cassanello, this Court's renewed doubts concerning standing at the outset of this case deal with *Lujan*'s overlapping second and third prongs; namely, traceability and redressability. This Court will address these concerns first as to each of their claims and the challenged provisions before addressing RMJ's standing.

A

This Court starts with the high school teachers' claims challenging Defendant Board of Education's Rule 6A-1.094124. As alleged in the Complaint, Plaintiffs Falls and Harper assert the Board of Education has already used this regulation to reject twenty-eight math textbooks from Florida's approved K-12 instructional materials. ECF No. 1 ¶ 23. They seek an order declaring the rule violates the First and Fourteenth Amendments and an injunction against the Board of Education from enforcing the rule. *Id*. ¶¶ 61 and 78.

Falls and Harper originally alleged their asserted free speech injuries were traceable to the Board of Education because the Board has authority to enforce statutory curriculum requirements against district school boards by imposing various sanctions for noncompliance. *Id*. ¶ 39. Specifically, Rule 6A-1.094124.(9) provides that "[f]ailure to comply with the requirements of this rule may result in the imposition of sanctions described in Section 1008.32, F.S." In turn, section 1008.32, Florida Statutes, provides that "[d]istrict school boards . . . shall be primarily responsible for compliance with law and state board rule," but if a "district school board . . . cannot satisfactorily document compliance, the State Board of Education may order compliance within a specified timeframe." § 1008.32(3), Fla. Stat. The Board of Education has the authority to impose various sanctions against district school boards for noncompliance, including reporting them to the Legislature,

withholding the transfer of funds, declaring them ineligible for competitive grants, and requiring periodic reporting until noncompliance is remedied. *Id.* § 1008.32(4).

In denying the first motion for preliminary injunction, this Court determined that Plaintiffs' argument for traceability and redressability was too attenuated to satisfy Plaintiffs' heightened burden at that early stage in the case. ECF No. 62 at 14. Upon reconsideration, this Court concludes that even under a more forgiving motion-to-dismiss standard, Plaintiffs cannot establish that their asserted injuries would be redressed, even partially, by an order enjoining the Board members from sanctioning the school boards that oversee the districts in which Plaintiffs teach.

Plaintiffs' injuries must be "fairly traceable to the defendant's conduct, as opposed to the action of an absent third party." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560). But the district school boards are "primarily responsible for compliance with law and state board rule," pursuant to section 1008.32, Florida Statutes. An injunction against the members of the Board of Education, by itself, would not bind the district school boards who are not parties to this case. As a result, any redress flowing from such an injunction against the Board members is entirely dependent upon the school districts choosing *not* to comply with the challenged regulation.

"[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it

is ordinarily substantially more difficult to establish." *California v. Texas*, 141 S. Ct. 2104, 2117 (2014) (cleaned up). "To satisfy that burden, the plaintiff must show at the least that third parties will likely react in predictable ways." *Id.* (quotation marks and citation omitted). Here, Plaintiffs have not alleged that their respective school districts intend to *not* comply with the challenged regulation. Nor have they provided any evidence from which this Court could infer that Plaintiffs' district school boards would not independently enforce compliance with the challenged regulation even if this Court enjoined the Board of Education from imposing sanctions against district school boards for noncompliance. This is simply not enough to establish redressability against the members of the Board of Education. Accordingly, the teacher Plaintiffs' claims against the Defendant members of the Board of Education challenging Rule 6A-1.094124., F.A.C., are **DISMISSED without prejudice for lack of standing**. Next, this Court turns to the teacher Plaintiffs' claims challenging section 1003.42, Florida Statutes.

## B

Plaintiffs Falls and Harper also challenge section 1003.42(3), Florida Statutes, which requires all K-12 instruction and supporting materials for specified topics to be consistent with six "principles of individual freedom," and prohibits class instruction and curriculum from being "used to indoctrinate or persuade students to a particular point of view inconsistent with the principles of this subsection or state

academic standards." § 1003.42(3), Fla. Stat. (2022). Plaintiffs' standing to challenge this provision suffers from the same flaws outlined above. That is, Plaintiffs have not established that their free speech injuries would be redressed by an injunction against the members of the Board of Education, because such redress is dependent upon the actions of third parties not before this Court—namely, the relevant district school boards.

To start, HB 7's amendments to this statute did not specify a particular enforcement mechanism. Rather, it appears the Board of Education and district school boards enforce these standards by adopting rules with which instructional staff at public schools must comply. *See* § 1003.42(2), Fla. Stat. ("Members of the instructional staff of the public schools, *subject to the rules of the State Board of Education and the district school board*, shall teach efficiently and faithfully, using the books and materials required that meet the highest standards for professionalism and historical accuracy, following the prescribed course of study, and employing approved methods of instruction, the following [required topics]." (emphasis added)).

In turn, the Board of Education promulgated Rule 6A-1.094124 pursuant to section 1003.42(2), Florida Statutes, which further describes planning and reporting requirements in addition to prescribing which historical theories are *verboten* in K-12 classrooms. As this Court noted above, this rule is enforceable pursuant to the

Board's statutory authorization to impose sanctions against noncompliant district school boards under section 1008.32, Florida Statutes. The practical consequence of an injunction prohibiting the members of the Board of Education from imposing any sanctions set out in section 1008.32 would offer Plaintiffs no redress, as it would not preclude their respective district school boards from demanding Plaintiffs' compliance with state law, which the Legislature has commanded to be the *district school boards'* primary responsibility.[3] *See* § 1008.32, Fla. Stat. In other words, regardless of whether this Court prohibits the Board members from punishing noncompliant district school boards, those district school boards are still statutorily required to ensure compliance with state statutes and Board rules, including the provisions Plaintiffs have challenged in this case. Accordingly, for the same reasons Plaintiffs Falls and Harper lack standing to challenge Rule 6A-1.094124., F.A.C., they also lack standing to challenge section 1003.42(3), Florida Statutes, and their claims are **DISMISSED without prejudice**.

C

Next, Plaintiffs Falls and Harper's challenge to section 1000.05, Florida

---

[3] This Court recognizes, as it has done in prior cases, that "Article III does not demand that the redress sought by a plaintiff be complete." *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1084–85 (N.D. Fla. 2021) (quoting *Moody v. Holman*, 887 F. 3d 1281, 1287 (11th Cir. 2018)). But this case is distinguishable from one where an injunction would provide partial redress. Here, rather than affording Plaintiffs even partial redress, an injunction would provide no redress because their respective district school boards would still be required, by law, to ensure compliance with the challenged provisions and an injunction against the Board members would have no binding effect on the district school boards.

Statutes. These Plaintiffs claim that section 1000.05(4), as amended by HB 7, impermissibly discriminates based on viewpoint in violation of the First Amendment and is also unconstitutionally vague under the Fourteenth Amendment. Plaintiffs Falls and Harper have presented three different theories of standing at different stages of the litigation. This Court will address each in turn.

First, as set out in their complaint, their original motion for a preliminary injunction, and their response to the motion to dismiss, Plaintiffs Falls and Harper argue that their free speech injuries are traceable to the members of the Board of Education and redressable with an injunction directed those members because the Board could cut funds to their school districts if individual teachers have violated the challenged provision. *See* ECF No. 4 at 49. Second, as set out in the second motion for a preliminary injunction, Plaintiff Falls asserts his injury is traceable to the Board of Education because it amended Rule 6A-10.081 to incorporate 1000.05(4)'s definition of "discrimination" and threatens revocation of his teaching certificate if he violates the challenged provision. ECF No. 99 at 1–2. Third, as set out in their response to this Court's order for supplemental briefing, Plaintiffs argue that the Board of Education's power to revoke an individual's teaching certificate for "discrimination" under Rule 6A-10.081 *before* it was amended to specifically incorporate section 1000.05(4) is sufficient to show traceability and redressability.

ECF No. 113 at 3–4.[4]

These arguments all fail to establish standing. As to the first argument, this Court erred in denying Defendants' motion to dismiss on standing grounds at the motion-to-dismiss stage. As this Court explained in its order denying Plaintiffs' first motion for preliminary injunction, their theory of traceability and redressability asks this Court to infer that the Board of Education will punish their district school boards for their proposed speech, which will then punish their individual schools, which will then punish them. ECF No. 62 at 14. In short, Plaintiffs ask this Court to infer, without any factual support, that an injunction directed at the Board of Education will redress their alleged free speech injuries based on this this stacking of inferences. Plaintiffs' failure to provide *any* evidence at *any* stage of this case showing how their district school boards and schools would react to the possibility of funding cuts from the Board of Education is fatal to this theory of standing. Without some factual allegation showing how these independent actors would "likely react," Plaintiffs Falls and Harper fail to meet their burden to establish standing. *See California v. Texas*, 141 S. Ct. at 2117.

In addition, this theory also suffers from the same infirmities set out above with respect to the district school boards' independent obligations to ensure

---

[4] This Court recognizes that this Rule has since been amended again, with an effective date of May 23, 2023, and the disciplinary provision Plaintiffs cite to establish standing is now listed as Florida Administrative Code Rule 6A-10.081(2)(a)10.

compliance with state law. In short, Plaintiffs have failed to demonstrate that an injunction prohibiting the members of the Board of Education from imposing sanctions against the district school boards for an individual teacher's violation of section 1000.05(4) would provide any redress to Plaintiffs when the district school boards are still required to ensure compliance with section 1000.05(4). Accordingly, their "funding cut" theory of standing fails.

Plaintiffs' second theory of standing, as set out in Plaintiffs Falls's second motion for a preliminary injunction, goes like this. The Board of Education amended Rule 6A-10.081 to permit "revocation or suspension" of a teacher's "individual educator's certificate" for promoting or advancing the eight prohibited concepts under section 1000.05(4). ECF No. 99 at 2. This amendment, Plaintiffs argue, directly links Plaintiff Falls's free speech injury to the Board of Education. *See id.* The problem with this argument is that the Board of Education amended this Rule *after* Plaintiffs filed their complaint. And, as Plaintiffs concede, this Court cannot consider actions taken by the Board of Education *after* this lawsuit was filed to establish standing *at the time* it was filed. *See Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003). Accordingly, Plaintiffs' second theory of standing also fails.

Finally, Plaintiffs' third theory of standing. Plaintiffs argue that, at the time this case was originally filed, they could have reasonably feared discipline from the

Board of Education under Rule 6A-10.081 before the Board amended it to expressly incorporate section 1000.05(4)'s definition of discrimination. This is so, Plaintiffs argue, because the Rule at that time used the term "discrimination." Plaintiffs assert section 1000.05 expanded the term "discrimination" to include promoting or compelling belief in eight specific concepts, ECF No. 113 at 3, and according to Plaintiffs, they could have reasonably feared that the Board would have applied Rule 6A-10.081 with the understanding that "discrimination" now included the new definition from section 1000.05(4). Even though the Board of Education later amended Rule 6A-10.081 to expressly incorporate section 1000.05(4)'s definition of "discrimination," "it was already clear that Florida law (through HB 7) defined discrimination in this manner," and thus, these Plaintiffs could trace their fears of prosecution to the members of the Board of Education. *Id.*

This Court need not decide whether this theory establishes Plaintiffs' traceability and redressability sufficient for standing because this new theory has never been established by any factual allegations or other evidence in the record. In revisiting whether Plaintiffs Falls and Harper had standing at the time the complaint was filed, this Court can look beyond the allegations in the complaint. *See Fla. Fam. Pol'y Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) ("[I]n determining subject matter jurisdiction we are permitted to look at all of the evidence presented, including affidavits and testimony relating to a motion for a preliminary

injunction."). Here, Plaintiffs Falls and Harper point to no factual allegations or submissions from any point in this case—and this Court's own review finds none—showing that they, *at the time the complaint was filed*, suffered any injury because of Rule 6A-10.081. Indeed, at the time this case was filed, the facts before this Court indicated only that these Plaintiffs' fears were traceable to possible funding cuts to district school boards for their perceived violations of state law or litigation brought by independent third parties for perceived violations. *See* ECF No. 1 ¶¶ 39, 41; ECF No. 30-1; ECF No. 108-1. Plaintiffs Falls and Harper provided no factual basis for this Court to infer that their free speech injuries were traceable to Rule 6A-10.081. Instead, this issue was raised, for the first time, as legal argument in response to an Order for supplemental briefing *after* a hearing on Plaintiff Falls's second motion for preliminary injunction and over a year after Plaintiffs filed their complaint. But legal argument is not evidence.

This Court cannot rewrite Plaintiffs' complaint or make inferences that are not based upon facts before this Court. Without any factual allegation or other evidence demonstrating that Plaintiffs' reasonable fears and free speech injuries were traceable to this Rule at the outset of this case, this Court cannot determine that Plaintiffs Falls and Harper had standing based on this theory when they initiated this action in April 2022. Accordingly, Plaintiffs Falls's and Harper's First and Fourteenth Amendment challenges to section 1000.05 are **DISMISSED without**

**prejudice for lack of standing**.

D

Now this Court considers Plaintiff Cassanello's standing to bring First and Fourteenth Amendment challenges to section 1000.05. Plaintiff Cassanello's papers and this Court's order denying Defendant's motion to dismiss focused largely on the injury-in-fact requirement, at the expense of analyzing whether Plaintiff Cassanello's free speech injury was traceable to the members of the Board of Governors or redressable by an injunction prohibiting their enforcement of section 1000.05 at the outset of this case. Meanwhile, Plaintiffs' complaint alleged only that the Board of Governors was responsible for "operating, regulating, and controlling the management of the whole State University System," ECF No. 1 ¶ 12, but that violations of section 1000.05, as amended by HB 7, are enforceable by a private right of action, ECF No. 1 ¶ 41. Likewise, Plaintiff Cassanello's declaration in support of his motion for preliminary injunction indicated that he feared his speech may violate section 1000.05's amended provisions and would put himself at risk of a private lawsuit and the loss of performance funding for the university where he works. ECF No. 30-2 ¶ 21. But a private right of action is not traceable to the Defendants, nor would an injunction against the Defendants redress Plaintiff Cassanello's fear of becoming the subject of such litigation. In addition, in April 2022, the connection between Plaintiff Cassanello's free speech injury and the

18

possible loss of performance funding for his institution was far too attenuated, absent further factual allegations, to establish standing. *Cf. Pernell v. Fla. Bd. of Govs. of St. Univ. Sys.*, --- F. Supp. 3d ---, 2022 WL 16985720, *28 (N.D. Fla. Nov. 17, 2022) (concluding that professors' injuries were fairly traceable to Board of Governors based on regulation that required universities to pass and enforce regulations barring the promotion of the eight concepts and the strong incentive universities had to discipline offending professors based on Board's authority to cut performance funding). This Court erred in construing Plaintiff Cassanello's factual allegations and attestations so broadly to conclude that his fears were traceable to the actions of the Board of Governors.

Now, Plaintiff Cassanello elaborates on the traceability and redressability prongs of his standing theory in response to this Court's order for supplemental briefing. Specifically, Plaintiff Cassanello explains that, at the time the complaint was filed, Board of Governors Regulation 2.003 prohibited discrimination "on the basis of race, color, national origin, sex, religion . . . or *any other basis protected by applicable state . . . law* against a covered individual." ECF No. 113 at 11. At the same time, section 1000.05(4) redefined discrimination as promoting or compelling belief in eight specific concepts. According to Plaintiff, both Regulation 2.003 and section 1000.05(6)(a) empower the Board of Governors to enact regulations to enforce these prohibitions. *Id.*

19

Plaintiff Cassanello now argues, for the first time, that Regulation 2.003's use of "discrimination" is linked to section 1000.05's amended definition of that term. This, combined with the Board's specific grant of enforcement authority to enforce these prohibitions is sufficient to establish traceability and redressability for purposes of standing. However, Plaintiff Cassanello failed to allege any facts or submit any other evidence in support of this theory. Indeed, at the time this case was filed, the facts before this Court indicated only that Plaintiff Cassanello's fears were traceable to independent private actors who could now sue his university for perceived violations or the Legislature, which could cut performance funding for his university. *See* ECF No. 30-2. Plaintiff Cassanello provided no factual basis for this Court to infer that his free speech injury was traceable to the Board members' rulemaking authority pursuant to Regulation 2.003.

To the extent that he alleged the Board has general oversight authority with respect to the State University System, this allegation, absent any additional facts, is insufficient to confer standing at the pleading stage. Indeed, at the time this case was filed, the Board of Governors had not even proposed any regulation to implement section 1000.05's amended provisions, and thus, the likelihood that an injunction against the Board members would directly redress his free speech injury was merely speculative at the time given the Board's general authority to punish constituent

institutions rather than individual professors.[5] *See, e.g.*, *Link v. Diaz*, --- F. Supp. 3d ---, 2023 WL 2984726, *4 (N.D. Fla. Apr. 17, 2023). This is quite different from other cases where Plaintiff professors were able to demonstrate that the Board had actually used its rulemaking authority to require universities to punish individual professors who violated the challenged provision. *See Pernell*, 2022 WL 16985720. Without this additional showing, this Court cannot conclude that Plaintiff Cassanello had standing at the outset of this litigation. Accordingly, Plaintiff Cassanello's First and Fourteenth Amendment challenges to section 1000.05 are **DISMISSED without prejudice for lack of standing**.

E

Finally, this Court addresses Plaintiff RMJ's standing to pursue her First and Fourteenth Amendment challenges to Rule 6A-1.094124, section 1003.42(3), Florida Statutes, and section 1000.05(4), Florida Statutes. Plaintiff RMJ's claims are premised on her "right to receive information regarding sociological, historical, and

---

[5] After filing the complaint and prior to this Court's ruling on the motion for a preliminary injunction, Plaintiff Cassanello submitted proposed Board of Governors Regulation 10.005 to bolster his standing argument. However, like the teacher Plaintiffs' attempt to use Rule 6A-10.081 to support their showing for traceability and redressability, Plaintiff Cassanello's invocation of proposed Regulation 10.005 fails. As this Court explained above, it cannot consider facts that did not exist at the time the complaint was filed to find that Plaintiffs had standing at the start of this case. And while the proposed regulation provided for an enforcement mechanism that expressly required universities to directly punish professors for violating the challenged provision, the Board of Governors was not required to craft such an enforcement mechanism. Instead, they chose to propose this regulation weeks after Plaintiff Cassanello filed his claims based, in part, on speculation as to how the Board of Governors would enforce the challenged provision. In short, the proposed regulations were insufficient to remedy Plaintiff Cassanello's standing deficiency at the outset of this case.

civic issues under the First Amendment of the United States Constitution." ECF No. 1 ¶ 63. This Court originally rejected Plaintiff RMJ's request for a preliminary injunction, concluding that Plaintiff RMJ had failed to meet her heightened burden to establish an injury-in-fact with respect to both her "right to receive information" and vagueness challenges. ECF No. 62 at 16–17, 17 n. 12. However, this Court allowed Plaintiff RMJ's claims to proceed beyond a motion to dismiss, even though this Court noted its concerns with the threadbare nature of Plaintiff RMJ's asserted injury. *See* ECF No. 68 at 13–14, 14 n.5.

This Court has endeavored to satisfy itself as to whether each Plaintiff has standing to proceed at this juncture. Accordingly, upon review of the facts before this Court at the outset of the litigation, this Court reconsiders its conclusion that Plaintiff RMJ's allegations were sufficient to withstand a motion to dismiss. Specifically, Plaintiff RMJ alleged that she is a resident of Nassau County, Florida, and was enrolling in kindergarten at a Nassau County Public School in August 2022. ECF No. 1 ¶ 7. Further, Plaintiff RMJ alleged that "[t]he legislation at issue here restricts her right to access information in a public-school setting." *Id*. Absent additional factual allegations, this Court erred by inferring that the challenged provisions would chill RMJ's teachers' classroom discussions.

This is especially true in light of binding authority, which this Court failed to address in its earlier Order. Namely, the Eleventh Circuit has held that "[f]or a

recipient of speech . . . to demonstrate injury in fact for standing purposes, it must show: (1) *an otherwise willing speaker whose speech was chilled by the challenged regulation*, and (2) that the chill was objectively reasonable as shown by a credible threat of penalty." *Freeman*, 561 F.3d at 1254 (citing *Pittman v. Cole*, 267 F.3d 1269, 1283–84 (11th Cir. 2001)). Accordingly, for Plaintiff RMJ to establish standing based on a First Amendment injury to her "right to receive information," she would have to allege that an otherwise "willing speaker" had their speech reasonably chilled by the challenged provisions. Without question, Plaintiff RMJ failed to include any factual allegations in her complaint or evidence in support of her motion for preliminary injunction demonstrating that she has a teacher who would be a willing speaker of the information at issue, but whose speech was reasonably chilled because of the challenged provisions.[6] This Court erred by supplying an inference when none was due. Without any factual allegations concerning a willing speaker who is otherwise reasonably chilled due to the challenged provisions, this Court can only speculate as to whether Plaintiff RMJ would have even received the sought-

---

[6] Although this Court did not expressly address this in its prior rulings, this Court's concerns intuitively addressed this insufficient showing at the preliminary injunction stage. For example, this Court noted that Plaintiffs could have provided an affidavit from a Nassau County kindergarten teacher explaining what information they would no longer be discussing in class to avoid running afoul of the challenged provisions. ECF No 62 at 17. Given the nature of Plaintiff RMJ's claims, such information is necessary to determine whether she is, in fact, injured due to the challenged provisions and not simply seeking information that otherwise would not have been discussed in a Nassau County kindergarten classroom even before the challenged provisions became effective.

after information in the absence of the challenged provisions. Accordingly, Plaintiff RMJ lacks standing, and her claims are **DISMISSED without prejudice**.

III

This Court recognizes that, to some, this Order may appear to place form over substance. But this Court cannot reach the merits of this case without jurisdiction. Full stop. Of course, this is not the end of the road for Plaintiffs. They may wish to file a new case and pursue claims for which they may *now* have standing. For these reasons, Plaintiffs' Complaint, ECF No. 1, is **DISMISSED without prejudice for lack of standing**.[7] Plaintiffs' second motion for preliminary injunction, ECF No. 99, is **DENIED as moot**. The joint motion to stay all deadlines, ECF No. 120, is also **DENIED as moot**. The Clerk shall enter judgment stating, "Plaintiffs' claims against all Defendants are **DISMISSED without prejudice for lack of standing**," and close the file.

**SO ORDERED on May 19, 2023.**

**s/Mark E. Walker**
**Chief United States District Judge**

---

[7] This Court previously dismissed some of Plaintiffs' claims for lack of standing. *See* ECF No. 68. Now this Court dismisses the balance of Plaintiffs' claims and directs the Clerk to enter judgment as to all of Plaintiffs' claims.